367. During interviews, after plaintiff was forced to repeat the contents of the aforementioned paragraph of the Letter of Termination when asked if Schoeman would say good things about her, the prospective employers immediately lost all interest in plaintiff and all communications with plaintiff were terminated.

368. The negative inference that plaintiff was a poor employee is a defamatory false statement of fact that Schoeman knew to be false.

369. The negative inference that plaintiff was a poor employee is a defamatory unprotected derogatory statement of opinion that implies a basis in facts which are not disclosed to the reader in the Letter of Termination.

370. The negative inference that plaintiff was a poor employee is an unprotected derogatory statement of opinion that give the impression that it sets forth the facts upon which the opinion is based, but those underlying facts are falsely misrepresented and grossly distorted in the Letter of Termination.

371. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff unprofessional conduct.

372. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff improper performance of her duties as an attorney.

128

373.    The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff an unfitness to practice as an attorney.

374.    The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff in her business and profession.

375.    The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff's reputation as an attorney.

376.    The motivation of Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher in making the defamatory false statements of fact and opinion and false defamatory inferences regarding plaintiff in the Letter of Termination was malicious.  The statements were made with malice, spite, and ill will, with knowledge of their falsity and with a reckless disregard for their falsity in retaliation for plaintiff's having exercised her rights under the OSH Act, for plaintiff's having contacted the Occupational Safety and Health Administration and for plaintiff's having complained of the other unlawful conduct at Schoeman discussed herein.

377.    Upon information and belief, the Letter of Termination, which was signed by Mindy H. Stern, was drafted by Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

129

378.   The Letter of Termination and the contents of the Letter of Termination were published by Schoeman and by Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to third parties, including, but not limited to, other employees at Schoeman and parties outside of Schoeman.

379.   Schoeman's Letter of Termination was written and published to third parties under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

380.   In addition, plaintiff was forced to publish the Letter of Termination and the contents of the Letter of Termination to third parties.

381.   The libelous statements contained in the Letter of Termination, including, but not limited to Schoeman's statement that it will only confirm the dates of plaintiff's employment and her position, have caused plaintiff serious harm, including, but not limited to: plaintiff's loss of employment, plaintiff's inability to secure other employment, severe damage to plaintiff's reputation, severe economic damage, including loss of wages, the loss of plaintiff home, and emotional distress.

## THIRD CAUSE OF ACTION
## DEFAMATION BY SCHOEMAN, MINDY H. STERN, BETH L. KAUFMAN, <u>CHARLES B. UPDIKE, AND ANDREA D. ASCHER</u>

382.   Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

383. Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

384. As discussed herein, the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

385. As discussed herein, the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

386. As discussed herein, the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

387. First, the Letter of Termination states:

> Although you are an employee at will under New York law, and may therefore be terminated at any time for any reason or no reason, we believe it is both fair to you and otherwise useful to spell out the considerations that led to our decision and have done so below.
>
> After consideration over a period of time, we have come to the conclusion that we do not have confidence in your judgment or your ability to work effectively with your colleagues. We have come to

131

> this conclusion after reflecting on the incidents described below, among others.

388. The above paragraphs, which indicate that plaintiff was terminated for cause, constitute defamation by defendants Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher. As discussed herein, the "causes" listed by Schoeman contain blatant distortions of the truth and falsely and maliciously attempt to make it appear as though Schoeman had cause to terminate plaintiff. However, the correct version of the facts as they transpired makes clear that there was no lawful cause for plaintiff's termination.

389. The first bullet-point paragraph in the Letter of Termination states:

> The first incident occurred in the summer of 2010 when we were preparing a response to a questionnaire from our insurance carrier and you refused to answer a question about whether any claims had been made against you. We let this issue pass but it did raise concerns on our part about your candor and willingness to speak openly to your colleagues.

390. The first bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

391. As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

132

392.    As discussed in paragraphs 98 through 162, herein, the first bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

393.    As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

394.    The second bullet-point paragraph of the Letter of Termination further states:

> Also in 2010, there was a disturbing incident involving your refusal to share material you had prepared at the Firm's request and on the Firm's time for another project with which Deirdre Sheridan was involved. You even accused her of "plagiarism", which was highly inappropriate. This was an example of poor judgment on your part and an inability to work well with your colleagues.

395.    The second bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation by defendant Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

396.    As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination contains unprotected defamatory false

133

statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

397.   As discussed in paragraphs 98 through 162, herein, the second bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

398.   As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

399.   The third bullet-point paragraph of the Letter of Termination further states:

> In January 2012, there was a heated exchange between you and our colleagues at Reed Smith that again demonstrated poor judgment on your part and an inability to get along well with your colleagues. Your emails to them, sent without consulting Charles Updike, the supervising partner, were totally inappropriate communications.

400.   The third bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

134

401.    As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

402.    As discussed in paragraphs 98 through 162, herein, the third bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

403.    As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

404.    The fourth bullet-point paragraph of the Letter of Termination further states:

> A similar incident occurred in April 2012 when you accused a colleague of religious discrimination because she asked if you could work over the weekend, not knowing that you were a Sabbath observer who could not work on Saturday. Again, your reaction demonstrated both poor judgment and an inability to have constructive dialogue with your colleagues. A further indication of your poor judgment in our view was your refusal to participate in the investigation that we felt

135

obligated to conduct because of your complaint of religious discrimination.

405. The fourth bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

406. As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

407. As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

408. As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

409. The fifth bullet-point paragraph of the Letter of Termination further states:

Another more recent incident of poor judgment occurred during our discussions about the content

136

of a letter demanding payment of legal fees in full by an insurance carrier. Your vigorous opposition to that approach was listened to and taken into account. Your adamant refusal to cooperate in making the demand, however, again reflected poor judgment on your part, especially in light of your unresponsiveness to the suggestion that you research the issue.

410. The fifth bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

411. As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

412. As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

413. As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

137

414.    The sixth bullet-point paragraph of the Letter of Termination further states:

> Another example was your persistence in raising specious questions about advice we received from an Israeli lawyer about a transfer of real estate last year and your refusal to continue working on the matter.  Again, this reflected poor judgment on your part.

415.    The sixth bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

416.    As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

417.    As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

418.    As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon

138

which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

419.    The seventh bullet-point paragraph of the Letter of Termination further states:

> Most recently, you have shown poor judgment in other communications regarding the office relocation. While you certainly have the right to complain about conditions in the office, there are appropriate procedures for doing so. Your decision to send an email about your concerns to the entire office reflected poor judgment, as did your belligerent and adversarial communications with our architect and landlord, particularly because you did not seek the Firm's permission to communicate with those individuals or even advise us that you were considering doing so.

420.    The seventh bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

421.    As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

422.    As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination also contains unprotected derogatory

139

statements of opinion that imply a basis in facts which are not disclosed to the reader.

423. As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

424. The eighth bullet-point paragraph of the Letter of Termination further states:

> Finally, despite the fact that you have acknowledged that you have no illness or medical condition, and air quality testing was done to ensure there is no problem, you have refused to come to work.

425. The eighth bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

426. As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

427. As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory

140

statements of opinion that imply a basis in facts which are not disclosed to the reader.

428.   As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

429.   In addition, the Letter of Termination further states, *inter alia*:

> We have reached the point where we have no confidence that you will conduct yourself in an appropriate way and exercise appropriate judgment.

430.   The aforementioned paragraph of Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

431.   As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

432.   As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory

141

statements of opinion that imply a basis in facts which are not disclosed to the reader.

433.    As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

434.    In addition, the Letter of Termination further states, *inter alia*:

> In short, this decision has been long in coming, as there have been many incidents during your employment here that have caused the partners to have serious concerns about your judgment and ability to work with others. We have therefore decided that your employment with the Firm should end, effective immediately.

435.    The aforementioned paragraph of Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

436.    As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

437.    As discussed in paragraphs 98 through 162, herein, the aforementioned paragraph of the Letter of Termination also contains unprotected

142

derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

438.    As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

439.    The Letter of Termination further states, *inter alia*:

> Our response to any inquiries about your employment with us will be limited to confirming the dates of your employment and your position.

440.    The aforementioned paragraph of Schoeman's Letter of Termination constitutes defamation by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

441.    As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contain a defamatory inference that plaintiff was a poor employee and that Schoeman has nothing good to say about plaintiff.

442.    It is widely known amongst employers that when a prospective employee's prior employer states that it will only confirm the dates of an employee's employment and the employee's position, that means that the employee was a poor employee.

143

443. During interviews, after plaintiff was forced to repeat the contents of the aforementioned paragraph of the Letter of Termination when asked if Schoeman would say good things about her, the prospective employers immediately lost all interest in plaintiff and all communications with plaintiff were terminated.

444. The negative inference that plaintiff was a poor employee is a defamatory false statement of fact that Schoeman knew to be false.

445. The negative inference that plaintiff was a poor employee is a defamatory unprotected derogatory statement of opinion that implies a basis in facts which are not disclosed to the reader in the Letter of Termination.

446. The negative inference that plaintiff was a poor employee is an unprotected derogatory statement of opinion that gives the impression that it sets forth the facts upon which the opinion is based, but those underlying facts are falsely misrepresented and grossly distorted in the Letter of Termination.

447. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff unprofessional conduct.

448. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff improper performance of her duties as an attorney.

144

449. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff an unfitness to practice as an attorney.

450. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff in her business and profession.

451. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff's reputation as an attorney.

452. The motivation of Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher in making the defamatory false statements of fact and opinion and false defamatory inferences regarding plaintiff in the Letter of Termination was malicious. The statements were made with malice, spite, and ill will, with knowledge of their falsity and with a reckless disregard for their falsity in retaliation for plaintiff's having exercised her rights under the OSH Act, for plaintiff's having contacted the Occupational Safety and Health Administration, and for plaintiff's having complained of the other unlawful conduct at Schoeman discussed herein.

453. Upon information and belief, the Letter of Termination, which was signed by Mindy H. Stern, was drafted by Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

145

454. The Letter of Termination and the contents of the Letter of Termination were published by Schoeman and by Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to third parties, including, but not limited to, other employees at Schoeman and parties outside of Schoeman.

455. Schoeman's Letter of Termination was written and published to third parties under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

456. In addition, plaintiff was forced to publish the Letter of Termination and the contents of the Letter of Termination to third parties.

457. The libelous statements contained in the Letter of Termination, including, but not limited to Schoeman's statement that it will only confirm the dates of plaintiff's employment and her position, have caused plaintiff serious harm, including, but not limited to: plaintiff's loss of employment, plaintiff's inability to secure other employment, severe damage to plaintiff's reputation, severe economic damage, including loss of wages, the loss of plaintiff home, and emotional distress.

## FOURTH CAUSE OF ACTION
### DEFAMATION PER SE BY SCHOEMAN, MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER

458. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

146

459. Schoeman's Letter of Termination constitutes defamation *per se* by defendant Schoeman.

460. As discussed herein, the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

461. As discussed herein, the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

462. As discussed herein, the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

463. First, the Letter of Termination states:

> Although you are an employee at will under New York law, and may therefore be terminated at any time for any reason or no reason, we believe it is both fair to you and otherwise useful to spell out the considerations that led to our decision and have done so below.
>
> After consideration over a period of time, we have come to the conclusion that we do not have confidence in your judgment or your ability to work effectively with your colleagues. We have come to this conclusion after reflecting on the incidents described below, among others.

147

464. The above paragraphs, which indicate that plaintiff was terminated for cause, constitute defamation *per se* by defendants Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher. As discussed herein, the "causes" listed by Schoeman contain blatant distortions of the truth and falsely and maliciously attempt to make it appear as though Schoeman had cause to terminate plaintiff. However, the correct version of the facts as they transpired makes clear that there was no lawful cause for plaintiff's termination.

465. The first bullet-point paragraph in the Letter of Termination states:

> The first incident occurred in the summer of 2010 when we were preparing a response to a questionnaire from our insurance carrier and you refused to answer a question about whether any claims had been made against you. We let this issue pass but it did raise concerns on our part about your candor and willingness to speak openly to your colleagues.

466. The first bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

467. As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

148

468.    As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

469.    As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

470.    The second bullet-point paragraph of the Letter of Termination further states:

> Also in 2010, there was a disturbing incident involving your refusal to share material you had prepared at the Firm's request and on the Firm's time for another project with which Deirdre Sheridan was involved. You even accused her of "plagiarism", which was highly inappropriate. This was an example of poor judgment on your part and an inability to work well with your colleagues.

471.    The second bullet-point paragraph in the Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

472.    As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination contains unprotected defamatory false

149

statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

473.    As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

474.    As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

475.    The third bullet-point paragraph of the Letter of Termination states:

> In January 2012, there was a heated exchange between you and our colleagues at Reed Smith that again demonstrated poor judgment on your part and an inability to get along well with your colleagues. Your emails to them, sent without consulting Charles Updike, the supervising partner, were totally inappropriate communications.

476.    The third bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

477. As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

478. As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

479. As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

480. The fourth bullet-point paragraph of the Letter of Termination states:

> A similar incident occurred in April 2012 when you accused a colleague of religious discrimination because she asked if you could work over the weekend, not knowing that you were a Sabbath observer who could not work on Saturday. Again, your reaction demonstrated both poor judgment and an inability to have constructive dialogue with your colleagues. A further indication of your poor judgment in our view was your refusal to participate in the investigation that we felt obligated to conduct because of your complaint of religious discrimination.

151

481. The fourth bullet-point paragraph in the Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

482. As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

483. As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

484. As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

485. The fifth bullet-point paragraph of the Letter of Termination states:

> Another more recent incident of poor judgment occurred during our discussions about the content of a letter demanding payment of legal fees in full by an insurance carrier. Your vigorous opposition to that approach was listened to and taken into account. Your adamant refusal to cooperate in making the demand, however, again reflected poor

152

> judgment on your part, especially in light of your unresponsiveness to the suggestion that you research the issue.

486. The fifth bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

487. As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

488. As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

489. As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

490. The sixth bullet-point paragraph of the Letter of Termination states:

> Another example was your persistence in raising specious questions about advice we received from an Israeli lawyer about a transfer of real estate last

153

> year and your refusal to continue working on the matter. Again, this reflected poor judgment on your part.

491. The sixth bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

492. As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

493. As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

494. As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

495. The seventh bullet-point paragraph of the Letter of Termination states:

154

Most recently, you have shown poor judgment in other communications regarding the office relocation. While you certainly have the right to complain about conditions in the office, there are appropriate procedures for doing so. Your decision to send an email about your concerns to the entire office reflected poor judgment, as did your belligerent and adversarial communications with our architect and landlord, particularly because you did not seek the Firm's permission to communicate with those individuals or even advise us that you were considering doing so.

496.   The seventh bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

497.   As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

498.   As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

499.   As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon

155

which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

500. The eighth bullet-point paragraph of the Letter of Termination states:

> Finally, despite the fact that you have acknowledged that you have no illness or medical condition, and air quality testing was done to ensure there is no problem, you have refused to come to work.

501. The eighth bullet-point paragraph in Schoeman's Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

502. As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

503. As discussed in paragraphs 98 through 162, herein, the eighth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

504. As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon

156

which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

505.   In addition, the Letter of Termination further states, *inter alia*:

> We have reached the point where we have no confidence that you will conduct yourself in an appropriate way and exercise appropriate judgment.

506.   The aforementioned paragraph of Schoeman's Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

507.   As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

508.   As discussed in paragraphs 98 through 162, herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

509.   As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon

157

which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

510.   In addition, the Letter of Termination further states, *inter alia*:

> In short, this decision has been long in coming, as there have been many incidents during your employment here that have caused the partners to have serious concerns about your judgment and ability to work with others. We have therefore decided that your employment with the Firm should end, effective immediately.

511.   The aforementioned paragraph of Schoeman's Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

512.   As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

513.   As discussed in paragraphs 98 through 162, herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

514.   As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon

158

which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

515.   The Letter of Termination further states, *inter alia*:

> Our response to any inquiries about your employment with us will be limited to confirming the dates of your employment and your position.

516.   The aforementioned paragraph of Schoeman's Letter of Termination constitutes defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

517.   As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains a defamatory inference that plaintiff was a poor employee and that Schoeman has nothing good to say about plaintiff.

518.   It is widely known amongst employers that when a prospective employee's prior employer states that it will only confirm the dates of an employee's employment and the employee's position, that means that the employee was a poor employee.

519.   During interviews, after plaintiff was forced to repeat the contents of the aforementioned paragraph of the Letter of Termination when asked if Schoeman would say good things about her, the prospective employers immediately lost all interest in plaintiff and all communications with plaintiff were terminated.

159

520.    The negative inference that plaintiff was a poor employee is a defamatory false statement of fact that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

521.    The negative inference that plaintiff was a poor employee is a defamatory unprotected derogatory statement of opinion that implies a basis in facts which are not disclosed to the reader in the Letter of Termination.

522.    The negative inference that plaintiff was a poor employee is an unprotected derogatory statement of opinion that gives the impression that it sets forth the facts upon which the opinion is based, but those underlying facts are falsely misrepresented and grossly distorted in the Letter of Termination.

523.    The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff unprofessional conduct.

524.    The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff improper performance of her duties as an attorney.

525.    The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff an unfitness to practice as an attorney.

160

526. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff in her business and profession.

527. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff's reputation as an attorney.

528. The motivation of Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher in making the defamatory false statements of fact and opinion and false defamatory inferences regarding plaintiff in the Letter of Termination was malicious. The statements were made with malice, spite, and ill will, with knowledge of their falsity and with a reckless disregard for their falsity in retaliation for plaintiff's having exercised her rights under the OSH Act, for plaintiff's having contacted the Occupational Safety and Health Administration and for plaintiff's having complained of the other unlawful conduct at Schoeman discussed herein.

529. Upon information and belief, the Letter of Termination, which was signed by Mindy H. Stern, was drafted by Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

530. The Letter of Termination and the contents of the Letter of Termination were published by Schoeman and by Mindy H. Stern, Beth L.

161

Kaufman, Charles B. Updike, and Andrea D. Ascher to third parties, including, but not limited to, other employees at Schoeman and parties outside of Schoeman.

531.    Schoeman's Letter of Termination was written and published to third parties under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

532.    In addition, plaintiff was forced to publish the Letter of Termination and the contents of the Letter of Termination to third parties.

533.    The libelous statements contained in the Letter of Termination, including, but not limited to Schoeman's statement that it will only confirm the dates of plaintiff's employment and her position, have caused plaintiff serious harm, including, but not limited to: plaintiff's loss of employment, plaintiff's inability to secure other employment, severe damage to plaintiff's reputation, severe economic damage, including loss of wages, the loss of plaintiff home, and emotional distress.

## FIFTH CAUSE OF ACTION
## SLANDER BY SCHOEMAN, MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER

534.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

535.    Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher are liable to plaintiff for slander. As discussed herein, the Letter of Termination is replete with libelous statements that were also orally published.

162

536. As discussed in paragraphs 98 through 162 herein, the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

537. As discussed in paragraphs 98 through 162 herein, the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

538. As discussed in paragraphs 98 through 162 herein, the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

539. First, the Letter of Termination states:

> Although you are an employee at will under New York law, and may therefore be terminated at any time for any reason or no reason, we believe it is both fair to you and otherwise useful to spell out the considerations that led to our decision and have done so below.
>
> After consideration over a period of time, we have come to the conclusion that we do not have confidence in your judgment or your ability to work effectively with your colleagues. We have come to this conclusion after reflecting on the incidents described below, among others.

540. The above paragraphs, which indicate that plaintiff was terminated for cause, constitute libel by defendants Schoeman and Mindy H. Stern, Beth L.

163

Kaufman, Charles B. Updike, and Andrea D. Ascher. As discussed herein, the "causes" listed by Schoeman contain blatant distortions of the truth and falsely and maliciously attempt to make it appear as though Schoeman had cause to terminate plaintiff. However, the correct version of the facts as they transpired makes clear that there was no lawful cause for plaintiff's termination.

541.    The first bullet-point paragraph of the Letter of Termination states:

> The first incident occurred in the summer of 2010 when we were preparing a response to a questionnaire from our insurance carrier and you refused to answer a question about whether any claims had been made against you. We let this issue pass but it did raise concerns on our part about your candor and willingness to speak openly to your colleagues.

542.    This paragraph constitutes libel by defendants Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

543.    As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

544.    As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

164

545.   As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

546.   The second bullet-point paragraph in the Letter of Termination states:

> Also in 2010, there was a disturbing incident involving your refusal to share material you had prepared at the Firm's request and on the Firm's time for another project with which Deirdre Sheridan was involved.  You even accused her of "plagiarism", which was highly inappropriate.  This was an example of poor judgment on your part and an inability to work well with your colleagues.

547.   The second bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

548.   As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

549.   As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination also contains unprotected derogatory

165

statements of opinion that imply a basis in facts which are not disclosed to the reader.

550.    As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination also contains unprotected derogotary statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

551.    The third bullet-point paragraph in the Letter of Termination states:

> In January 2012, there was a heated exchange
> between you and our colleagues at Reed Smith that
> again demonstrated poor judgment on your part
> and an inability to get along well with your
> colleagues. Your emails to them, sent without
> consulting Charles Updike, the supervising
> partner, were totally inappropriate
> communications.

552.    The third bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

553.    As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

166

554.    As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

555.    As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

556.    The fourth bullet-point paragraph in the Letter of Termination states:

> A similar incident occurred in April 2012 when you accused a colleague of religious discrimination because she asked if you could work over the weekend, not knowing that you were a Sabbath observer who could not work on Saturday. Again, your reaction demonstrated both poor judgment and an inability to have constructive dialogue with your colleagues. A further indication of your poor judgment in our view was your refusal to participate in the investigation that we felt obligated to conduct because of your complaint of religious discrimination.

557.    The fourth bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

167

558. As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

559. As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

560. As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

561. The fifth bullet-point paragraph in the Letter of Termination states:

> Another more recent incident of poor judgment occurred during our discussions about the content of a letter demanding payment of legal fees in full by an insurance carrier. Your vigorous opposition to that approach was listened to and taken into account. Your adamant refusal to cooperate in making the demand, however, again reflected poor judgment on your part, especially in light of your unresponsiveness to the suggestion that you research the issue.

168

562.    The fifth bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

563.    As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

564.    As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

565.    As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

566.    The sixth bullet-point paragraph in the Letter of Termination states:

> Another example was your persistence in raising
> specious questions about advice we received from
> an Israeli lawyer about a transfer of real estate last
> year and your refusal to continue working on the
> matter.  Again, this reflected poor judgment on
> your part.

169

567.    The sixth bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

568.    As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

569.    As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

570.    As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

571.    The seventh bullet-point paragraph in the Letter of Termination states:

> Most recently, you have shown poor judgment in other communications regarding the office relocation. While you certainly have the right to complain about conditions in the office, there are appropriate procedures for doing so. Your decision

170

to send an email about your concerns to the entire office reflected poor judgment, as did your belligerent and adversarial communications with our architect and landlord, particularly because you did not seek the Firm's permission to communicate with those individuals or even advise us that you were considering doing so.

572. The seventh bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

573. As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

574. As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

575. As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

576. The eighth bullet-point paragraph in the Letter of Termination states:

171

> Finally, despite the fact that you have acknowledged that you have no illness or medical condition, and air quality testing was done to ensure there is no problem, you have refused to come to work.

577. The eighth bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

578. As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

579. As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

580. As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

581. In addition, the Letter of Termination further states:

172

> We have reached the point where we have no confidence that you will conduct yourself in an appropriate way and exercise appropriate judgment.

582. The aforementioned paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

583. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

584. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

585. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

586. In addition, the Letter of Termination further states:

> In short, this decision has been long in coming, as there have been many incidents during your

173

employment here that have caused the partners to have serious concerns about your judgment and ability to work with others. We have therefore decided that your employment with the Firm should end, effective immediately.

587. The aforementioned paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

588. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

589. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

590. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

591. In addition, the Letter of Termination further states, *inter alia*:

174

> Our response to any inquiries about your employment with us will be limited to confirming the dates of your employment and your position.

592. The aforementioned paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

593. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains a defamatory inference that plaintiff was a poor employee and that Schoeman has nothing good to say about plaintiff.

594. It is widely known amongst employers that when a prospective employee's prior employer states that it will only confirm the dates of an employee's employment and the employee's position, that means that the employee was a poor employee.

595. During interviews, after plaintiff was forced to repeat the contents of the aforementioned paragraph of the Letter of Termination when asked if Schoeman would say good things about her, the prospective employers immediately lost all interest in plaintiff and all communications with plaintiff were terminated.

596. The negative inference that plaintiff was a poor employee is a defamatory false statement of fact that Schoeman knew to be false.

175

597. The negative inference that plaintiff was a poor employee is a defamatory unprotected derogatory statement of opinion that implies a basis in facts which are not disclosed to the reader in the Letter of Termination.

598. The negative inference that plaintiff was a poor employee is an unprotected derogatory statement of opinion that gives the impression that it sets forth the facts upon which the opinion is based, but those underlying facts are falsely misrepresented and grossly distorted in the Letter of Termination.

599. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff unprofessional conduct.

600. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff improper performance of her duties as an attorney.

601. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff an unfitness to practice as an attorney.

602. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff in her business and profession.

176

603.   The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff's reputation as an attorney.

604.   Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher orally published the contents of the Letter of Termination to third parties.

605.   Schoeman's Letter of Termination and the contents of the Letter of Termination were orally published to third parties under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

606.   In addition, plaintiff was forced to orally publish the Letter of Termination and the contents of the Letter of Termination to third parties.

607.   Schoeman's motivation in making the defamatory false statements of fact and opinion and false inferences regarding plaintiff was malicious.  The statements were made with malice, spite, and ill will, with knowledge of their falsity, and with a reckless disregard for their falsity in retaliation for plaintiff's having exercised her rights under the OSH Act, for plaintiff's having contacted the Occupational Safety and Health Administration, and for plaintiff's having complained of the other unlawful conduct at Schoeman discussed herein.

608.   The libelous statements contained in the Letter of Termination, which were also orally published, including, but not limited to Schoeman's statement that

177

it will only confirm the dates of plaintiff's employment and her position, have caused plaintiff serious harm, including, but not limited to: plaintiff's loss of employment, plaintiff's inability to secure other employment, severe damage to plaintiff's reputation, severe economic damage, including loss of wages, the loss of plaintiff's home, and emotional distress.

### SIXTH CAUSE OF ACTION
### SLANDER PER SE BY SCHOEMAN, MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER

609. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

610. Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher are liable to plaintiff for slander *per se*. As discussed herein, the Letter of Termination is replete with libelous statements that were also orally published.

611. As discussed in paragraphs 98 through 162 herein, the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman knew to be false.

612. As discussed in paragraphs 98 through 162 herein, the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

613. As discussed in paragraphs 98 through 162 herein, the Letter of Termination also contains unprotected derogatory statements of opinion that give

178

the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

614.  First, the Letter of Termination states:

> Although you are an employee at will under New York law, and may therefore be terminated at any time for any reason or no reason, we believe it is both fair to you and otherwise useful to spell out the considerations that led to our decision and have done so below.

> After consideration over a period of time, we have come to the conclusion that we do not have confidence in your judgment or your ability to work effectively with your colleagues. We have come to this conclusion after reflecting on the incidents described below, among others.

615.  The above paragraphs, which indicate that plaintiff was terminated for cause, constitute libel by defendants Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher. As discussed herein, the "causes" listed by Schoeman contain blatant distortions of the truth and falsely and maliciously attempt to make it appear as though Schoeman had cause to terminate plaintiff. However, the correct version of the facts as they transpired makes clear that there was no lawful cause for plaintiff's termination.

616.  The first bullet-point paragraph of the Letter of Termination states:

> The first incident occurred in the summer of 2010 when we were preparing a response to a questionnaire from our insurance carrier and you refused to answer a question about whether any claims had been made against you. We let this

179

> issue pass but it did raise concerns on our part about your candor and willingness to speak openly to your colleagues.

617. This paragraph constitutes libel by defendants Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher

618. As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

619. As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

620. As discussed in paragraphs 98 through 162 herein, the first bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

621. The second bullet-point paragraph in the Letter of Termination states:

> Also in 2010, there was a disturbing incident involving your refusal to share material you had prepared at the Firm's request and on the Firm's time for another project with which Deirdre Sheridan was involved. You even accused her of

180

> "plagiarism", which was highly inappropriate. This
> was an example of poor judgment on your part and
> an inability to work well with your colleagues.

622. The second bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

623. As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

624. As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

625. As discussed in paragraphs 98 through 162 herein, the second bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

626. The third bullet-point paragraph in the Letter of Termination states:

> In January 2012, there was a heated exchange
> between you and our colleagues at Reed Smith that
> again demonstrated poor judgment on your part

181

and an inability to get along well with your colleagues. Your emails to them, sent without consulting Charles Updike, the supervising partner, were totally inappropriate communications.

627. The third bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

628. As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

629. As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

630. As discussed in paragraphs 98 through 162 herein, the third bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

631. The fourth bullet-point paragraph in the Letter of Termination states:

182

> A similar incident occurred in April 2012 when you accused a colleague of religious discrimination because she asked if you could work over the weekend, not knowing that you were a Sabbath observer who could not work on Saturday.  Again, your reaction demonstrated both poor judgment and an inability to have constructive dialogue with your colleagues.  A further indication of your poor judgment in our view was your refusal to participate in the investigation that we felt obligated to conduct because of your complaint of religious discrimination.

632.    The fourth bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

633.    As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

634.    As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

635.    As discussed in paragraphs 98 through 162 herein, the fourth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon

183

which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

636.    The fifth bullet-point paragraph in the Letter of Termination states:

Another more recent incident of poor judgment occurred during our discussions about the content of a letter demanding payment of legal fees in full by an insurance carrier. Your vigorous opposition to that approach was listened to and taken into account. Your adamant refusal to cooperate in making the demand, however, again reflected poor judgment on your part, especially in light of your unresponsiveness to the suggestion that you research the issue.

637.    The fifth bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

638.    As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

639.    As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

184

640.    As discussed in paragraphs 98 through 162 herein, the fifth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

641.    The sixth bullet-point paragraph in the Letter of Termination states:

> Another example was your persistence in raising specious questions about advice we received from an Israeli lawyer about a transfer of real estate last year and your refusal to continue working on the matter.  Again, this reflected poor judgment on your part.

642.    The sixth bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

643.    As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

644.    As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

185

645. As discussed in paragraphs 98 through 162 herein, the sixth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

646. The seventh bullet-point paragraph in the Letter of Termination states:

> Most recently, you have shown poor judgment in other communications regarding the office relocation. While you certainly have the right to complain about conditions in the office, there are appropriate procedures for doing so. Your decision to send an email about your concerns to the entire office reflected poor judgment, as did your belligerent and adversarial communications with our architect and landlord, particularly because you did not seek the Firm's permission to communicate with those individuals or even advise us that you were considering doing so.

647. The seventh bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

648. As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

186

649.    As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

650.    As discussed in paragraphs 98 through 162 herein, the seventh bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

651.    The eighth bullet-point paragraph in the Letter of Termination states:

> Finally, despite the fact that you have acknowledged that you have no illness or medical condition, and air quality testing was done to ensure there is no problem, you have refused to come to work.

652.    The eighth bullet-point paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

653.    As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

187

654.  As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

655.  As discussed in paragraphs 98 through 162 herein, the eighth bullet-point paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

656.  In addition, the Letter of Termination further states:

> We have reached the point where we have no confidence that you will conduct yourself in an appropriate way and exercise appropriate judgment.

657.  The aforementioned paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

658.  As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

188

659. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

660. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

661. In addition, the Letter of Termination further states:

> In short, this decision has been long in coming, as there have been many incidents during your employment here that have caused the partners to have serious concerns about your judgment and ability to work with others. We have therefore decided that your employment with the Firm should end, effective immediately.

662. The aforementioned paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

663. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew to be false.

189

664. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

665. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

666. In addition, the Letter of Termination further states, *inter alia*:

> Our response to any inquiries about your employment with us will be limited to confirming the dates of your employment and your position.

667. The aforementioned paragraph in Schoeman's Letter of Termination constitutes libel by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

668. As discussed in paragraphs 98 through 162 herein, the aforementioned paragraph of the Letter of Termination contain a defamatory inference that plaintiff was a poor employee and that Schoeman has nothing good to say about plaintiff.

669. It is widely known amongst employers that when a prospective employee's prior employer states that it will only confirm the dates of an employee's

190

employment and the employee's position, that means that the employee was a poor employee.

670.    During interviews, after plaintiff was forced to repeat the contents of the aforementioned paragraph of the Letter of Termination when asked if Schoeman would say good things about her, the prospective employers immediately lost all interest in plaintiff and all communications with plaintiff were terminated.

671.    The negative inference that plaintiff was a poor employee is a defamatory false statement of fact that Schoeman knew to be false.

672.    The negative inference that plaintiff was a poor employee is a defamatory unprotected derogatory statement of opinion that implies a basis in facts which are not disclosed to the reader in the Letter of Termination.

673.    The negative inference that plaintiff was a poor employee is an unprotected derogatory statement of opinion that gives the impression that it sets forth the facts upon which the opinion is based, but those underlying facts are falsely misrepresented and grossly distorted in the Letter of Termination.

674.    The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff unprofessional conduct.

675.    The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff improper performance of her duties as an attorney.

191

676. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, imputes to plaintiff an unfitness to practice as an attorney.

677. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff in her business and profession.

678. The Letter of Termination, including, but not limited to, Schoeman's statement that it would only confirm the dates of plaintiff's employment and her position, intended to and did injure plaintiff's reputation as an attorney.

679. Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher orally published the contents of the Letter of Termination to third parties.

680. In addition, Schoeman's Letter of Termination and the contents of the Letter of Termination were orally published to third parties under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

681. In addition, plaintiff was forced to orally publish the Letter of Termination and the contents of the Letter of Termination to third parties.

682. The motivation of Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher in making the defamatory false statements of fact and opinion and false defamatory inferences regarding plaintiff

192

was malicious. The statements were made with malice, spite, and ill will, with knowledge of their falsity, and with a reckless disregard for their falsity in retaliation for plaintiff's having exercised her rights under the OSH Act, for plaintiff's having contacted the Occupational Safety and Health Administration, and for plaintiff's having complained of the other unlawful conduct at Schoeman discussed herein.

683. The libelous statements contained in the Letter of Termination, including, but not limited to Schoeman's statement that it will only confirm the dates of plaintiff's employment and her position, have caused plaintiff serious harm, including, but not limited to: plaintiff's loss of employment, plaintiff's inability to secure other employment, severe damage to plaintiff's reputation, severe economic damage, including loss of wages, the loss of plaintiff's home, and emotional distress.

## SEVENTH CAUSE OF ACTION
## LIBEL, DEFAMATION, AND SLANDER IN LAURIE ZELIGSON'S INVESTIGATION REPORT

684. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

685. As discussed herein, Laurie Zeligson's Investigation Report dated June 26, 2012 constitutes libel, libel *per se*, defamation, and defamation *per se* by defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, Andrea D. Ascher, the Zeligson Firm, Laurie Zeligson, Susan S. Casero, Cindy

193

Nygaard, Reed Smith LLP, and Paul E. Breene and also documents slander by these defendants.

686. As discussed herein, the Investigation Report contains unprotected defamatory false statements of fact regarding plaintiff that Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, Andrea D. Ascher, Laurie Zeligson, Susan S. Casero, Cindy Nygaard, Reed Smith LLP, and Paul E. Breene knew to be false.

687. As discussed herein, the Investigation Report also contains unprotected derogatory statements of opinion that imply a basis in facts which are not disclosed to the reader.

688. As discussed herein, the Investigation Report also contains unprotected derogatory statements of opinion that give the impression that they set forth the facts upon which the opinions are based, but those underlying facts are falsely misrepresented and grossly distorted.

689. The Investigation Report imputes to plaintiff unprofessional conduct.

690. The Investigation Report imputes to plaintiff improper performance of her duties as an attorney.

691. The Investigation Report imputes to plaintiff an unfitness to practice as an attorney.

692. The Investigation Report intended to and did injure plaintiff in her business and profession.

194

693. The Investigation Report intended to and did injure plaintiff's reputation as an attorney.

694. The motivation of Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, Andrea D. Ascher, Laurie Zeligson, Susan S. Casero, Cindy Nygaard, Reed Smith LLP, and Paul E. Breene in making the defamatory false statements of fact and opinion and the defamatory false inferences regarding plaintiff contained in the Investigation Report was malicious. The statements were made with malice, spite, and ill will, with knowledge of their falsity.

695. The Investigation Report and the contents of the Investigation Report were published by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, Andrea D. Ascher, the Zeligson Firm, and Laurie Zeligson to third parties, including, but not limited to, other employees at Schoeman and parties outside of Schoeman.

696. The Investigation Report was written and published to third parties under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

697. The libelous statements in the Investigation Report were republished by Schoeman in its Letter of Termination dated April 24, 2013.

195

698. The libelous statements in the Investigation Report were again republished by Scheman on or about June 11, 2013 when Schoeman sent the Investigation Report to others outside of Schoeman.

699. The libelous statements contained in the Investigation Report have caused plaintiff serious harm, including, but not limited to: plaintiff's loss of employment, plaintiff's inability to secure other employment, severe damage to plaintiff's reputation, severe economic damage, including loss of wages, the loss of plaintiff' home, and emotional distress.

## EIGHTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS BY MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER

700. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

701. Plaintiff had a business relationship with Schoeman while she was employed at Schoeman.

702. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher knew of plaintiff's business relationship with Schoeman and intentionally interfered with it by, among other things: (i) grossly misrepresenting the facts relating to plaintiff's refusal to cooperate in Schoeman and Mindy H. Stern's attempts to defraud the IRS; (ii) by, as discussed herein, libeling and slandering plaintiff to other members and employees of Schoeman on numerous occasions; (iii)

196

by slandering and libeling plaintiff to Laurie S. Zeligson in or about June of 2012 in connection with Ms. Zeligson's preparation of a report regarding plaintiff's claims of religious discrimination at Schoeman; (iv) by presenting a grossly distorted version of what transpired during the exchange between plaintiff and the attorneys at Reed Smith and by libeling and slandering plaintiff to other members and employees of Schoeman and others regarding such incident; (v) by grossly distorting the facts relating to plaintiff's refusal to participate in a fraudulent payment demand to an insurance company that Charles B. Updike asked plaintiff to cooperate with; (vi) by relocating Schoeman's office to the twelfth floor of 551 Fifth Avenue over the weekend of April 5, 2013 despite their knowledge that the construction work was not completed and that the air on the twelfth floor caused plaintiff to become sick; and (vii) by refusing to allow plaintiff to work from home despite the ongoing construction work at Schoeman that caused plaintiff to experience heavy coughing and nausea.

703.   Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher acted solely out of malice and used unfair and dishonest means to interfere with plaintiff's business relationship with Schoeman and to induce Schoeman to terminate plaintiff.

704.   The interference of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher with plaintiff's business relationship with Schoeman caused serious injury to plaintiff's business relationship with Schoeman, resulting

in plaintiff's vindictive termination by Schoeman, which caused plaintiff serious harm, as discussed herein.

## NINTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS BY SCHOEMAN, MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER

705.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

706.    By unlawfully terminating plaintiff in the vindictive manner in which plaintiff was terminated, Schoeman has prevented plaintiff from obtaining other employment and has intentionally interfered with the prospective contracts between plaintiff and prospective employers.

707.    By libeling and slandering plaintiff in the Letter of Termination and at subsequent times, including when contacted by prospective employers regarding plaintiff, Schoeman has prevented plaintiff from obtaining other employment and has interfered with the prospective contracts between plaintiff and prospective employers.

708.    Each time Schoeman was contacted by a prospective employer, it knew of a prospective contract between plaintiff and such prospective employer.

709.    Upon information and belief, Schoeman was contacted by numerous prospective employers regarding plaintiff. Upon information and belief, each time a prospective employer contacted Schoeman regarding plaintiff, Schoeman refused to

198

say anything good about plaintiff and led the prospective employers to believe that plaintiff was a poor employee.

710.   Schoeman's interference with plaintiff's prospective contracts was done with malice, spite, and ill will in retaliation for plaintiff's having exercised her rights under the OSH Act, for plaintiff's having contacted the Occupational Safety and Health Administration, and for plaintiff's having complained of the other unlawful conduct at Schoeman discussed herein.

711.   Plaintiff sustained serious damages as a result of Schoeman's interference with plaintiff's prospective contracts, including, but not limited to, plaintiff's inability to secure other employment, severe damage to plaintiff's reputation, severe economic damage, the loss of plaintiff's home, and severe emotional distress.

712.   Schoeman's tortious interference with plaintiff's prospective business relations was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

713.   In addition, each of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike and Andrea D. Ascher played an active role in tortiously interfering with plaintiff's prospective business relations.

199

714. The Letter of Termination was signed by Mindy H. Stern and, upon information and belief, drafted by Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher.

715. In addition, each of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher made a decision to unlawfully terminate plaintiff.

716. In addition, each of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher libeled, defamed, and slandered plaintiff on numerous occasions, as discussed herein.

717. In addition, each of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher refused to say anything good about plaintiff to prospective employers.

## TENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY SCHOEMAN, MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER

718. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

719. Defendants Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher are liable to plaintiff for intentional infliction of emotional distress.

200

720.    As discussed herein, Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher acted with extreme and outrageous conduct.

721.    The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to refuse to allow plaintiff to work from home while there was serious construction and renovation work ongoing at Schoeman that caused plaintiff to experience symptoms of heavy coughing and nausea and to terminate plaintiff because, among other unlawful reasons, of her insistence on working from home constitutes extreme and outrageous conduct.

722.    The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to unlawfully terminate plaintiff just nine days after she filed a work safety complaint with OSHA in retaliation for, among other things, her having filed a complaint with OSHA constitutes extreme and outrageous conduct.

723.    The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to unlawfully terminate plaintiff because, among other unlawful reasons, of her complaining that another colleague had plagiarized her work constitutes extreme and outrageous conduct.

724.    The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to include in the Letter of Termination a grossly distorted version of what transpired between plaintiff and Deirdre J.

201

Sheridan and to make it seem as though plaintiff, rather than Ms. Sheridan, acted improperly constitutes extreme and outrageous conduct.

725. The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, and Andrea D. Ascher to terminate plaintiff because, among other unlawful reasons, of her proper attempts to ensure that her co-counsel at Reed Smith did not include a factually incorrect material statement in summary judgment papers in their effort to deceive the court and an insurance company constitutes extreme and outrageous conduct.

726. The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to include in the Letter of Termination a grossly distorted version of what transpired between plaintiff and the attorneys at Reed Smith constitutes extreme and outrageous conduct.

727. The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to terminate plaintiff because, among other unlawful reasons, she was subjected to religious discrimination at Schoeman and complained of such discrimination constitutes extreme and outrageous conduct.

728. The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to include in the Letter of Termination a grossly distorted version of what transpired between plaintiff and Susan S. Casero in April of 2012 constitutes extreme and outrageous conduct.

202

729.    The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to terminate plaintiff because, among other unlawful reasons, she refused to cooperate with an insurance fraud scheme perpetrated by Schoeman, among others, constitutes extreme and outrageous conduct.

730.    The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to grossly distort the facts surrounding plaintiff's refusal to cooperate in the making of a certain fraudulent payment demand to an insurance carrier constitutes extreme and outrageous conduct.

731.    The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to terminate plaintiff because, among other unlawful reasons, of her refusal to participate in Schoeman's and Mindy H. Stern's attempts to defraud the IRS constitutes extreme and outrageous conduct.

732.    The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to grossly distort in the Letter of Termination the facts surrounding plaintiff's refusal to cooperate with Schoeman and Mindy H. Stern in their attempts to defraud the IRS constitutes extreme and outrageous conduct.

733.    The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to grossly distort the facts surrounding

203

plaintiff's refusal to come into the office and insistence on working from home in April of 2013 constitutes extreme and outrageous conduct.

734.  The decision made by Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher to grossly distort in its Letter of Termination the facts surrounding plaintiff's communicating with the entire firm and the firm's landlord and architect regarding the unsafe work conditions at Schoeman constitutes extreme and outrageous conduct.

735.  Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher intended to cause, or disregarded the substantial probability of causing, severe emotional distress to plaintiff as a result of their actions.

736.  As a result of the aforementioned extreme and outrageous conduct, plaintiff has suffered extreme emotional distress.

## ELEVENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS BY
## LAURIE ZELIGSON AND THE ZELIGSON FIRM

737.  Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

738.  Plaintiff had a business relationship with Schoeman while she was employed at Schoeman.

739.  The Zeligson Firm and Laurie Zeligson knew of plaintiff's business relationship with Schoeman and intentionally interfered with it by, among other things, libeling, defaming and slandering plaintiff and intentionally conducting a

204

grossly biased and non-factual investigation into plaintiff's claims of religious discrimination and issuing an unsubstantiated and false report concluding that there was no basis to plaintiff's claims, which served as a basis for plaintiff's termination by Schoeman.

740.    The Zeligson Firm and Laurie Zeligson acted solely out of malice and used unfair and dishonest means to interfere with plaintiff's business relationship with Schoeman and to induce Schoeman to terminate plaintiff.

741.    The interference of Laurie Zeligson and the Zeligson Firm with plaintiff's business relationship with Schoeman caused serious injury to plaintiff's business relationship with Schoeman, resulting in plaintiff's vindictive termination by Schoeman, which caused plaintiff serious harm, as discussed herein.

### TWELFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY
### LAURIE ZELIGSON AND THE ZELIGSON FIRM

742.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

743.    Defendants the Zeligson Firm and Laurie Zeligson are liable to plaintiff for intentional infliction of emotional distress.

744.    As discussed herein, the Zeligson Firm and Laurie Zeligson acted with extreme and outrageous conduct.

745.    The act of conducting a biased investigation into plaintiff's claims of religious discrimination with the purpose of libeling, defaming, and slandering

205

plaintiff and concluding, without any basis, that there was no basis to plaintiff's claims constitutes extreme and outrageous conduct. The report issued which concluded, without any basis, that there was no basis to plaintiff's claims of religious discrimination, which served as a reason for plaintiff's termination, constitutes extreme and outrageous conduct.

746. The Zeligson Firm and Laurie Zeligson intended to cause, or disregarded the substantial probability of causing, severe emotional distress to plaintiff as a result of their actions.

747. As a result of the extreme and outrageous conduct of the Zeligson Firm and Laurie Zeligson, plaintiff has suffered extreme emotional distress.

**THIRTEENTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**
**BY SUSAN S. CASERO**

748. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

749. Plaintiff had a business relationship with Schoeman while she was employed at Schoeman.

750. Susan S. Casero knew of plaintiff's business relationship with Schoeman and intentionally interfered with it by, among other things, lying about her actions that prompted plaintiff's complaint of religious discrimination and libeling, defaming and slandering plaintiff during the investigation conducted into

206

plaintiff's claims of religious discrimination, thereby inducing Schoeman to terminate plaintiff.

751. Susan S. Casero acted solely out of malice and used unfair and dishonest means to interfere with plaintiff's business relationship with Schoeman.

752. Susan S. Casero's interference with plaintiff's business relationship with Schoeman caused serious injury to plaintiff's business relationship with Schoeman, resulting in plaintiff's vindictive termination by Schoeman, which caused plaintiff serious harm, as discussed herein. Susan S. Casero's lies and libelous, defamatory, and slanderous statements about plaintiff were used as the basis for a reason for plaintiff's termination.

## FOURTEENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## BY SUSAN S. CASERO

753. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

754. Susan S. Casero is liable to plaintiff for intentional infliction of emotional distress.

755. As discussed herein, Susan S. Casero acted with extreme and outrageous conduct.

756. Susan S. Casero's acts of subjecting plaintiff to religious discrimination and then lying about her actions that prompted plaintiff's claims of religious discrimination and libeling, slandering, and defaming plaintiff during the

207

investigation conducted into plaintiff's claims of religious discrimination constitute extreme and outrageous conduct.

757.   Susan S. Casero intended to cause, or disregarded the substantial probability of causing, severe emotional distress to plaintiff as a result of their actions.

758.   As a result of the extreme and outrageous conduct of Susan S. Casero, plaintiff has suffered extreme emotional distress.

### FIFTEENTH CAUSE OF ACTION
### SCHOEMAN'S VIOLATION OF SECTION 296(1)(a) OF THE NEW YORK EXECUTIVE LAW – UNLAWFUL DISCHARGE FROM EMPLOYMENT BECAUSE OF AGE

759.   Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

760.   Schoeman violated Section 296(1)(a) of the New York Executive Law, which provides that it shall be an unlawful discriminatory practice

> For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

208

761. As discussed herein, throughout plaintiff's employment at Schoeman, plaintiff was subjected to age discrimination by Schoeman and members and employees of Schoeman.

762. Plaintiff's young age was one of the reasons for her termination by Schoeman on April 24, 2013.

763. Under Section 296(1)(a) of the New York Executive Law, Schoeman was prohibited from terminating plaintiff because of her age.

764. Schoeman's violation of Section 296(1)(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## SIXTEENTH CAUSE OF ACTION
## SCHOEMAN'S VIOLATION OF SECTION 296(1)(a) OF THE NEW YORK EXECUTIVE LAW – DISCRIMINATION AGAINST PLAINTIFF IN COMPENSATION AND IN THE TERMS, CONDITIONS, AND PRIVILEGES OF HER EMPLOYMENT BECAUSE OF AGE

765. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

766. Schoeman violated Section 296(1)(a) of the New York Executive Law, which provides that it shall be an unlawful discriminatory practice

> For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to

209

discriminate against such individual in compensation or in terms, conditions or privileges of employment.

767. Plaintiff was discriminated against by Schoeman in plaintiff's compensation because of her age.

768. In addition, as discussed herein, throughout plaintiff's employment, Schoeman would repeatedly discriminate against plaintiff in the terms, conditions and privileges of plaintiff's employment because of plaintiff's age.

769. Schoeman's violation of Section 296(1)(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## SEVENTEENTH CAUSE OF ACTION
## VIOLATION OF SECTION 296(1)(d) OF THE NEW YORK EXECUTIVE LAW– PRINTING AND CIRCULATION OF STATEMENTS EXPRESSING DISCRIMINATION AS TO AGE AND AN INTENT TO DISCRIMINATE AS TO AGE

770. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

771. Schoeman violated Section 296(1)(d) of the New York Executive Law, which provides that it shall be an unlawful discriminatory practice

[f]or any employer or employment agency to print or circulate or cause to be printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses directly or indirectly, any limitation, specification or discrimination as to

210

age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics , or marital status, or any intent to make any such limitation, specification or discrimination, unless based upon a bona fide occupational qualification; provided, however, that neither this paragraph nor any provision of this chapter or other law shall be construed to prohibit the department of civil service or the department of personnel of any city containing more than one county from requesting information from applicants for civil service examinations concerning any of the aforementioned characteristics, other than sexual orientation, for the purpose of conducting studies to identify and resolve possible problems in recruitment and testing of members of minority groups to insure the fairest possible and equal opportunities for employment in the civil service for all persons, regardless of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status.

772.    As discussed herein, on numerous occasions, Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher printed and circulated and caused to be printed and circulated statements that express discrimination as to plaintiff's age and an intent to make such discrimination.

773.    Schoeman's violation of Section 296(1)(d) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

### EIGHTEENTH CAUSE OF ACTION
### VIOLATION OF SECTIONS 296(1)(e) and 296(7) OF THE NEW YORK EXECUTIVE LAW – UNLAWFUL RETALIATION AND DISCRIMINATION

211

774. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

775. Schoeman violated Sections 296(1)(e) and 296(7) of the New York Executive Law.

776. Section 296(1)(e) of the New York Executive Law provides that it shall be an unlawful discriminatory practice

> [f]or any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

777. Section 296(7) of the New York Executive Law provides that it shall be an unlawful discriminatory practice

> for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he *or she* has opposed any practices forbidden under this article or because he *or she* has filed a complaint, testified or assisted in any proceeding under this article.

778. Schoeman discharged plaintiff from her employment and otherwise discriminated against her because, among other unlawful reasons, she opposed the discrimination on the basis of her age that she was subjected to at Schoeman.

779. Plaintiff complained repeatedly throughout her employment at Schoeman that she was improperly referred to as being far more junior than she

212

actually was and complained about the improper conduct and conditions of employment she was subjected to at Schoeman as a result of her age.

780. Even after plaintiff complained about the discrimination on the basis of her age that she was subjected to at Schoeman, Schoeman and members and employees of Schoeman continued to subject plaintiff to age discrimination.

781. One of the reasons for plaintiff's termination was because of her complaining of the discrimination on the basis of her age that she was subjected to at Schoeman.

782. Schoeman's violation of Sections 296(1)(e) and 296(7) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

### NINETEENTH CAUSE OF ACTION
### VIOLATION OF SECTION 296(3)-a(a) OF THE
### NEW YORK EXECUTIVE LAW – UNLAWFUL DISCHARGE FROM
### EMPLOYMENT BECAUSE OF AGE

783. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

784. Schoeman violated Section 296(3)-a(a) of the New York Executive Law, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or licensing agency to refuse to hire or employ or license or to bar or to terminate from employment an individual eighteen years of age or older, or to discriminate against such

213

individual in promotion, compensation or in terms, conditions, or privileges of employment, because of such individual's age.

785. As discussed herein, throughout plaintiff's employment at Schoeman, plaintiff was subjected to age discrimination by Schoeman and members and employees of Schoeman.

786. Plaintiff's young age was one of the reasons for her termination by Schoeman on April 24, 2013.

787. Under Section 296(3)-a(a) of the New York Executive Law, Schoeman was prohibited from terminating plaintiff because of her age.

788. Schoeman's violation of Section 296(3)-a(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## TWENTIETH CAUSE OF ACTION
### VIOLATION OF SECTION 296(3)-a (a) OF THE NEW YORK EXECUTIVE LAW – DISCRIMINATION AGAINST PLAINTIFF IN COMPENSATION AND IN THE TERMS, CONDITIONS, AND PRIVILEGES OF HER EMPLOYMENT BECAUSE OF AGE

789. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

790. Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher violated Section 296(3)-a(a) of the New York Executive Law, which provides that it shall be an unlawful discriminatory practice

214

[f]or an employer or licensing agency to refuse to hire or employ or license or to bar or to terminate from employment an individual eighteen years of age or older, or to discriminate against such individual in promotion, compensation or in terms, conditions, or privileges of employment, because of such individual's age.

791. Plaintiff was discriminated against by Schoeman in plaintiff's compensation because of plaintiff's age.

792. In addition, as discussed herein, throughout plaintiff's employment, Schoeman and members and employees of Schoeman would repeatedly discriminate against plaintiff in the terms, conditions and privileges of plaintiff's employment because of plaintiff's age.

793. Schoeman's violation of Section 296(3)-a(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## TWENTY-FIRST CAUSE OF ACTION
## VIOLATION OF SECTION 296(3)-a(b) OF THE NEW YORK EXECUTIVE LAW – PRINTING AND CIRCULATING STATEMENTS EXPRESSING DISCRIMINATION AS TO AGE AND AN INTENT TO MAKE SUCH DISCRIMINATION

794. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

795. Schoeman violated Section 296(3)-a(b) of the New York Executive Law, which provides that it shall be unlawful

215

[f]or any employer, licensing agency or employment agency to print or circulate or cause to be printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination on account of age respecting individuals eighteen years of age or older, or any intent to make any such limitation, specification, or discrimination.

796. As discussed herein, on numerous occasions, Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher printed and circulated and caused to be printed and circulated statements that express discrimination as to plaintiff's age and an intent to make such discrimination.

797. Schoeman's violation of Section 296(3)-a(b) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## TWENTY-SECOND CAUSE OF ACTION
## VIOLATION OF SECTIONS 296(3)-a(c) AND 296(7) OF THE NEW YORK EXECUTIVE LAW – UNLAWFUL RETALIATION AND DISCRIMINATION

798. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

799. Schoeman violated Sections 296.(3)a(c) and 296(7) of the New York Executive Law.

800. Section 296(3)-a(c) of the New York Executive Law provides that it shall be an unlawful discriminatory practice

216

[f]or any employer, licensing agency or employment agency to discharge or otherwise discriminate against any person because he *or she* has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

801. Section 296(7) of the New York Executive Law provides that:

It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he *or she* has opposed any practices forbidden under this article or because he *or she* has filed a complaint, testified or assisted in any proceeding under this article.

802. Schoeman discharged plaintiff from her employment and otherwise discriminated against her because, among other unlawful reasons, she opposed the discrimination on the basis of her age that she was subjected to at Schoeman.

803. Plaintiff complained repeatedly throughout her employment at Schoeman that she was improperly referred to as being far more junior than she actually was and complained about the improper conduct and conditions of employment she was subjected to at Schoeman as a result of her age.

804. Even after plaintiff complained about the discrimination on the basis of her age that she was subjected to at Schoeman, Schoeman and members and employees of Schoeman continued to subject plaintiff to age discrimination.

805. One of the reasons for plaintiff's termination was because of her complaining of being subjected to age discrimination at Schoeman.

217

806.   Schoeman's violation of Section 296(3)-a(c) and 296(7) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## TWENTY-THIRD CAUSE OF ACTION
## VIOLATION BY LAURIE ZELIGSON OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

807.   Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

808.   Laurie S. Zeligson violated Section 296(6) of the New York Executive Law, which provides:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

809.   Laurie S. Zeligson prepared the investigation report that included the false and discriminatory statement that plaintiff was a "second year Associate," which statement expresses discrimination against plaintiff on the basis of her age and expresses an intent to discriminate against plaintiff on the basis of her age.

810.   By including statements in her Investigation Report that expressed discrimination against plaintiff on the basis of her age and that expressed an intent to discriminate against plaintiff on the basis of her age, Laurie S. Zeligson aided, abetted, compelled, and coerced the printing and circulation of the unlawful

218

material that expressed a discrimination against plaintiff as to her age and an intent to make such discrimination.

811.    Laurie S. Zeligson's actions were a direct cause of plaintiff's termination by Schoeman.

## TWENTY-FOURTH CAUSE OF ACTION
## VIOLATION BY MINDY H. STERN OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

812.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

813.    Mindy H. Stern violated Section 296(6) of the New York Executive Law, which states:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

814.    Mindy H. Stern caused the Investigation Report which contains statements that express discrimination against plaintiff on the basis of her age and that express an intent to discriminate against plaintiff on the basis of her age, to be printed and circulated in or about June of 2012 and subsequently in or about June of 2013.

815.    Mindy H. Stern caused the discriminatory statements in Schoeman's response to OSHA regarding plaintiff being "young and somewhat immature" and

219

regarding plaintiff having been offered an "entry-level position" to be printed and circulated.

816.    Mindy H. Stern, the managing partner of Schoeman, was aware that members of Schoeman and employees of Schoeman under her supervision discriminated against plaintiff because of her age and discriminated against plaintiff in plaintiff's work conditions because of her age and Mindy H. Stern allowed such discrimination to take place and did not stop such discrimination.

817.    Mindy H. Stern played an instrumental role in Schoeman's decision to terminate plaintiff because, among other unlawful reasons, of her young age.

818.    Mindy H. Stern's actions were a direct cause of plaintiff's termination by Schoeman.

## TWENTY-FIFTH CAUSE OF ACTION
## VIOLATION BY BETH L. KAUFMAN OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

819.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

820.    Beth L. Kaufman violated Section 296(6) of the New York Executive Law, which states:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

220

821. Beth L. Kaufman caused the Investigation Report which contains statements that express discrimination against plaintiff on the basis of her age and that express an intent to discriminate against plaintiff on the basis of her age, to be printed and circulated in or about June of 2012 and subsequently in or about June of 2013.

822. Beth L. Kaufman caused the discriminatory statement in Schoeman's response to OSHA regarding plaintiff being "young and somewhat immature" and regarding plaintiff having been offered an "entry-level position" to be printed and circulated.

823. As discussed herein, Beth L. Kaufman repeatedly discriminated against plaintiff in plaintiff's work conditions because of plaintiff's age.

824. As discussed herein, Beth L. Kaufman would repeatedly disparage plaintiff and humiliate plaintiff in front of others, including clients, because of plaintiff's young age.

825. Beth L. Kaufman, a partner at Schoeman, was aware that members of Schoeman and other employees of Schoeman under her supervision discriminated against plaintiff because of her age and discriminated against plaintiff in plaintiff's work conditions because of plaintiff's age and Beth L. Kaufman allowed such discrimination to take place and did not stop such discrimination.

826. Beth L. Kaufman played an instrumental role in Schoeman's decision to terminate plaintiff because, among other unlawful reasons, of her young age.

221

827.    Beth L. Kaufman's actions were a direct cause of plaintiff's termination by Schoeman.

## TWENTY-SIXTH CAUSE OF ACTION
## VIOLATION BY CHARLES B. UPDIKE OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

828.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

829.    Charles B. Updike violated Section 296(6) of the New York Executive Law, which states:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

830.    Charles B. Updike  caused the Investigation Report which contains statements that express discrimination against plaintiff on the basis of her age and that express an intent to discriminate against plaintiff on the basis of her age, to be printed and circulated in or about June of 2012 and subsequently in or about June of 2013.

831.    Charles B. Updike caused the discriminatory statement in Schoeman's response to OSHA regarding plaintiff being "young and somewhat immature" and regarding plaintiff having been offered an "entry-level position" to be printed and circulated.

222

832.    As discussed herein, Charles B. Updike repeatedly discriminated against plaintiff in plaintiff's work conditions because of plaintiff's age.

833.    Charles B. Updike would repeatedly disparage and humiliate plaintiff because of plaintiff's young age.

834.    Charles B. Updike, a partner at Schoeman, was aware that members of Schoeman and other employees of Schoeman under his supervision discriminated against plaintiff because of her age and discriminated against plaintiff in plaintiff's work conditions because of plaintiff's age and Charles B. Updike allowed such discrimination to take place and did not stop such discrimination.

835.    Charles B. Updike played an instrumental role in Schoeman's decision to terminate plaintiff because, among other unlawful reasons, of her young age.

836.    Charles B. Updike's actions were a direct cause of plaintiff's termination by Schoeman.

## TWENTY-SEVENTH CAUSE OF ACTION
## VIOLATION BY ANDREA D. ASCHER OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

837.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

838.    Andrea D. Ascher violated Section 296(6) of the New York Executive Law, which states:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the

223

doing of any of the acts forbidden under this article, or to attempt to do so.

839.   Andrea D. Ascher caused the Investigation Report which contains statements that express discrimination against plaintiff on the basis of her age and that express an intent to discriminate against plaintiff on the basis of her age, to be printed and circulated in or about June of 2012 and subsequently in or about June of 2013.

840.   Andrea D. Ascher caused the discriminatory statement in Schoeman's response to OSHA regarding plaintiff being "young and somewhat immature" and regarding plaintiff having been offered an "entry-level position" to be printed and circulated.

841.   Andrea D. Ascher discriminated against plaintiff in plaintiff's work conditions because of plaintiff's age.

842.   Andrea D. Ascher, a partner at Schoeman, was aware that members of Schoeman and other employees of Schoeman under her supervision discriminated against plaintiff because of her age and discriminated against plaintiff in plaintiff's work conditions because of plaintiff's age and Andrea D. Ascher allowed such discrimination to take place and did not stop such discrimination.

843.   Andrea D. Ascher played an instrumental role in Schoeman's decision to terminate plaintiff because, among other unlawful reasons, of her young age.

224

844.    Andrea D. Ascher's actions were a direct cause of plaintiff's termination by Schoeman.

## TWENTY-EIGHTH CAUSE OF ACTION
## CINDY NYGAARD'S VIOLATION OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

845.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

846.    Cindy Nygaard violated Section 296(6) of the New York Executive Law, which states:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

847.    Upon information and belief, Cindy Nygaard caused the Investigation Report which contains statements that express discrimination against plaintiff on the basis of her age and that express an intent to discriminate against plaintiff on the basis of her age, to be printed and circulated in or about June of 2012 and subsequently in or about June of 2013.

848.    Upon information and belief, Cindy Nygaard caused the discriminatory statement in Schoeman's response to OSHA regarding plaintiff being "young and somewhat immature" and regarding plaintiff having been offered an "entry-level position" to be printed and circulated.

225

849.    Cindy Nygaard discriminated against plaintiff in plaintiff's work conditions because of plaintiff's age and treated plaintiff in a disparaging manner because of plaintiff's age.

850.    For instance, Cindy Nygaard would repeatedly, throughout plaintiff's employment, including in 2013, ignore e-mails and requests from plaintiff and failed to treat plaintiff with the dignity and deference she would treat other attorneys at Schoeman with.

851.    Because of plaintiff's young age, Cindy Nygaard would repeatedly, throughout plaintiff's employment, disregard complaints made by plaintiff to her that she was being mistreated by other employees at Schoeman.

852.    Cindy Nygaard, who is the office manager of Schoeman, was aware that members of Schoeman and other employees of Schoeman under her supervision, such as Veronica Law, for example, discriminated against plaintiff in plaintiff's work conditions because of her age and Cindy Nygaard allowed such discrimination to take place and did not stop such discrimination.

853.    Upon information and belief, Cindy Nygaard played a role in Schoeman's decision to terminate plaintiff because, among other unlawful reasons, of her young age.

854.    Cindy Nygaard's actions were a direct cause of plaintiff's termination by Schoeman.

226

## TWENTY-NINTH CAUSE OF ACTION
## VERONICA LAW'S VIOLATION OF SECTION 296(6) OF THE
## NEW YORK EXECUTIVE LAW

855.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

856.    Veronica Law violated Section 296(6) of the New York Executive Law, which states:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

857.    As discussed herein, Veronica Law discriminated against plaintiff in plaintiff's work conditions because of plaintiff's age and treated plaintiff in a disparaging manner because of plaintiff's age and in doing so aided, abetted, incited, compelled, and coerced the age discrimination that plaintiff was subjected to at Schoeman.

858.    Veronica Law's actions were a direct cause of plaintiff's termination by Schoeman.

## THIRTIETH CAUSE OF ACTION
## SCHOEMAN'S VIOLATION OF SECTION 8-107 OF THE NYC
## ADMINISTRATIVE CODE – UNLAWFUL DISCHARGE FROM
## EMPLOYMENT BECAUSE OF AGE

859.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

227

860. Schoeman violated Section 8-107(1)(a) of the NYC Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

861. As discussed herein, throughout plaintiff's employment at Schoeman, plaintiff was subjected to age discrimination by Schoeman and members and employees of Schoeman.

862. Plaintiff's young age was one of the reasons for her termination by Schoeman on April 24, 2013.

863. Under Section 8-107(1)(a) of the New York City Administrative Code, Schoeman was prohibited from terminating plaintiff because of her age.

864. Schoeman's violation of Section 8.107(1)(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## THIRTY-FIRST CAUSE OF ACTION
### SCHOEMAN'S VIOLATION OF SECTION 8-107(1)(a) OF THE NEW YORK CITY ADMINISTRATIVE CODE – DISCRIMINATION AGAINST PLAINTIFF IN COMPENSATION AND IN THE TERMS, CONDITIONS, AND <u>PRIVILEGES OF HER EMPLOYMENT</u>

228

865.   Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

866.   Schoeman violated Section 8-107(1)(a) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

867.   Plaintiff was discriminated against by Schoeman in plaintiff's compensation because of her age.

868.   In addition, as discussed herein, throughout plaintiff's employment, Schoeman would repeatedly discriminate against plaintiff in the terms, conditions and privileges of plaintiff's employment because of plaintiff's age.

869.   Schoeman's violation of Section 8-107(1)(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

**THIRTY-SECOND CAUSE OF ACTION**
**VIOLATION OF SECTION 8-107(1)(d) OF THE NEW YORK CITY ADMINISTRATIVE CODE– DECLARATION, PRINTING AND CIRCULATION OF STATEMENTS EXPRESSING DISCRIMINATION AS TO AGE AND AN INTENT TO DISCRIMINATE AS TO AGE**

229

870.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

871.    Schoeman violated Section 8-107(1)(d) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> For any employer, labor organization or employment agency or an employee or agent thereof to declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status, or any intent to make any such limitation, specification or discrimination.

872.    As discussed herein, on numerous occasions, Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher declared, printed, and circulated and caused to be declared, printed and circulated statements that express discrimination as to plaintiff's age and an intent to make such discrimination.

873.    Schoeman's violation of Section 8-107(1)(d) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

230

## THIRTY-THIRD CAUSE OF ACTION
### VIOLATION OF SECTION 8-107(7) OF THE NEW YORK CITY ADMINISTRATIVE CODE – UNLAWFUL RETALIATION AND DISCRIMINATION

874.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

875.    Schoeman violated Section 8-107(7) of the New York City Administrative Code.

876.    Section 8-107(7) of the New York City Administrative Code provides that it shall be an unlawful discriminatory practice

> for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

231

877. Schoeman discharged plaintiff from her employment and otherwise discriminated against her because, among other unlawful reasons, she opposed the discrimination on the basis of her age that she was subjected to at Schoeman.

878. Plaintiff complained repeatedly throughout her employment at Schoeman that she was improperly referred to as being far more junior than she actually was and complained about the improper conduct and conditions of employment she was subjected to at Schoeman as a result of her age.

879. Even after plaintiff complained about the age discrimination at Schoeman, Schoeman and members and employees of Schoeman continued to subject plaintiff to age discrimination.

880. One of the reasons for plaintiff's unlawful termination was because of her complaining of being subjected to age discrimination at Schoeman.

881. Schoeman's violation of Section 8-107(7) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## THIRTY-FOURTH CAUSE OF ACTION
### VIOLATION OF SECTION 8-107(13) OF THE NEW YORK CITY ADMINISTRATIVE CODE – SCHOEMAN'S LIABILITY FOR DISCRIMINATORY CONDUCT BY ITS EMPLOYEES, AGENTS, AND INDEPENDENT CONTRACTORS

882. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

232

883.    Schoeman is liable under Section 8-107(13) of the New York City

Administrative Code for the discriminatory conduct by its employees, agents, and

independent contractors.

884.    Section 8-107(13) provides, *inter alia*:

> Employer liability for discriminatory conduct by
> employee, agent or independent contractor.
> a. An employer shall be liable for an unlawful
> discriminatory practice based upon the conduct of
> an employee or agent which is in violation of any
> provision of this section other than subdivisions one
> and two of this section.
> b. An employer shall be liable for an unlawful
> discriminatory practice based upon the conduct of
> an employee or agent which is in violation of
> subdivision one or two of this section only where:
> (1) the employee or agent exercised managerial or
> supervisory responsibility; or (2) the employer
> knew of the employee's or agent's discriminatory
> conduct, and acquiesced in such conduct or failed to
> take immediate and appropriate corrective action;
> an employer shall be deemed to have knowledge of
> an employee's or agent's discriminatory conduct
> where that conduct was known by another
> employee or agent who exercised managerial or
> superivsory responsibility; or (3) the employer
> should have known of the employee's or agent's
> discriminatory conduct and failed to exercise
> reasonable diligence to prevent such discriminatory
> conduct.
> c.    An employer shall be liable for an unlawful
> discriminatory practice committed by a person
> employed as an independent contractor, other than
> an agent of such employer, to carry out work in
> furtherance of the employer's business enterprise
> only where such discriminatory conduct was
> committed in the course of such employment and

233

the employer had actual knowledge of and
acquiesced in such conduct.

885.   As discussed herein, various Schoeman employees, agents, and

independent contractors subjected plaintiff to discrimination based on her age.

886.   Some of those employees, such as Cindy Nygaard, for example,

exercised managerial and supervisory responsibility.

887.   Schoeman knew of the employees' and agents' discriminatory conduct

and acquiesced in such conduct and failed to take immediate and appropriate

corrective action.

888.   The discriminatory conduct was known by other employees and agents

of Schoeman who exercised managerial and supervisory responsibility and no action

was taken to stop the discrimination.

## THIRTY-FIFTH CAUSE OF ACTION
### MINDY H. STERN'S VIOLATION OF SECTIONS 8-107(1)(a) OF THE NEW YORK CITY ADMINISTRATIVE CODE - DISCHARGE FROM EMPLOYMENT AND DISCRIMINATION IN THE TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

889.   Plaintiff repeats and realleges the allegations contained in paragraphs

1 through 229 as if fully set forth herein at length.

890.   Mindy H. Stern violated Section 8-107(1)(a) of the New York City

Administrative Code, which provides that it shall be an unlawful discriminatory

practice

> [f]or an employer or an employee or agent thereof,
> because of the actual or perceived age, race, creed,
> color, national origin, gender, disability, marital

234

status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

891.    Mindy H. Stern, who is a member of Schoeman, who was plaintiff's employer, and who is an agent of Schoeman, discharged plaintiff from her employment and discriminated against plaintiff in her compensation and in the terms, conditions, and privileges of her employment because of her young age.

### THIRTY-SIXTH CAUSE OF ACTION
### BETH L. KAUFMAN'S VIOLATION OF SECTIONS 8-107(1)(a) OF THE NEW YORK CITY ADMINISTRATIVE CODE - DISCHARGE FROM EMPLOYMENT AND DISCRIMINATION IN THE TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

892.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

893.    Beth L. Kaufman violated Section 8-107(1)(a) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

235

894. Beth L. Kaufman, who is a member of Schoeman, who was plaintiff's employer, and who is an agent of Schoeman, discharged plaintiff from her employment and discriminated against plaintiff in her compensation and in the terms, conditions, and privileges of her employment because of her young age.

## THIRTY-SEVENTH CAUSE OF ACTION
## CHARLES B. UPDIKE'S VIOLATION OF SECTIONS 8-107.1(a) OF THE NEW YORK CITY ADMINISTRATIVE CODE - DISCHARGE FROM EMPLOYMENT AND DISCRIMINATION IN THE TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

895. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

896. Charles B. Updike's violated Section 8-107(1)(a) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

897. Charles B. Updike, who is a member of Schoeman, who was plaintiff's employer, and who is an agent of Schoeman, discharged plaintiff from her employment and discriminated against plaintiff in her compensation and in the terms, conditions, and privileges of her employment because of her young age.

236

## THIRTY-EIGHTH CAUSE OF ACTION
## ANDREA D. ASCHER'S VIOLATION OF SECTIONS 8-107.1(a) OF THE NEW YORK CITY ADMINISTRATIVE CODE - DISCHARGE FROM EMPLOYMENT AND DISCRIMINATION IN THE TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

898.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

899.    Andrea D. Ascher violated Section 8-107(1)(a) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

900.    Andrea D. Ascher, who is a member of Schoeman, who was plaintiff's employer, and who is an agent of Schoeman, discharged plaintiff from her employment and discriminated against plaintiff in her compensation and in the terms, conditions, and privileges of her employment because of her young age.

## THIRTY-NINTH CAUSE OF ACTION
## CINDY NYGAARD'S VIOLATION OF SECTIONS 8-107(1)(a) OF THE NEW YORK CITY ADMINISTRATIVE CODE - DISCRIMINATION IN THE TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

237

901.    Plaintiff repeats and realleges paragraphs 1 through 22 as if fully set forth herein at length.

902.    Cindy Nygaard violated Section 8-107(1)(a) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

903.    Cindy Nygaard, who is employed by Schoeman as Schoeman's Office Manager, discriminated against plaintiff in the terms, conditions, and privileges of her employment because of her young age.

### FORTIETH CAUSE OF ACTION
### VIOLATION BY MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER OF SECTION 8-107(1)(d) OF THE NEW YORK CITY ADMINISTRATIVE CODE– DECLARATION, PRINTING AND CIRCULATION OF STATEMENTS EXPRESSING DISCRIMINATION AS TO AGE AND AN INTENT TO DISCRIMINATE AS TO AGE

904.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

238

905. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher violated Section 8-107(1)(d) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> For any employer, labor organization or employment agency or an employee or agent thereof to declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status, or any intent to make any such limitation, specification or discrimination.

906. As discussed herein, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher declared, printed, and circulated and caused to be declared, printed and circulated statements that express discrimination as to plaintiff's age and an intent to make such discrimination. Below are a few of many examples.

907. On or about June 26, 2012, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher caused to be declared, printed and circulated within Schoeman Laurie S. Zeligson's June 26, 2012 Investigation Report, which expresses discrimination against plaintiff as to her age and an intent to make such discrimination. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher caused the statements containing age discrimination in the Investigation

239

Report to be declared, printed and circulated.  In addition, on or about June 26, 2012 and at subsequent times thereafter, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher circulated the Investigation Report.

908.    In addition or about June 11, 2013, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher circulated and caused to be circulated to parties outside of Schoeman a copy of Laurie S. Zeligson's June 26, 2012 Investigation Report, which expresses discrimination against plaintiff as to her age and an intent to make such discrimination.

909.    In addition, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher declared, printed, circulated, and caused to be declared, printed and circulated, Schoeman's response to plaintiff's whistleblower complaint to OSHA that contains statements discriminating against plaintiff on the basis of her age and that express an intent to make such discrimination.

## FORTY-FIRST CAUSE OF ACTION
### VIOLATION OF SECTION 8-107(6) OF THE NEW YORK CITY ADMINISTRATIVE CODE– AIDING AND ABETTING

910.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

911.    Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, Andrea D. Ascher, Cindy Nygaard, and Veronica Law violated Section 8-107(6) of the New York City Administrative Code, which provides that "[i]t shall be an unlawful

240

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing

of any of the acts forbidden under this chapter, or to attempt to do so."

912.    As discussed herein, Mindy H. Stern, Beth L. Kaufman, Charles B.

Updike, Andrea D. Ascher, Cindy Nygaard, and Veronica Law aided, abetted,

incited, compelled, and coerced the discrimination on the basis of age that plaintiff

was subjected to at Schoeman.

**FORTY-SECOND CAUSE OF ACTION**
**VIOLATION BY MINDY H. STERN, BETH L. KAUFMAN, CHARLES B.**
**UPDIKE, AND ANDREA D. ASCHER OF SECTION 8-107(7) OF THE**
**NEW YORK CITY ADMINISTRATIVE CODE– RETALIATION**

913.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set

forth herein at length.

914.    Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D.

Ascher violated Section 8-107(7) of the New York City Administrative Code, which

provides:

> Retaliation. It shall be an unlawful discriminatory
> practice for any person engaged in any activity to
> which this chapter applies to retaliate or
> discriminate in any manner against any person
> because such person has (i) opposed any practice
> forbidden under this chapter, (ii) filed a complaint,
> testified or assisted in any proceeding under this
> chapter, (iii) commenced a civil action alleging the
> commission of an act which would be an unlawful
> discriminatory practice under this chapter, (iv)
> assisted the commission or the corporation counsel
> in an investigation commenced pursuant to this
> title, or (v) provided any information to the
> commission pursuant to the terms of a conciliation

241

agreement made pursuant to section 8-115 of this chapter. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

915.  As discussed herein, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher played a crucial role in Schoeman's decision to terminate plaintiff in retaliation for, among other things, plaintiff's complaining about the age discrimination she was subjected to at Schoeman.

## FORTY-THIRD CAUSE OF ACTION
## SCHOEMAN'S VIOLATION OF SECTION 296(1)(a) OF THE NEW YORK EXECUTIVE LAW – UNLAWFUL DISCHARGE FROM EMPLOYMENT BECAUSE OF CREED

916.  Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

917.  Schoeman violated Section 296(1)(a) of the New York Executive Law, which provides that it shall be an unlawful discriminatory practice

For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in

242

compensation or in terms, conditions or privileges of employment.

918. Plaintiff is an Orthodox Jew. Throughout plaintiff's employment at Schoeman, plaintiff was subjected to religious discrimination by Schoeman and members and employees of Schoeman because of plaintiff's religious beliefs.

919. According to Schoeman's Letter of Termination, one of the reasons for plaintiff's termination was because she complained of religious discrimination at Schoeman.

920. Plaintiff was terminated by Schoeman because, among other unlawful reasons, of her religious beliefs.

921. Under Section 296(1)(a) of the New York Executive Law, Schoeman was prohibited from terminating plaintiff because of her religious beliefs.

922. Schoeman's violation of Section 296(1)(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## FORTY-FOURTH CAUSE OF ACTION
### SCHOEMAN'S VIOLATION OF SECTION 296(1)(a) OF THE NEW YORK EXECUTIVE LAW – DISCRIMINATION AGAINST PLAINTIFF IN COMPENSATION AND IN THE TERMS, CONDITIONS, AND PRIVILEGES OF HER EMPLOYMENT BECAUSE OF PLAINTIFF'S RELIGIOUS BELIEFS

923. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

243

924. Schoeman violated Section 296(1)(a) of the New York Executive Law, which provides that it shall be an unlawful discriminatory practice

> For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

925. As discussed herein, throughout plaintiff's employment, Schoeman repeatedly discriminated against plaintiff, who is an Orthodox Jew, in the terms, conditions and privileges of plaintiff's employment because of plaintiff's religious beliefs.

926. Schoeman's violation of Section 296(1)(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## FORTY-FIFTH CAUSE OF ACTION
## VIOLATION OF SECTION 296(1)(d) OF THE NEW YORK EXECUTIVE LAW– PRINTING AND CIRCULATION OF STATEMENTS EXPRESSING DISCRIMINATION AS TO CREED AND AN INTENT TO DISCRIMINATE AS TO CREED

927. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

244

928.    Schoeman violated Section 296(1)(d) of the New York Executive Law, which provides that it shall be an unlawful discriminatory practice

> [f]or any employer or employment agency to print or circulate or cause to be printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status, or any intent to make any such limitation, specification or discrimination, unless based upon a bona fide occupational qualification; provided, however, that neither this paragraph nor any provision of this chapter or other law shall be construed to prohibit the department of civil service or the department of personnel of any city containing more than one county from requesting information from applicants for civil service examinations concerning any of the aforementioned characteristics, other than sexual orientation, for the purpose of conducting studies to identify and resolve possible problems in recruitment and testing of members of minority groups to insure the fairest possible and equal opportunities for employment in the civil service for all persons, regardless of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status.

929.    On numerous occasions, Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher printed and circulated and caused to be printed and circulated statements that express discrimination as to

245

plaintiff's creed and an intent to make such discrimination. Below are a few of numerous examples.

930.    On or about June 26, 2012, Schoeman caused to be printed and circulated within Schoeman Laurie S. Zeligson's June 26, 2012 Investigation Report, which expresses discrimination against plaintiff as to her creed and an intent to make such discrimination by concluding, without any basis, that plaintiff's accusations of religious discrimination at Schoeman lacked any basis when this was far from the case.

931.    In addition, on or about June 11, 2013, Schoeman circulated and caused to be circulated to parties outside of Schoeman a copy of Laurie S. Zeligson's June 26, 2012 Investigation Report, which expresses discrimination against plaintiff as to her creed and an intent to make such discrimination.

932.    Moreover, on April 24, 2013, Schoeman printed and subsequently circulated its Letter of Termination in which it stated that one of the reasons for plaintiff's termination was because she complained of religious discrimination at Schoeman.

933.    Schoeman's violation of Section 296(1)(d) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

**FORTY-SIXTH CAUSE OF ACTION**
**VIOLATION OF SECTIONS 296(1)(e) and 296(7) OF THE NEW YORK**
**EXECUTIVE LAW – UNLAWFUL RETALIATION AND DISCRIMINATION**

246

934.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

935.    Schoeman violated Section 296(1)(e) and Section 296(7) of the New York Executive Law.

936.    Section 296(1)(e) of the New York Executive Law provides that it shall be an unlawful discriminatory practice

> [f]or any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

937.    Section 296(7) of the New York Executive Law provides that it shall be an unlawful discriminatory practice

> for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he *or she* has opposed any practices forbidden under this article or because he *or she* has filed a complaint, testified or assisted in any proceeding under this article.

938.    Schoeman discharged plaintiff from her employment and otherwise discriminated against her because, among other unlawful reasons, she opposed the religious discrimination that she was subjected to at Schoeman.

247

939.    In Schoeman's Letter of Termination, Schoeman specifically stated that one of the reasons for plaintiff's termination was because she complained of religious discrimination at Schoeman.

940.    Schoeman's violation of Section 296(1)(e) and 296(7) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## FORTY-SEVENTH CAUSE OF ACTION
## VIOLATION OF SECTION 296(3)-a(c) OF THE NEW YORK EXECUTIVE LAW – UNLAWFUL RETALIATION AND DISCRIMINATION

941.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

942.    Schoeman violated Sections 296.3-a(c) of the New York Executive Law.

943.    Section 296(3)-a(c) of the New York Executive Law provides that it shall be an unlawful discriminatory practice

> [f]or any employer, licensing agency or employment agency to discharge or otherwise discriminate against any person because he *or she* has opposed any practices forbidden under this article or because he *or she* has filed a complaint, testified or assisted in any proceeding under this article.

944.    Schoeman discharged plaintiff from her employment and otherwise discriminated against her because, among other unlawful reasons, she opposed the religious discrimination that she was subjected to at Schoeman.

248

945.    In Schoeman's Letter of Termination, Schoeman specifically stated that one of the reasons for plaintiff's termination was because she complained of religious discrimination at Schoeman.

946.    Schoeman's violation of Section 296(3)-a(c) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## FORTY-EIGHTH CAUSE OF ACTION
## VIOLATION BY LAURIE S. ZELIGSON OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

947.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

948.    Laurie S. Zeligson violated Section 296(6) of the New York Executive Law, which provides:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

949.    Laurie S. Zeligson conducted the discriminatory investigation of plaintiff's claims of religious discrimination and prepared the investigation report that includes statements that discriminate against plaintiff on the basis of her religious beliefs and that expresses an intent to discriminate against plaintiff on the basis of her religious beliefs.

249

950. By issuing a report that concluded, without any basis, that plaintiff's complaint of religious discrimination lacked any basis, Laurie S. Zeligson aided, abetted, compelled, and coerced the printing and circulation of the unlawful material that expressed a discrimination against plaintiff on the basis of her religion.

951. Laurie Zeligson's actions were a direct cause of plaintiff's termination by Schoeman.

## FORTY-NINTH CAUSE OF ACTION
## VIOLATION BY SUSAN S. CASERO OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

952. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

953. Susan S. Casero violated Section 296(6) of the New York Executive Law, which provides:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

954. By subjecting plaintiff to religious discrimination and then lying and libeling and slandering plaintiff during the investigation into plaintiff's claims of religious discrimination, Susan S. Casero aided, abetted, incited, compelled, and coerced the religious discrimination against plaintiff.

250

955. Susan S. Casero's actions were a direct cause of plaintiff's termination by Schoeman.

## FIFTIETH CAUSE OF ACTION
## VIOLATION OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

956. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

957. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher violated Section 296(6) of the New York Executive Law, which states:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

958. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher aideted and abetted the religious discrimination plaintiff was subjected to at Schoeman by, among other things, not ordering kosher food for plaintiff when the firm ordered non-kosher food for other firm employees, despite their knowledge that plaintiff cannot eat non-kosher food.

959. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher further aided and abetted the religious discrimination plaintiff was subjected to at Schoeman by, among other things, not inviting plaintiff to the luncheons for the firm's female lawyers that were held at non-kosher restaurants and by not holding such luncheons at kosher restaurants so that plaintiff could participate and eat at the luncheons.

960.    In addition, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher caused the Investigation Report which expresses discrimination against plaintiff on the basis of her religion and that expresses an intent to discriminate against plaintiff on the basis of her religion, to be printed and circulated in or about June of 2012 and subsequently in or about June of 2013.

961.    Moreover, Mindy H. Stern, the managing partner of Schoeman, and Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher, partners at Schoeman, were aware that members of Schoeman and employees of Schoeman under their supervision discriminated against plaintiff because of her religion and discriminated against plaintiff in plaintiff's work conditions because of her age and they allowed such discrimination to take place and did not stop such discrimination.

962.    Furthermore, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher aided and abetted the printing and circulation of statements expressing discrimination against plaintiff on the basis of her religion, including, but not limited to, Laurie Zeligson's report and the Letter of Termination.

963.    Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher played an instrumental role in Schoeman's decision to terminate plaintiff because, among other unlawful reasons, of her religious beliefs and because of her complaining of being subjected to religious discrimination at Schoeman.

## FIFTY-FIRST CAUSE OF ACTION
## VIOLATION BY CINDY NYGAARD OF SECTION 296(6) OF THE NEW YORK EXECUTIVE LAW

252

964. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

965. Cindy Nygaard violated Section 296(6) of the New York Executive Law, which states:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

966. Cindy Nygaard, Schoeman's office manager, aided and abetted the religious discrimination plaintiff was subjected to at Schoeman by, among other things, not ordering kosher food for plaintiff when the firm ordered non-kosher food for other firm employees, despite Ms. Nygaard's knowledge that plaintiff cannot eat non-kosher food.

967. In addition, Cindy Nygaard caused the Investigation Report which expresses discrimination against plaintiff on the basis of her religion and that expresses an intent to discriminate against plaintiff on the basis of her religion, to be printed and circulated in or about June of 2012 and subsequently in or about June of 2013.

968. Furthermore, Cindy Nygaard aided and abetted the printing and circulation of statements expressing discrimination against plaintiff on the basis of her religion, including, but not limited to, Laurie Zeligson's report and the Letter of Termination.

253

969.    Moreover, Cindy Nygaard, Schoeman's office manager, was aware that members of Schoeman and other employees of Schoeman under her supervision discriminated against plaintiff because of her religion and discriminated against plaintiff in plaintiff's work conditions because of her religion and Cindy Nygaard allowed such discrimination to take place and did not stop such discrimination.

970.    Cindy Nygaard's actions were a direct cause of plaintiff's termination by Schoeman.

## FIFTY-SECOND CAUSE OF ACTION
## VIOLATION OF SECTION 8-107 OF THE NYC ADMINISTRATIVE CODE – UNLAWFUL DISCHARGE FROM EMPLOYMENT BECAUSE OF CREED

971.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

972.    Schoeman violated Section 8-107(1)(a) of the NYC Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

973.    Plaintiff is an Orthodox Jew. Throughout plaintiff's employment at Schoeman, plaintiff was subjected to religious discrimination by Schoeman and members and employees of Schoeman.

254

974.    According to Schoeman's Letter of Termination, one of the reasons for plaintiff's termination was because she complained of religious discrimination at Schoeman.

975.    Plaintiff was terminated by Schoeman because, among other unlawful reasons, of her religious beliefs.

976.    Under Section 807(1)(a) of the New York City Administrative Code, Schoeman was prohibited from terminating plaintiff because of her religious beliefs.

977.    Schoeman's violation of Section 8.107(1)(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

### FIFTY-THIRD CAUSE OF ACTION
### SCHOEMAN'S VIOLATION OF SECTION 8-107(1)(a) OF THE NEW YORK CITY ADMINISTRATIVE CODE – DISCRIMINATION AGAINST PLAINTIFF IN COMPENSATION AND IN THE TERMS, CONDITIONS, AND PRIVILEGES OF HER EMPLOYMENT

978.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

979.    Schoeman violated Section 8-107(1)(a) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to

255

refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

980.    Throughout plaintiff's employment, Schoeman would repeatedly discriminate against plaintiff in the terms, conditions and privileges of plaintiff's employment because of plaintiff's religious beliefs.

981.    In April of 2012, during a meeting in her office, Susan S. Casero, Counsel at Schoeman, asked plaintiff to work on Saturday when she knew that plaintiff is an Orthodox Jew and that plaintiff does not work on the Sabbath and Jewish holidays, as she and plaintiff had discussed this earlier that month. Plaintiff told Ms. Casero in an e-mail plaintiff sent her the following day that her asking plaintiff to work on Saturday was inappropriate. An e-mail exchange ensued in which Ms. Casero, implied that she had not asked if plaintiff could work on Saturday and in which she denied knowing that plaintiff does not work on Saturday, both of which were untruthful. In a previous e-mail sent only to Beth L. Kaufman, Ms. Casero stated that she had asked if plaintiff could work on Saturday or Sunday, which was also untrue. Ms. Casero did ask if plaintiff could work on Saturday but at no time did she ask if plaintiff could work on Sunday. Almost two months later, on June 15, 2012, Beth L. Kaufman informed plaintiff that she felt that there needs to be an investigation into the e-mail exchanges between plaintiff and Ms. Casero, which took place in April of 2012. She informed plaintiff that the

256

firm had hired an employment lawyer who would come in and interview plaintiff,

Ms. Casero, and other people at the firm on Monday, June 18, 2012. Plaintiff

informed Ms. Kaufman via e-mail that, *inter alia*, she did not consent to be

interviewed by the attorney and would not consent to any discovery of the matter at

that time and that if there needs to be discovery, it would be done under the

supervision of a court of law. Plaintiff also informed Ms. Kaufman that she felt that

Ms. Kaufman's intention to interview other people at the firm other than Ms.

Casero and plaintiff was perplexing and would undoubtedly result in plaintiff's

being slandered by the firm. Given the firm's pattern of mistreating plaintiff

throughout plaintiff's employment and in light of Ms. Kaufman's statement that she

intended to interview others in the firm aside from Ms. Casero and plaintiff,

plaintiff felt that the investigation the firm intended to conduct was intended for

the purpose of slandering plaintiff and weakening plaintiff's position in the event

plaintiff would bring a lawsuit against Schoeman for religious discrimination and

constituted harassment in the workplace and plaintiff notified Ms. Kaufman of

such. . In a response e-mail, Ms. Kaufman wrote:

> Ronit:
>
> There is no effort to harass you; nor is there any
> "discovery" being undertaken. We are conducting
> an internal investigation, prompted by the e-mails
> on which you copied me. We believe this to be a
> Human Resources "best practice" in response to
> such accusations. In addition to seeking to
> interview Susie and you, the outside investigator

257

also wants to interview anyone who overheard the discussion between Susie and you. We have no reason to believe that anyone would slander you under any circumstances, and do not understand why this is of concern to you.

We respect your decision not to be interviewed. Should you change your mind, please let us know and we will schedule a time for you to be interviewed on Monday.

Beth

982. Plaintiff never heard anything more regarding the issue and did not receive a copy of the report prepared by the employment lawyer, Laurie Zeligson, which plaintiff did not even know existed, until plaintiff received Schoeman's response to plaintif's OSHA whistleblower complaint in the summer of 2013. When plaintiff saw a copy of the report, her belief that the firm's intention was to harass and slander her was confirmed, as the entire report, comprised of blatant misrepresentations and distortions of the truth, constitutes libel and in fact strays far from the issue of the exchanges between plaintiff and Ms. Casero in April of 2012, which, per Ms. Kaufman, was the issue that Ms. Zeligson was hired to investigate. Clearly, rather than investigate the religious discrimination that plaintiff was subjected to at Schoeman, Schoeman used this biased and distorted investigation as an opportunity to slander, libel, and defame plaintiff and to make it seem as though plaintiff's claims of religious discrimination lacked any basis when this was far from the case. Although Ms. Zeligson did not speak with plaintiff about

258

plaintiff's claims of religious discrimination, she surprisingly and maliciously came to the unwarranted and incorrect conclusion that there was no basis to plaintiff's claims of religious discrimination.

983. Moreover, although Schoeman knew that plaintiff left early on Fridays in order to get home for the Sabbath, in or about January 2013, Beth L. Kaufman, a member of Schoeman, gave plaintiff an extensive assignment on Friday afternoon that would take hours to complete and demanded that plaintiff complete it before leaving for the Sabbath.

984. Although Schoeman knew that plaintiff is an Orthodox Jew who eats only kosher food, Schoeman did not make accommodations for plaintiff when it requested that plaintiff attend gatherings or firm celebrations at non-kosher restaurants or luncheons at hotels, which plaintiff was expected to attend. In addition, during her employment at Schoeman, the firm held luncheons for its female attorneys at non-kosher restaurants. Plaintiff was generally not invited to attend these luncheons because plaintiff is an Orthodox Jew and cannot eat food at a non-kosher restaurant. The firm never chose to hold a luncheon at a kosher restaurant.

985. Toward the end of plaintiff's employment at Schoeman, particularly during March of 2013, the firm would order pizza for all firm employees on a regular basis on Fridays. Despite plaintiff's explicit request that the firm order pizza from a kosher pizza shop, the firm did not order kosher pizza for plaintiff.

259

Plaintiff would often order kosher pizza on her own, at her own expense, while the firm treated the other employees to non-kosher pizza at the firm's expense. Cindy Nygaard, the office manager at Schoeman, and the members of Schoeman knew that plaintiff cannot eat the non-kosher pizza the firm ordered, yet, not once did the firm order kosher pizza for plaintiff or reimburse plaintiff for the lunches plaintiff ordered when the firm sponsored a pizza lunch for the other employees of the firm.

986.   Aside from not ordering kosher pizza for plaintiff, the firm did not make accommodations for plaintiff when it ordered other types of non-kosher food for the firm's employees, even though it knew that plaintiff is an Orthodox Jew who eats only kosher food. For instance, each month, the firm had a birthday party to celebrate the birthdays of any firm member or employee who had a birthday that month. Eleven out of twelve months a year, the birthday cakes that the firm ordered were non-kosher and plaintiff was unable to eat anything at the birthday celebrations. Nonetheless, plaintiff was expected to attend these birthday celebrations, which were extremely uncomfortable for plaintiff as plaintiff was the only Orthodox Jew at the firm and, as such, the only person who could not eat anything. The only time the firm ordered a kosher cake was in July because plaintiff was the only one who celebrated a birthday in July.

987.   Schoeman's violation of Section 296(1)(a) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

260