## FIFTY-FOURTH CAUSE OF ACTION
## VIOLATION OF SECTION 8-107(1)(d) OF THE NEW YORK CITY ADMINISTRATIVE CODE– DECLARATION, PRINTING AND CIRCULATION OF STATEMENTS EXPRESSING DISCRIMINATION AS TO CREED AND AN INTENT TO DISCRIMINATE AS TO CREED

988.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

989.    Schoeman violated Section 8-107(1)(d) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> For any employer, labor organization or employment agency or an employee or agent thereof to declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status, or any intent to make any such limitation, specification or discrimination.

990.    On numerous occasions, Schoeman and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher printed and circulated and caused to be printed and circulated statements that express discrimination as to plaintiff's creed and an intent to make such discrimination.  Below are a few of numerous examples.

261

991.    On or about June 26, 2012, Schoeman caused to be printed and circulated within Schoeman Laurie S. Zeligson's June 26, 2012 Investigation Report, which expresses discrimination against plaintiff as to her creed and an intent to make such discrimination by concluding, without any basis, that plaintiff's accusations of religious discrimination at Schoeman lacked any basis when this was far from the case.

992.    In addition or about June 11, 2013, Schoeman circulated and caused to be circulated to parties outside of Schoeman a copy of Laurie S. Zeligson's June 26, 2012 Investigation Report, which expresses discrimination against plaintiff as to her creed and an intent to make such discrimination.

993.    Moreover, on April 24, 2013, Schoeman printed and subsequently circulated its Letter of Termination in which it stated that one of the reasons for plaintiff's termination was because she accused another attorney at Schoeman of religious discrimination.

994.    Schoeman's violation of Section 8-107(1)(d) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

**FIFTY-FIFTH CAUSE OF ACTION**
**VIOLATION OF SECTION 8-107(7) OF THE NEW YORK CITY ADMINISTRATIVE CODE – UNLAWFUL RETALIATION AND DISCRIMINATION**

262

995. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

996. Schoeman violated Section 8-107(7) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

997. Schoeman discharged plaintiff from her employment and otherwise discriminated against her because, among other unlawful reasons, she opposed the religious discrimination that she was subjected to at Schoeman.

263

998.    In Schoeman's Letter of Termination, Schoeman specifically stated that one of the reasons for plaintiff's termination was because she complained of religious discrimination at Schoeman.

999.    Schoeman's violation of Section 8-107(7) was done under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

**FIFTY-SIXTH CAUSE OF ACTION**
**SCHOEMAN'S LIABILITY UNDER SECTION 8-107(13) OF THE NEW YORK CITY ADMINISTRATIVE CODE – SCHOEMAN'S LIABILITY FOR DISCRIMINATORY CONDUCT BY ITS EMPLOYEES, AGENTS, AND INDEPENDENT CONTRACTORS**

1000.    Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1001.    Schoeman is liable under Section 8-107(13) of the New York City Administrative Code for the discriminatory conduct by its employees, agents, and independent contractors.

1002.    Section 8-107(13) provides, *inter alia*:

> Employer liability for discriminatory conduct by employee, agent or independent contractor.
> a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
> b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

264

(1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or superivsory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.    An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

1003. As discussed herein, various Schoeman employees, agents, and independent contractors subjected plaintiff to discrimination based on her religious beliefs.

1004. Some of those employees, such as Cindy Nygaard, for example, exercised managerial and supervisory responsibility.

1005. Schoeman knew of the employees' and agents' discriminatory conduct and acquiesced in such conduct and failed to take immediate and appropriate corrective action.

265

1006. The discriminatory conduct was known by other employees and agents of Schoeman who exercised managerial and supervisory responsibility and no action was taken to stop the discrimination.

## FIFTY-SEVENTH CAUSE OF ACTION
## VIOLATION BY MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER OF SECTIONS 8-107(1)(a) OF THE NEW YORK CITY ADMINISTRATIVE CODE - DISCHARGE FROM EMPLOYMENT AND DISCRIMINATION IN THE TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

1007. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1008. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher violated Section 8-107(1)(a) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

1009. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher, who are members of Schoeman, who was plaintiff's employer, and who are agents of Schoeman, discharged plaintiff from her employment and discriminated

266

against plaintiffin the terms, conditions, and privileges of her employment because of plaintiff's religious religious beliefs.

## FIFTY-EIGHTH CAUSE OF ACTION
### CINDY NYGAARD'S VIOLATION OF SECTIONS 8-107(1)(a) OF THE NEW YORK CITY ADMINISTRATIVE CODE - DISCRIMINATION IN THE TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

1010.  Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1011.  Cindy Nygaard violated Section 8-107(1)(a) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

1012.  Cindy Nygaard, who is employed by Schoeman as Schoeman's Office Manager, discriminated against plaintiff in the terms, conditions, and privileges of her employment because of plaintiff's religious beliefs.

1013.  Cindy Nygaard's actions were a direct cause of plaintiff's termination.

## FIFTY-NINTH CAUSE OF ACTION
### VIOLATION BY MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER OF SECTION 8-107(1)(d) OF THE NEW YORK CITY ADMINISTRATIVE CODE– DECLARATION, PRINTING AND

## CIRCULATION OF STATEMENTS EXPRESSING DISCRIMINATION AS TO CREED AND AN INTENT TO DISCRIMINATE AS TO CREED

1014. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1015. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher violated Section 8-107(1)(d) of the New York City Administrative Code, which provides that it shall be an unlawful discriminatory practice

> For any employer, labor organization or employment agency or an employee or agent thereof to declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status, or any intent to make any such limitation, specification or discrimination.

1016. On numerous occasions, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher declared, printed, and circulated and caused to be declared, printed and circulated statements that express discrimination as to plaintiff's creed. Two examples of such are Laurie Zeligson's Investigation Report and Schoeman's Letter of Termination. Their actions were a direct cause of plaintiff's termination.

268

## SIXTIETH CAUSE OF ACTION
## VIOLATION BY MINDY H. STERN, BETH L. KAUFMAN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER OF SECTION 8-107(6) OF THE NEW YORK CITY ADMINISTRATIVE CODE– AIDING AND ABETTING

1017. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1018. Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher violated Section 8-107(6) of the New York City Administrative Code, which provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

1019. As discussed herein, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher aided, abetted, incited, compelled, and coerced the religious discrimination that plaintiff was subjected to at Schoeman. Their actions were a direct cause of plaintiff's termination.

## SIXTY-FIRST CAUSE OF ACTION
## CINDY NYGAARD'S VIOLATION OF SECTION 8-107(6) OF THE NEW YORK CITY ADMINISTRATIVE CODE– AIDING AND ABETTING

1020. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1021. Cindy Nygard violated Section 8-107(6) of the New York City Administrative Code, which provides that "[i]t shall be an unlawful discriminatory

269

practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

1022. As discussed herein, Cindy Nygaard aided, abetted, incited, compelled, and coerced the religious discrimination that plaintiff was subjected to at Schoeman.

1023. Cindy Nygaard's actions were a direct cause of plaintiff's termination by Schoeman.

## SIXTY-SECOND CAUSE OF ACTION
## SUSAN S. CASERO'S VIOLATION OF SECTION 8-107(6) OF THE NEW YORK CITY ADMINISTRATIVE CODE– AIDING AND ABETTING

1024. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1025. Susan S. Casero violated Section 8-107(6) of the New York City Administrative Code, which provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

1026. As discussed herein, Susan S. Casero aided, abetted, incited, compelled, and coerced the religious discrimination that plaintiff was subjected to at Schoeman.

1027. Susan S. Casero's actions were a direct cause of plaintiff's termination by Schoeman.

270

## SIXTY-THIRD CAUSE OF ACTION
## VIOLATION BY BETH L. KAUFMAN, MINDY H. STERN, CHARLES B. UPDIKE, AND ANDREA D. ASCHER OF SECTION 8-107(7) OF THE NEW YORK CITY ADMINISTRATIVE CODE– RETALIATION

1028.  Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1029.  Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher violated Section 8-107(7) of the New York City Administrative Code, which provides that:

> Retaliation. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

271

1030. As discussed herein, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher played a crucial role in the Schoeman's decision to terminate plaintiff, among other unlawful reasons, in retaliation for plaintiff's complaining about the religious discrimination she was subjected to at Schoeman.

### SIXTY-FOURTH CAUSE OF ACTION
### SCHOEMAN'S VIOLATION OF TITLE VII OF THE
### CIVIL RIGHTS ACT OF 1964

1031. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1032. Schoeman violated Section 2000e-2(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.

1033. As discussed herein, Schoeman discharged plaintiff because, among other unlawful reasons, of plaintiff's religious beliefs and discriminated against plaintiff with respect to the terms, conditions, and privileges of plaintiff's employment because of plaintiff's religious beliefs.

1034. Schoeman's violation of Section 2000e-2(a)(1) of Title VII of the Civil Rights Act of 1964 was committed under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

1035. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 2, 2013 and was issued a Notice of Right to Sue

272

on December 9, 2013, a copy of which is attached hereto as **Exhibit H**, in which the

EEOC stated that:

> Less than 180 days have passed since the filing of
> this charge, but I have determined that it is
> unlikely that the EEOC will be able to complete its
> administrative processing within 180 days from the
> filing of this charge.

## SIXTY-FIFTH CAUSE OF ACTION
## SCHOEMAN'S VIOLATION OF TITLE VII OF
## THE CIVIL RIGHTS ACT OF 1964

1036.  Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set

forth herein at length.

1037.  Schoeman violated Section 2000e-2(a)(2) of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.

1038.  As discussed herein, Schoeman limited and segregated plaintiff in a

manner that deprived plaintiff of employment opportunities and adversely affected

her status as an employee, because of plaintiff's religious beliefs.

1039.  Schoeman's violation of Section 2000e-2(a)(2) of Title VII of the Civil

Rights Act of 1964 was committed under the direct supervision and control of Mindy

H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while

rendering professional services on behalf of Schoeman.

1040.  Plaintiff filed a charge with the Equal Employment Opportunity

Commission ("EEOC") on October 2, 2013 and was issued a Notice of Right to Sue

273

on December 9, 2013, a copy of which is attached hereto as **Exhibit H**, in which the

EEOC stated that:

> Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

## SIXTY-SIXTH CAUSE OF ACTION
## SCHOEMAN'S VIOLATION OF TITLE VII OF
## THE CIVIL RIGHTS ACT OF 1964

1041.  Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1042.  Schoeman violated Section 2000e-3 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.

1043.  As discussed herein, Schoeman discriminated against plaintiff because she complained of religious discrimination at Schoeman and Schoeman terminated plaintiff because, among other unlawful reasons, plaintiff complained of being subjected to religious discrimination in violation of Title VII of the Civil Rights Act of 1964 at Schoeman.

1044.  Schoeman's violation of Section 2000e-3 of Title VII of the Civil Rights Act of 1964 was committed under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

274

1045. Plaintiff filed a charge with the Equal Employment Opportunity

Commission ("EEOC") on October 2, 2013 and was issued a Notice of Right to Sue

on December 9, 2013, a copy of which is attached hereto as **Exhibit H**, in which the

EEOC stated that:

> Less than 180 days have passed since the filing of
> this charge, but I have determined that it is
> unlikely that the EEOC will be able to complete its
> administrative processing within 180 days from the
> filing of this charge.

## SIXTY-SEVENTH CAUSE OF ACTION
### SCHOEMAN'S VIOLATION OF SECTION 740 OF THE NYS LABOR LAW

1046. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set

forth herein at length.

1047. Schoeman violated Section 740(2) of the New York State Labor Law,

which provides:

> Prohibitions. An employer shall not take any
> retaliatory personnel action against an employee
> because such employee does any of the following:
>
> (a) discloses, or threatens to disclose to a
> supervisor or to a public body an activity, policy or
> practice of the employer that is in violation of law,
> rule or regulation which violation creates and
> presents a substantial and specific danger to the
> public health or safety, or which constitutes health
> care fraud;
>
> (b) provides information to, or testifies before, any
> public body conducting an investigation, hearing or
> inquiry into any such violation of a law, rule or
> regulation by such employer; or

275

       (c) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation.

1048. Schoeman terminated plaintiff because, among other unlawful reasons, plaintiff made OSHA aware of Schoeman's unlawful practice of having its employees work in an unsafe work environment that posed a substantial and specific danger to its employees' health and because plaintiff insisted on working from home rather than expose herself to the unsafe work environment at Schoeman.

1049. Schoeman took retaliatory personnel action, including refusing to treat as paid work days the days plaintiff worked at home and would work at home due to the unsafe conditions at Schoeman and then terminating plaintiff, because, among other unlawful reasons, plaintiff disclosed the unsafe work conditions at Schoeman to OSHA and because plaintiff provided information to OSHA regarding such unsafe work conditions.

1050. Before complaining to OSHA, plaintiff notified all members of Schoeman and Schoeman's office manager of the unsafe work conditions at Schoeman but Schoeman refused to correct the unsafe work conditions and refused to allow plaintiff to work from home due to the unsafe work conditions at Schoeman.

1051. By compelling its employees to work in the midst of a construction site in which there were heavy fumes and dust emitted containing toxic substances,

276

Schoeman violated Section 200(1) of the New York State Labor Law, which

provides, *inter alia*:

> All places to which this chapter applies shall be so
> constructed, equipped, arranged, operated and
> conducted as to provide reasonable and adequate
> protection to the lives, health and safety of all
> persons employed therein or lawfully frequenting
> such places.

1052. Schoeman further violated Section 241 of the New York State Labor

Law, which provides, *inter alia*, that:

> All contractors and owners and their agents, except
> owners of one and two-family dwellings who
> contract for but do not direct or control the work,
> when constructing or demolishing buildings or
> doing any excavating in connection therewith, shall
> comply with the following requirements:
>
> 1. If the floors are to be arched between the beams
> thereof, or if the floors or filling in between the
> floors are of fireproof material, the flooring or
> filling in shall be completed as the building
> progresses.
>
> 2. If the floors are not to be filled in between the
> beams with brick or other fireproof material, the
> underflooring shall be laid on each story as the
> building progresses.
>
> 3. If double floors are not to be used, the floor two
> stories immediately below the story where the work
> is being performed shall be kept planked over.
>
> 4. If the floor beams are of iron or steel, the entire
> tier of iron or steel beams on which the structural
> iron or steel work is being erected shall be
> thoroughly planked over, except spaces reasonably

277

required for proper construction of the iron or steel work, for raising or lowering of materials or for stairways and elevator shafts designated by the plans and specifications.

5. If elevators, elevating machines or hod-hoisting apparatus are used in the course of construction, for the purpose of lifting materials, the shafts or openings in each floor and at each landing level shall be inclosed or fenced in on all sides by a barrier of suitable height, except on two sides which may be used for taking off and putting on materials, and those sides shall be guarded by an adjustable barrier not less than three nor more than four feet from the floor and not less than two feet from the edges of such shafts or openings.

6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

1053. Schoeman's office space was an area in which construction and demolition work was being performed and was not so arranged, operated, and conducted as to provide reasonable and adequate protection and safety to Schoeman's employees or people lawfully frequenting Schoeman.

278

1054. Schoeman's actions were carried out under the direct supervision and control of Beth L. Kaufman, Mindy H. Stern, Charles B. Updike, and Andrea D. Ascher.

## SIXTY-EIGHTH CAUSE OF ACTION
## SCHOEMAN'S VIOLATION OF SECTION 200(1) OF THE NYS LABOR LAW

1055. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1056. By compelling its employees to work in the midst of a construction site in which there were heavy fumes and dust emitted containing toxic substances and by not allowing plaintiff to work from home, Schoeman violated Section 200(1) of the New York State Labor Law, which provides, *inter alia*:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places.

1057. Upon information and belief, Schoeman contracted for the construction and renovation work that was performed on the twelfth floor of 551 Fifth Avenue.

1058. Schoeman's actions in failing to provide reasonable and adequate protection to the lives, health, and safety of all persons employed at Schoeman directly caused plaintiff's termination.

279

1059. Schoeman's actions were carried out under the direct supervision and control of Beth L. Kaufman, Mindy H. Stern, Charles B. Updike, and Andrea D. Ascher.

## SIXTY-NINTH CAUSE OF ACTION
## SCHOEMAN'S VIOLATION OF SECTION 241 OF THE NYS LABOR LAW

1060. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1061. Schoeman violated Section 241 of the New York State Labor Law, which provides, *inter alia*, that:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> 1. If the floors are to be arched between the beams thereof, or if the floors or filling in between the floors are of fireproof material, the flooring or filling in shall be completed as the building progresses.
>
> 2. If the floors are not to be filled in between the beams with brick or other fireproof material, the underflooring shall be laid on each story as the building progresses.
>
> 3. If double floors are not to be used, the floor two stories immediately below the story where the work is being performed shall be kept planked over.
>
> 4. If the floor beams are of iron or steel, the entire tier of iron or steel beams on which the structural

280

iron or steel work is being erected shall be thoroughly planked over, except spaces reasonably required for proper construction of the iron or steel work, for raising or lowering of materials or for stairways and elevator shafts designated by the plans and specifications.

5. If elevators, elevating machines or hod-hoisting apparatus are used in the course of construction, for the purpose of lifting materials, the shafts or openings in each floor and at each landing level shall be enclosed or fenced in on all sides by a barrier of suitable height, except on two sides which may be used for taking off and putting on materials, and those sides shall be guarded by an adjustable barrier not less than three nor more than four feet from the floor and not less than two feet from the edges of such shafts or openings.

6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

1062. Upon information and belief, Schoeman contracted for the construction and renovation work that was performed on the twelfth floor of 551 Fifth Avenue.

1063. Schoeman's office space was an area in which construction and demolition work was being performed and was not so arranged, operated, and

281

conducted as to provide reasonable and adequate protection and safety to Schoeman's employees or people lawfully frequenting Schoeman.

1064. Schoeman's violation of this statute directly caused plaintiff's termination.

1065. Schoeman's actions were carried out under the direct supervision and control of Beth L. Kaufman, Mindy H. Stern, Charles B. Updike, and Andrea D. Ascher.

## SEVENTIETH CAUSE OF ACTION
## FRENCH PARTNERS, LLC'S VIOLATION OF SECTION 200 OF THE NEW YORK STATE LABOR LAW

1066. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1067. French Partners, LLC, the owner of 551 Fifth Avenue, violated Section 200 of the New York State Labor Law, which requires, *inter alia*, that the Schoeman office space, on the twelfth floor of 551 Fifth Avenue, "be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."

1068. Upon information and belief, French Partners, LLC contracted for the construction and renovation work performed on the twelfth floor of 551 Fifth Avenue.

282

1069. French Partners, LLC allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1070. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1071. Upon information and belief, French Partners, LLC supervised, directed, and controlled the construction work taking place on the twelfth floor of 551 Fifth Avenue.

1072. In addition, French Partners, LLC had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1073. As a result of French Partners, LLC's violation of Section 200 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

283

1074. Plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of French Partners, LLC.

## SEVENTY-FIRST CAUSE OF ACTION
## FRENCH PARTNERS, LLC'S VIOLATION OF SECTION 241 OF THE NEW YORK STATE LABOR LAW

1075. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1076. French Partners, LLC, the owner of 551 Fifth Avenue, violated Section 241 of the New York State Labor Law, which requires, *inter alia*, that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

1077. Upon information and belief, French Partners, LLC, the owner of 551 Fifth Avenue, contracted for the construction and renovation work performed on the twelfth floor of 551 Fifth Avenue.

1078. French Partners, LLC allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1079. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

284

1080. French Partners, LLC had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1081. As a result of French Partners, LLC's violation of Section 241 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1082. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of French Partners, LLC.

## SEVENTY-SECOND CAUSE OF ACTION
## FRENCH PARTNERS, LLC'S NEGLIGENCE

1083. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1084. French Partners, LLC, as the owner of 551 Fifth Avenue, was under a duty to maintain the twelfth floor of 551 Fifth Avenue in a safe condition for the employees of Schoeman, which it failed to do.

285

1085. French Partners, LLC created the unsafe conditions at Schoeman by arranging for the construction work to be performed and by permitting Schoeman to move into the twelfth floor space while the construction and renovation work was still ongoing.

1086. French Partners, LLC created the unsafe conditions at Schoeman by permitting Schoeman to have its employees work on the twelfth floor while construction and renovation work was ongoing without any protection for the employees.

1087. French Partners, LLC had actual knowledge of the unsafe conditions on the twelfth floor of 551 Fifth Avenue and failed to correct the unsafe conditions.

1088. As a result of the unsafe work conditions at Schoeman, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1089. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of French Partners, LLC.

## SEVENTY-THIRD CAUSE OF ACTION
## VIOLATION OF SECTION 200 OF THE NEW YORK STATE LABOR LAW
## BY THE FEIL ORGANIZATION, INC.

1090. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1091. The Feil Organization, Inc. is, upon information and belief, the owner and/or managing agent of the building located at 551 Fifth Avenue, New York, New York.

1092. The Feil Organization, Inc. violated Section 200 of the New York State Labor Law, which requires, *inter alia*, that the Schoeman office space, on the twelfth floor of 551 Fifth Avenue, "be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."

1093. The Feil Organization allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1094. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1095. Upon information and belief, The Feil Organization contracted for, supervised, directed, and controlled the construction work taking place on the twelfth floor of 551 Fifth Avenue.

287

1096. In addition, The Feil Organization had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1097. As a result of The Feil Organization's violation of Section 200 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1098. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of The Feil Organization.

### SEVENTY-FOURTH CAUSE OF ACTION
### THE FEIL ORGANIZATION'S VIOLATION OF SECTION 241 OF THE NEW YORK STATE LABOR LAW

1099. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1100. The Feil Organization, Inc. is, upon information and belief, the owner and/or managing agent of the building located at 551 Fifth Avenue, New York, New York.

288

1101. The Feil Organization violated Section 241 of the New York State Labor Law, which requires, *inter alia*, that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

1102. Upon information and belief, The Feil Organization contracted for, directed, supervised, and controlled the construction and renovation work performed on the twelfth floor of 551 Fifth Avenue.

1103. The Feil Organization allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1104. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1105. The Feil Organization had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1106. As a result of The Feil Organization's violation of Section 241 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on

289

working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1107. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of The Feil Organization.

## SEVENTY-FIFTH CAUSE OF ACTION
## THE FEIL ORGANIZATION'S NEGLIGENCE

1108. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1109. Upon information and belief, The Feil Organization is the owner and/or managing agent of the building located at 551 Fifth Avenue.

1110. The Feil Organization, as the owner and/or managing agent of 551 Fifth Avenue, was under a duty to maintain the twelfth floor of 551 Fifth Avenue in a safe condition for the employees of Schoeman, which it failed to do.

1111. The Feil Organization created the unsafe conditions at Schoeman by arranging for the construction work to be performed and by permitting Schoeman to move into the twelfth floor space while the construction and renovation work was still ongoing.

290

1112. The Feil Organization created the unsafe conditions at Schoeman by permitting Schoeman to have its employees work on the twelfth floor while construction and renovation work was ongoing without any protection for the employees.

1113. The Feil Organization had actual knowledge of the unsafe conditions on the twelfth floor of 551 Fifth Avenue and failed to correct the unsafe conditions.

1114. As a result of the unsafe work conditions at Schoeman, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her exercising her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1115. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of The Feil Organization.

### SEVENTY-SIXTH CAUSE OF ACTION
### VIOLATION OF SECTION 200 OF THE NEW YORK STATE LABOR LAW
### BY JEFFREY MANAGEMENT CORP.

1116. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1117. Jeffrey Management Corp. is, upon information and belief, the managing agent of the building located at 551 Fifth Avenue, New York, New York.

291

1118. Jeffrey Management Corp. violated Section 200 of the New York State Labor Law, which requires, *inter alia*, that the Schoeman office space, on the twelfth floor of 551 Fifth Avenue, "be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."

1119. Upon information and belief, Jeffrey Management Corp. contracted for, directed, supervised, and controlled the construction and renovation work performed on the twelfth floor of 551 Fifth Avenue.

1120. Jeffrey Management Corp. allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1121. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1122. In addition, Jeffrey Management Corp. had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1123. As a result of Jeffrey Management Corp.'s violation of Section 200 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted

292

on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1124. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Jeffrey Management Corp.

## SEVENTY-SEVENTH CAUSE OF ACTION
## JEFFREY MANAGEMENT CORP.'S VIOLATION OF SECTION 241 OF THE NEW YORK STATE LABOR LAW

1125. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1126. Jeffrey Management Corp. is, upon information and belief, the managing agent of the building located at 551 Fifth Avenue, New York, New York.

1127. Jeffrey Management Corp. violated Section 241 of the New York State Labor Law, which requires, *inter alia*, that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

293

1128. Upon information and belief, Jeffrey Management Corp. contracted for, directed, supervised, and controlled the construction and renovation work performed on the twelfth floor of 551 Fifth Avenue.

1129. Jeffrey Management Corp. allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1130. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1131. Jeffrey Management Corp. had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1132. As a result of Jeffrey Management Corp.'s violation of Section 241 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

294

1133. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Jeffrey Management Corp.

## SEVENTY-EIGHTH CAUSE OF ACTION
## JEFFREY MANAGEMENT CORP.'S NEGLIGENCE

1134. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1135. Upon information and belief, Jeffrey Management Corp. is the managing agent of the building located at 551 Fifth Avenue.

1136. Jeffrey Management Corp., as the managing agent of 551 Fifth Avenue, was under a duty to maintain the twelfth floor of 551 Fifth Avenue in a safe condition for the employees of Schoeman, which it failed to do.

1137. Jeffrey Management Corp. created the unsafe conditions at Schoeman by arranging for the construction work to be performed and by permitting Schoeman to move into the twelfth floor space while the construction and renovation work was still ongoing.

1138. Jeffrey Management Corp. created the unsafe conditions at Schoeman by permitting Schoeman to have its employees work on the twelfth floor while construction and renovation work was ongoing without any protection for the employees.

295

1139. Jeffrey Management Corp. had actual knowledge of the unsafe conditions on the twelfth floor of 551 Fifth Avenue and failed to correct the unsafe conditions.

1140. As a result of the unsafe work conditions at Schoeman, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her exercising her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1141. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Jeffrey Management Corp.

## SEVENTY-NINTH CAUSE OF ACTION
## VIOLATION OF SECTION 200 OF THE NEW YORK STATE LABOR LAW
## BY JEFFREY FEIL

1142. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1143. Jeffrey Feil is, upon information and belief, the Chief Executive Officer of The Feil Organization, which is, upon information and belief, the owner and/or managing agent of the building located at 551 Fifth Avenue, and the Chief Executive Officer of Jeffrey Management Corp., which is upon information and

296

belief, the managing agent of the building located at 551 Fifth Avenue, New York, New York.

1144. Jeffrey Feil violated Section 200 of the New York State Labor Law, which requires, *inter alia*, that the Schoeman office space, on the twelfth floor of 551 Fifth Avenue, "be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."

1145. Upon information and belief, Jeffrey Feil exercised direct control over the decision of The Feil Organization and Jeffrey Management Corp. to allow Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1146. Jeffrey Feil allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1147. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1148. Upon information and belief, Jeffrey Feil, on behalf of The Feil Organization and Jeffrey Management Corp. supervised, directed, and controlled the construction work taking place on the twelfth floor of 551 Fifth Avenue.

297

1149. In addition, Jeffrey Feil had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1150. As a result of Jeffrey Feil's violation of Section 200 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1151. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Jeffrey Feil.

### EIGHTIETH CAUSE OF ACTION
### JEFFREY FEIL'S VIOLATION OF SECTION 241 OF THE NEW YORK STATE LABOR LAW

1152. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1153. Jeffrey Feil is, upon information and belief, the Chief Executive Officer of The Feil Organization, which is, upon information and belief, the owner and/or managing agent of the building located at 551 Fifth Avenue, and the Chief Executive Officer of Jeffrey Management Corp., which is upon information and

298

belief, the managing agent of the building located at 551 Fifth Avenue, New York, New York.

1154. Jeffrey Feil violated Section 241 of the New York State Labor Law, which requires, *inter alia*, that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

1155. Upon information and belief, Jeffrey Feil exercised direct control over the decision of The Feil Organization and Jeffrey Management Corp. to allow Schoeman to move its employees into the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1156. Jeffrey Feil allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1157. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1158. Jeffrey Feil had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

299

1159.  As a result of Jeffrey Feil's violation of Section 241 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1160.  As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Jeffrey Feil.

## EIGHTY-FIRST CAUSE OF ACTION
## JEFFREY FEIL'S NEGLIGENCE

1161.  Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1162.  Upon information and belief, the Feil Organization is the owner and/or managing agent of the building located at 551 Fifth Avenue and Jeffrey Management Corp. is the managing agent of the building located at 551 Fifth Avenue.  Jeffrey Feil is, upon information and belief, the Chief Executive Officer of The Feil Organization and Jeffrey Management Corp., and exercises direct supervision and control over the actions and decisions of The Feil Organization and Jeffrey Management Corp.

300

1163. Jeffrey Feil, as the Chief Executive Officer of The Feil Organization, the owner and/or managing agent of 551 Fifth Avenue, and as the Chief Executive Officer of Jeffrey Management Corp., the managing agent of 551 Fifth Avenue, was under a duty to maintain the twelfth floor of 551 Fifth Avenue in a safe condition for the employees of Schoeman, which it failed to do.

1164. Jeffrey Feil created the unsafe conditions at Schoeman by permitting Schoeman to move into the twelfth floor space while the construction and renovation work was still ongoing and by allowing the construction and renovation work to continue after Schoeman moved its employees onto the twelfth floor.

1165. Jeffrey Feil created the unsafe conditions at Schoeman by permitting Schoeman to have its employees work on the twelfth floor while construction and renovation work was ongoing without any protection for the employees.

1166. Jeffrey Feil had actual knowledge of the unsafe conditions on the twelfth floor of 551 Fifth Avenue and failed to correct the unsafe conditions.

1167. As a result of the unsafe work conditions at Schoeman, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

301

1168. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Jeffrey Management Corp.

## EIGHTY-SECOND CAUSE OF ACTION
## INTERIOR CONSTRUCTION CORP.'S VIOLATION OF SECTION 200 OF THE NEW YORK STATE LABOR LAW

1169. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1170. Interior Construction Corp. violated Section 200 of the New York State Labor Law, which requires, *inter alia*, that the Schoeman office space, on the twelfth floor of 551 Fifth Avenue, "be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."

1171. Upon information and belief, Interior Construction Corp. performed, supervised, directed, and controlled the construction work taking place on the twelfth floor of 551 Fifth Avenue.

1172. Interior Construction Corp. continued to perform construction and renovation work after Schoeman moved its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1173. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

302

1174. In addition, Interior Construction Corp. had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1175. As a result of Interior Construction Corp.'s violation of Section 200 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1176. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Interior Construction Corp.

### EIGHTY-THIRD CAUSE OF ACTION
### INTERIOR CONSTRUCTION CORP.'S VIOLATION OF SECTION 241 OF THE NEW YORK STATE LABOR LAW

1177. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1178. Interior Construction Corp. violated Section 241 of the New York State Labor Law, which requires, *inter alia*, that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored,

303

equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

1179. Upon information and belief, Interior Construction Corp. contracted for and performed, supervised, directed, and controlled the construction and renovation work performed on the twelfth floor of 551 Fifth Avenue.

1180. Interior Construction Corp. continued to perform construction and renovation work after Schoeman moved its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1181. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1182. Interior Construction Corp. had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air..

1183. As a result of Interior Construction Corp.'s violation of Section 241 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor insisted on working from home so as not to expose herself to the toxic work environment at

304

Schoeman.  Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1184.  As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Interior Construction Corp.

**EIGHTY-FOURTH CAUSE OF ACTION**
**<u>INTERIOR CONSTRUCTION CORP.'S NEGLIGENCE</u>**

1185.  Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1186.  Interior Construction Corp., as the contractor hired to perform construction and renovation work at 551 Fifth Avenue, was under a duty to maintain the twelfth floor of 551 Fifth Avenue in a safe condition for the employees of Schoeman, which it failed to do.

1187.  Interior Construction Corp. created the unsafe conditions at Schoeman by allowing Schoeman to move its employees onto the twelfth floor while the construction and renovation work was ongoing and by continuing to perform construction and renovation work after Schoeman moved its employees to the twelfth floor space.

305

1188. Interior Construction Corp. had actual knowledge of the unsafe conditions on the twelfth floor of 551 Fifth Avenue and failed to correct the unsafe conditions.

1189. As a result of the unsafe work conditions at Schoeman, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1190. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Interior Construction Corp.

## EIGHTY-FIFTH CAUSE OF ACTION
## VIOLATION OF SECTION 200 OF THE NEW YORK STATE LABOR LAW
## BY JOSEPH BRUZZESE

1191. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1192. Joseph Bruzzese is, upon information and belief, the Chief Executive Officer of Interior Construction Corp., which is, upon information and belief, the construction company that performed, supervised, directed, and controlled the construction and renovation work on the twelfth floor of 551 Fifth Avenue.

1193. Joseph Bruzzese violated Section 200 of the New York State Labor Law, which requires, *inter alia*, that the Schoeman office space, on the twelfth floor

306

of 551 Fifth Avenue, "be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."

1194. Upon information and belief, Joseph Bruzzese, on behalf of Interior Construction Corp., supervised, directed, and controlled the construction work taking place on the twelfth floor of 551 Fifth Avenue.

1195. Upon information and belief, Joseph Bruzzese exercised direct control over the decision of Interior Construction Corp. to allow Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work and to continue with the renovation and construction work even after Schoeman moved its employees onto the twelfth floor.

1196. Joseph Bruzzese allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1197. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1198. In addition, upon information and belief, Joseph Bruzzese had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions

307

by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1199. As a result of Joseph Bruzzese's violation of Section 200 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1200. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Joseph Bruzzese.

## EIGHTY-SIXTH CAUSE OF ACTION
## JOSEPH BRUZZESE'S VIOLATION OF SECTION 241 OF THE NEW YORK STATE LABOR LAW

1201. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1202. Joseph Bruzzese is, upon information and belief, the Chief Executive Officer of Interior Construction Corp., which is, upon information and belief, the construction company that performed, supervised, directed, and controlled the construction and renovation work on the twelfth floor of 551 Fifth Avenue.

308

1203. Joseph Bruzzese violated Section 241 of the New York State Labor Law, which requires, *inter alia*, that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

1204. Upon information and belief, Joseph Bruzzese exercised direct control over the decision of Interior Construction Corp. to allow Schoeman to move its employees into the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work and to continue with the renovation and construction work even after Schoeman moved its employees onto the twelfth floor.

1205. Joseph Bruzzese allowed Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work.

1206. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1207. Upon information and belief, Joseph Bruzzese had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being

forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1208. As a result of Joseph Bruzzese's violation of Section 241 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1209. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Joseph Bruzzese.

### EIGHTY-SEVENTH CAUSE OF ACTION
### JOSEPH BRUZZESE'S NEGLIGENCE

1210. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1211. Joseph Bruzzese, as the Chief Executive Officer of Interior Construction Corp., the contractor hired to perform construction and renovation work at 551 Fifth Avenue, was under a duty to maintain the twelfth floor of 551 Fifth Avenue in a safe condition for the employees of Schoeman, which it failed to do.

310

1212. Upon information and belief, Joseph Bruzzese exercised direct control over the decision of Interior Construction Corp. to allow Schoeman to move its employees into the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work and to continue with the renovation and construction work even after Schoeman moved its employees onto the twelfth floor.

1213. Joseph Bruzzese created the unsafe conditions at Schoeman by allowing Interior Construction Corp. to continue to perform construction and renovation work on the twelfth floor after Schoeman moved its employees to the twelfth floor space while the construction and renovation work was still ongoing.

1214. Upon information and belief, Joseph Bruzzese had actual knowledge of the unsafe conditions on the twelfth floor of 551 Fifth Avenue and failed to correct the unsafe conditions.

1215. As a result of the unsafe work conditions at Schoeman, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1216. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of Joseph Bruzzese.

311

## EIGHTY-EIGHTH CAUSE OF ACTION
## JOHN FRANCIS BORRELLI ARCHITECT, PC AND JOHN FRANCIS BORRELLI'S VIOLATION OF SECTION 200 OF THE NEW YORK STATE LABOR LAW

1217. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1218. John Francis Borrelli Architect, PC and John Francis Borrelli, the architect for the construction and renovation work on the twelfth floor of 551 Fifth Avenue who, upon information and belief, were responsible for supervising, directing, and controlling all of the construction and renovation work performed, violated Section 200 of the New York State Labor Law, which requires, *inter alia*, that the Schoeman office space, on the twelfth floor of 551 Fifth Avenue, "be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."

1219. John Francis Borrelli Architect, PC and John Francis Borrelli allowed Schoeman to move its employees into the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work and allowed the construction and renovation work to continue even after Schoeman moved its employees onto the twelfth floor.

312

1220. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1221. In addition, John Francis Borrelli Architect, PC and John Francis Borrelli had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1222. As a result of John Francis Borrelli Architect, PC and John Francis Borrelli's violation of Section 200 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1223. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of John Francis Borrelli Architect, PC and John Francis Borrelli.

313

## EIGHTY-NINTH CAUSE OF ACTION
## JOHN FRANCIS BORRELI ARCHITECT, P.C. AND JOHN FRANCIS
## BORRELLI'S VIOLATION OF SECTION 241 OF THE
## NEW YORK STATE LABOR LAW

1224. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1225. John Francis Borrelli Architect, P.C. and John Francis Borrelli, the architect for the construction and renovation work on the twelfth floor of 551 Fifth Avenue who, upon information and belief, were responsible for supervising, directing, and controlling all of the construction and renovation work performed, violated Section 241 of the New York State Labor Law, which requires, *inter alia*, that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

1226. John Francis Borrelli Architect, PC and John Francis Borrelli allowed Schoeman to move its employees into the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work and allowed the construction and renovation work to continue even after Schoeman moved its employees onto the twelfth floor.

314

1227. No safety precautions were taken to ensure the safety of the employees of Schoeman, who were exposed to toxic fumes and dust from the construction taking place in Schoeman's office space.

1228. John Francis Borrelli Architect, P.C. and John Francis Borrelli had actual knowledge that the employees of Schoeman were exposed to unsafe work conditions by being forced to work all day in the middle of a construction site in which toxic fumes and dust permeated the air.

1229. As a result of John Francis Borrelli Architect, P.C. and John Francis Borrelli's violation of Section 241 of the New York State Labor Law, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1230. Plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of John Francis Borrelli Architect, P.C. and John Francis Borrelli.

315

## NINETIETH CAUSE OF ACTION
## JOHN FRANCIS BORRELLI, P.C. AND JOHN FRANCIS BORRELLI'S
## NEGLIGENCE

1231. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1232. John Francis Borrelli Architect, P.C. and John Francis Borrelli, as the architect for the construction and renovation work on the twelfth floor of 551 Fifth Avenue who, upon information and belief, were responsible for supervising, directing, and controlling all of the construction and renovation work performed, were under a duty to maintain the twelfth floor of 551 Fifth Avenue in a safe condition for the employees of Schoeman, which they failed to do.

1233. John Francis Borrelli, P.C. and John Francis Borrelli created the unsafe conditions at Schoeman by allowing Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue when the floor was still in the midst of heavy construction and renovation work and by continuing the construction and renovation work even after Schoeman moved its employees onto the twelfth floor. No protection was provided for Schoeman's employees.

1234. John Francis Borrelli, P.C. and John Francis Borrelli had actual knowledge of the unsafe conditions on the twelfth floor of 551 Fifth Avenue and failed to correct the unsafe conditions.

1235. As a result of the unsafe work conditions at Schoeman, plaintiff experienced symptoms of heavy coughing and nausea when she was exposed to the

316

toxic air on the twelfth floor and insisted on working from home so as not to expose herself to the toxic work environment at Schoeman. Plaintiff was ultimately terminated because of her insistence on working from home, because of her having exercised her rights under the OSH Act, and because of her having filed a work-safety complaint with OSHA, among other unlawful reasons.

1236. As discussed herein, plaintiff suffered serious harm as a result of her termination, which was a direct result of the actions of John Francis Borrelli, P.C. and John Francis Borrelli.

### NINETY-FIRST CAUSE OF ACTION
### VIOLATION OF SECTION 241(10) OF THE
### NEW YORK STATE LABOR LAW

1237. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1238. Schoeman, French Partners, LLC, The Feil Organization, Inc., Jeffrey Management Corp., Jeffrey Feil, John Francis Borrelli Architect, P.C., John Francis Borrelli, Interior Construction Corp., and Joseph Bruzzese violated Section 241(10) of the New York State Labor Law, which provides that:

> Prior to advertising for bids or contracting for or
> commencing work on any demolition work on
> buildings covered under this section except
> agricultural buildings as defined in regulations
> promulgated by the commissioner and except
> buildings the construction of which was begun on or
> after January first, nineteen hundred seventy-four,
> all owners and their agents, except owners of one
> and two-family dwellings who contract for but do

317

not direct or control the work, shall conduct or cause to be conducted a survey to determine whether or not the building to be demolished contains asbestos or asbestos material as defined in section nine hundred one of this chapter. Such surveys shall be conducted in conformance with rules and regulations promulgated by the commissioner. Information derived from such survey shall be immediately transmitted to the commissioner and to the local governmental entity charged with issuing a permit for such demolition under applicable state or local laws or, if no such permit is required, to the town or city clerk. If such survey finds that a building to be demolished contains asbestos or asbestos material as defined by section nine hundred one of the [this] chapter, no bids shall be advertised nor contracts awarded nor demolition work commenced by any owner or agent prior to completion of an asbestos remediation contract performed by a licensed asbestos contractor as defined by section nine hundred one of this chapter.

1239. Upon information and belief, there are asbestos in the building located at 551 Fifth Avenue, New York, New York.

1240. The construction and renovation work performed on the twelfth floor of 551 Fifth Avenue included demolition work.

1241. Upon information and belief, no survey was conducted pursuant to Section 241(10) of the Labor Law and no asbestos remediation contract performed by a licensed asbestos contractor was completed.

1242. The actions of the aforementioned defendants caused plaintiff's termination.

318

## NINETY-SECOND CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS BY MADISON 96 ASSOCIATES, LLC, STUART J. BOESKY, AND JAMISON WEINER

1243. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1244. As discussed herein, one of the reasons listed in the Letter of Termination for plaintiff's termination was because she refused to cooperate in the making of a fraudulent insurance payment demand to QBE Insurance Corporation on behalf of Madison 96, with which Madison 96, Boesky, and Weiner were intimately involved.

1245. Plaintiff had a business relationship with Schoeman while she was employed at Schoeman.

1246. Madison 96 Associates, LLC, Stuart J. Boesky, and Jamison Weiner knew that plaintiff was employed by Schoeman and had a business relationship with Schoeman and intentionally interfered with it by engaging in insurance fraud with the knowledge that plaintiff, who was their attorney and who was employed by Schoeman, their accomplice in the fraud, refused to cooperate with the fraud, thereby inducing Schoeman to terminate plaintiff.

1247. Madison 96 Associates, LLC, Stuart J. Boesky, and Jamison Weiner acted out of malice and used unfair and dishonest means to interfere with plaintiff's business relationship with Schoeman.

319

1248. The interference of Madison 96 Associates, LLC, Stuart J. Boesky, and Jamison Weiner with plaintiff's business relationship with Schoeman caused serious injury to plaintiff's business relationship with Schoeman, resulting in plaintiff's vindictive termination by Schoeman, which caused plaintiff serious harm, as discussed herein.

## NINETY-THIRD CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY MADISON 96 ASSOCIATES, LLC, STUART J. BOESKY, AND JAMISON WEINER

1249. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1250. Defendants Madison 96 Associates, LLC, Stuart J. Boesky, and Jamison Weiner are liable to plaintiff for intentional infliction of emotional distress.

1251. As discussed herein, Madison 96 Associates, LLC, Stuart J. Boesky, and Jamison Weiner acted with extreme and outrageous conduct.

1252. The decision made by Madison 96, Boesky, and Weiner to commit insurance fraud despite their knowledge that plaintiff refused to cooperate with the fraud and to thereby induce Schoeman, their accomplice in the fraud, to terminate plaintiff constitutes extreme and outrageous conduct.

1253. Madison 96, Boesky, and Weiner intended to cause, or disregarded the substantial probability of causing, severe emotional distress to plaintiff as a result of their actions.

320

1254. As a result of the extreme and outrageous conduct of Madison 96, Boesky, and Weiner, plaintiff has suffered extreme emotional distress.

## NINETY-FOURTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS BY REED SMITH LLP AND PAUL E. BREENE

1255. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1256. As discussed herein, one of the reasons listed in the Letter of Termination for plaintiff's termination was because she refused to cooperate in the making of a fraudulent insurance payment demand to QBE Insurance Corporation.

1257. Plaintiff had a business relationship with Schoeman while she was employed at Schoeman.

1258. Reed Smith LLP and Paul E. Breene knew that plaintiff was employed by Schoeman and had a business relationship with Schoeman and intentionally interfered with it by engaging in insurance fraud with the knowledge that plaintiff, who was employed by Schoeman, their accomplice in the fraud, refused to cooperate with the fraud. Plaintiff made clear to Reed Smith LLP and Paul E. Breene that she refused to cooperate in insurance fraud in January of 2012. As discussed herein, when Reed Smith and Breene saw that plaintiff refused to cooperate with the fraud, they libeled, slandered and defamed plaintiff and created a written record of their libel in an attempt to make it seem that plaintiff was incompetent and to cover up their wrongdoing so that when plaintiff would be terminated by

321

Schoeman because of her refusal to cooperate with the fraud, it would seem that plaintiff was terminated because she was a poor employee rather than because of her refusal to cooperate with the fraud. Notwithstanding their knowledge that plaintiff refused to cooperate in any insurance fraud, they continued to commit insurance fraud when they collaborated with Schoeman in March of 2013 to fraudulently obtain more money from the insurance company than their client was lawfully entitled to, which plaintiff refused to cooperate with, thereby inducing Schoeman to terminate plaintiff.

1259. Reed Smith LLP and Paul E. Breene acted out of malice and used unfair and dishonest means to interfere with plaintiff's business relationship with Schoeman.

1260. The interference of Reed Smith LLP and Paul E. Breene with plaintiff's business relationship with Schoeman caused serious injury to plaintiff's business relationship with Schoeman, resulting in plaintiff's vindictive termination by Schoeman, which caused plaintiff serious harm, as discussed herein.

## NINETY-FIFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY REED SMITH LLP AND PAUL E. BREENE

1261. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1262. Defendants Reed Smith LLP and Paul E. Breene are liable to plaintiff for intentional infliction of emotional distress.

322

1263. As discussed herein, Reed Smith LLP and Paul E. Breene acted with extreme and outrageous conduct.

1264. The decision made by Reed Smith LLP and Paul E. Breene to commit insurance fraud despite their knowledge that plaintiff refused to cooperate with the fraud and to thereby induce Schoeman to terminate plaintiff constitutes extreme and outrageous conduct.

1265. Reed Smith and Breene's act of libeling, defaming, and slandering plaintiff and creating a written record of their libel in an attempt to make it seem that plaintiff was incompetent and to cover up their wrongdoing so that when plaintiff would be terminated by Schoeman because of her refusal to cooperate with the fraud, it would seem that plaintiff was terminated because she was a poor employee rather than because of her refusal to cooperate with the fraud constitutes extreme and outrageous conduct.

1266. Reed Smith and Breene intended to cause, or disregarded the substantial probability of causing, severe emotional distress to plaintiff as a result of their actions.

1267. As a result of the extreme and outrageous conduct of Reed Smith and Breene, plaintiff has suffered extreme emotional distress.

323

## NINETY-SIXTH CAUSE OF ACTION
### NEGLIGENCE

1268. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1269. The air quality tests that were performed and submitted to OSHA purported that the air quality at Schoeman was safe when it was not.

1270. The air quality tests that were submitted to OSHA did not include tests of the air in plaintiff's personal office at Shoeman or of the air in any of the Schoeman attorneys' personal offices.

1271. By submitting to OSHA tests that purported to show that the air quality at Schoeman was safe when the air at Schoeman was unsafe and when the tests failed to include tests of plaintiff's personal office or any of the Schoeman attorneys' personal offices despite their knowledge that experienced symptoms of heavy coughing and nausea from breathing in the air on the twelfth floor, Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, Cindy Nygaard, French Partners, LLC, The Feil Organization, Inc., Jeffrey Management Corp., Jeffrey Feil, John Francis Borrelli Architect, P.C., John Francis Borrelli, Interior Construction Corp., Joseph Bruzzese, Creative Environment Solutions Corp., H & B Construction Services, Inc., M & B Construction, and M & B Construction Services were guilty of negligence.

324

1272. Upon information and belief, Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, Cindy Nygaard, French Partners, LLC, The Feil Organization, Inc., Jeffrey Management Corp., Jeffrey Feil, John Francis Borrelli Architect, P.C., John Francis Borrelli, Interior Construction Corp., Joseph Bruzzese were all involved in arranging for the air quality tests and their submission to OSHA. The air quality tests, attached hereto as **Exhibit B**, indicate that the tests were performed by Creative Environment Solutions Corporation and H& B Construction Services and/or M & B Construction and/or M & B Construction Services.

1273. Each of Schoeman, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, Andrea D. Ascher, Cindy Nygaard, French Partners, LLC, The Feil Organization, Inc., Jeffrey Management Corp., Jeffrey Feil, John Francis Borrelli Architect, P.C., John Francis Borrelli, Interior Construction Corp., Joseph Bruzzese, Creative Environment Solutions Corp., H & B Construction Services, Inc., M & B Construction, and M & B Construction Services owed plaintiff a duty of care in arranging for and/or performing air quality tests at OSHA's request after plaintiff experienced symptoms of heavy coughing and nausea from breathing in the toxic air on the twelfth floor of 551 Fifth Avenue. By submitting tests to OSHA that purported to conclude that the air at Schoeman was safe without including tests of plaintiff's personal office or any of the Schoeman attorneys' personal offices, these defendants breached their duty of care to plaintiff. As a direct result of their

325

actions, OSHA made a determination that it felt that plaintiff's work safety case against Schoeman could be closed and immediately thereafter, plaintiff was terminated because, among other unlawful reasons, of her filing a complaint with OSHA. As discussed herein, plaintiff suffered extensive and severe damage as a result of these defendants' negligent actions.

1274. Schoeman's actions were carried out under the direct supervision and control of Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher while rendering professional services on behalf of Schoeman.

## NINETY-SEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT

1275. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 229 as if fully set forth herein at length.

1276. Schoeman and/or French Partners, LLC and/or The Feil Organization and/or Jeffrey Management Corp. entered into a contract with Creative Environment Solutions Corp. and/or H &B Construction Services, Inc. and/or M &B Construction and/or M & B Construction Services to have the air quality in Schoeman's office space on the twelfth floor tested in response to an inquiry by OSHA prompted by a work-safety complaint filed by plaintiff with OSHA.

1277. The contract that was entered into for the air quality testing was intended by both parties to be for the benefit of plaintiff, who experienced symptoms

326

of heavy coughing and nausea when breathing in the toxic air on the twelfth floor and who had filed the work-safety complaint with OSHA.

1278. Creative Environment Solutions Corp. and/or H &B Construction Services, Inc. and/or M &B Construction and/or M & B Construction Services are guilty of a breach of contract in failing to properly ascertain the quality of the air at Schoeman and in issuing a report that concluded that the air at Schoeman was safe when it was not and when the report did not include the results of tests of the air in plaintiff's personal office at Schoeman or of the air in any of the Schoeman attorneys' personal offices. Plaintiff was an intended beneficiary of the contract and was severely harmed by the breach of contract.

1279. As a result of the aforementioned defendants' breach of contract, plaintiff suffered severe damage, including, but not limited to, her termination by Schoeman, severe economic damage, severe reputational damage, the inability to secure other employment, the destruction of her career, the loss of her home, and severe emotional distress.

### NINETY-EIGHTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS BY FRENCH PARTNERS, LLC, THE FEIL ORGANIZATION, JEFFREY MANAGEMENT CORP., JEFFREY FEIL, JOHN FRANCIS BORRELLI ARCHITECT, P.C., AND JOHN FRANCIS BORRELLI

1280. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

327

1281. Plaintiff had a business relationship with Schoeman while she was employed at Schoeman.

1282. French Partners, LLC, The Feil Organization, Jeffrey Management Corp., Jeffrey Feil, John Francis Borrelli Architect, P.C., and John Francis Borrelli knew of plaintiff's business relationship with Schoeman and intentionally interfered with it by, among other things, allowing Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue while heavy renovation and construction work was taking place in Schoeman's office space and by allowing the construction and renovation work to continue after Schoeman moved its employees onto the twelfth floor.

1283. Said defendants further interfered with plaintiff's business relations with Schoeman and induced Schoeman to terminate plaintiff by arranging for the submission to OSHA of air quality tests that purported to show that the air at Schoeman was safe when said defendants knew that the air was not safe and when the tests submitted to OSHA did not include tests of the air in plaintiff's personal office at Schoeman.

1284. Said defendants used wrongful, unfair, and dishonest means to interfere with plaintiff's business relationship with Schoeman and to induce Schoeman to terminate plaintiff.

1285. The interference of said defendants with plaintiff's business relationship with Schoeman caused serious injury to plaintiff's business

328

relationship with Schoeman, resulting in plaintiff's vindictive termination by Schoeman, which caused plaintiff serious harm, as discussed herein.

## NINETY-NINTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS BY INTERIOR CONSTRUCTION CORP. AND JOSEPH BRUZZESE

1286. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1287. Plaintiff had a business relationship with Schoeman while she was employed at Schoeman.

1288. Interior Construction Corp. and Joseph Bruzzese knew of plaintiff's business relationship with Schoeman and intentionally interfered with it by, among other things, allowing Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue while heavy renovation and construction work was taking place in Schoeman's office space and by continuing the construction and renovation work even after Schoeman moved its employees to the twelfth floor.

1289. Said defendants further interfered with plaintiff's business relations with Schoeman by arranging for the submission to OSHA of air quality tests that purported to show that the air at Schoeman was safe when said defendants knew that the air was not safe and when the tests did not include tests of the air in plaintiff's personal office at Schoeman.

329

1290. Said defendants used wrongful, unfair, and dishonest means to interfere with plaintiff's business relationship with Schoeman.

1291. The interference of said defendants with plaintiff's business relationship with Schoeman caused serious injury to plaintiff's business relationship with Schoeman, resulting in plaintiff's vindictive termination by Schoeman, which caused plaintiff serious harm, as discussed herein.

## ONE HUNDREDTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS BY CREATIVE ENVIRONMENT SOLUTIONS CORP., H & B CONSTRUCTION SERVICES, INC., M & B CONSTRUCTION, AND M & B CONSTRUCTION SERVICES

1292. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1293. Plaintiff had a business relationship with Schoeman while she was employed at Schoeman.

1294. Creative Environment Solutions Corp., H & B Construction Services, Inc., M & B Construction, and M & B Construction Services knew of plaintiff's business relationship with Schoeman and intentionally interfered with it by, among other things, preparing a test report, that was submitted to OSHA, that purported to show that the air quality at Schoeman was safe when the air was not safe and when the tests submitted to OSHA did not include tests of the air in plaintiff's personal office or in any of the Schoeman attorneys' personal offices.

330

1295. Said defendants used wrongful, unfair, and dishonest means to interfere with plaintiff's business relationship with Schoeman and to induce Schoeman to terminate plaintiff.

1296. The interference of said defendants with plaintiff's business relationship with Schoeman caused serious injury to plaintiff's business relationship with Schoeman, resulting in plaintiff's vindictive termination by Schoeman, which caused plaintiff serious harm, as discussed herein.

## ONE HUNDRED AND FIRST CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY FRENCH PARTNERS, LLC, THE FEIL ORGANIZATION, JEFFREY MANAGEMENT CORP., JEFFREY FEIL, JOHN FRANCIS BORRELLI ARCHITECT, P.C., JOHN FRANCIS BORRELLI, INTERIOR CONSTRUCTION CORP., AND JOSEPH BRUZZESE

1297. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

1298. Defendants French Partners, LLC, the Feil Organization, Jeffrey Management Corp., Jeffrey Feil, John Francis Borrelli Architect, P.C., John Francis Borrelli, Interior Construction Corp., and Joseph Bruzzese are liable to plaintiff for intentional infliction of emotional distress.

1299. As discussed herein, said defendants acted with extreme and outrageous conduct.

1300. Said defendants' act of allowing Schoeman to move its employees onto the twelfth floor of 551 Fifth Avenue while heavy renovation and construction work

331

was taking place in Schoeman's office space and allowing the construction and renovation work to continue after Schoeman moved its employees to the twelfth floor constitutes extreme and outrageous conduct.

1301. Furthermore, said defendants' act of arranging for the submission to OSHA of air quality tests that purported to show that the air at Schoeman was safe when said defendants knew that the air was not safe and when the tests submitted to OSHA did not include tests of the air in plaintiff's personal office at Schoeman or tests of the air in any of the Schoeman attorneys' personal offices constitutes extreme and outrageous conduct.

1302. Said defendants intended to cause, or disregarded the substantial probability of causing, severe emotional distress to plaintiff as a result of their actions.

1303. As a result of the extreme and outrageous conduct of said defendants, plaintiff has suffered extreme emotional distress.

### ONE HUNDRED AND SECOND CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY CREATIVE ENVIRONMENT SOLUTIONS CORP., H & B CONSTRUCTION SERVICES, INC., M & B CONSTRUCTION, AND M & B CONSTRUCTION SERVICES

1304. Plaintiff repeats and realleges paragraphs 1 through 229 as if fully set forth herein at length.

332

1305.  Defendants Creative Environment Solutions Corp., H & B Construction Services, Inc., M & B Construction, and M & B Construction Services are liable to plaintiff for intentional infliction of emotional distress.

1306.  As discussed herein, said defendants acted with extreme and outrageous conduct.

1307.  Said defendants' act of preparing air quality tests to be submitted to OSHA that purported to show that the air at Schoeman was safe when said defendants knew that the air was not safe and when the tests submitted to OSHA did not include tests of the air in plaintiff's personal office at Schoeman constitutes extreme and outrageous conduct.

1308.  Said defendants intended to cause, or disregarded the substantial probability of causing, severe emotional distress to plaintiff as a result of their actions.

1309.  As a result of the extreme and outrageous conduct of said defendants, plaintiff has suffered extreme emotional distress.

## RELIEF REQUESTED

WHEREFORE, plaintiff demands judgment as follows:

1.      On her First Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be

333

not less than 300 million dollars, plus 9% statutory interest as permitted by law, (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an

334

amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

335

2.      On her Second Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount

336

to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants

337

mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursemens of this action and for such other and further relief as this Court deems just and proper.

3.    On her Third Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to,

338

lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress:

339

an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

4.       On her Fourth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not

340

less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million

341

dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

5.      On her Fifth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b)

342

for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million

343

dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

6.      On her Sixth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (ii) a judgment against Mindy H. Stern

344

as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300

345

million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

7.     On her Seventh Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and

future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be

347

determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (vi) a judgment against the Zeligson Firm as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less

348

than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (vii) a judgment against Laurie Zeligson as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (viii) a judgment against Susan S. Casero as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (ix) a judgment against Cindy Nygaard as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b)

349

for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (x) a judgment against Reed Smith LLP as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (xi) a judgment against Paul E. Breene as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; and (xii) a judgment against each of

350

the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

8.      On her Eighth Cause of Action, (i) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (ii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Charles B. Updike as follows: (a) for compensatory damages,

351

including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

9.      On her Ninth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past,

352

present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial

353

but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and

354

disbursements of this action, and for such other and further relief as this Court deems just and proper.

10.    On her Tenth Cause of Action, (i) a judgment against Schoeman as follows: (a) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (b) for punitive damages: an amount to be determined at trial but not less than 900 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for past, present, and future emotional distress an amount to be determined at trial but believed to be not less than 100 million dollars; (b) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (b) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (b) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (b) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants

355

mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

11.    On her Eleventh Cause of Action: (i) a judgment against Laurie Zeligson as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 500 million dollars; (ii) a judgment against the Zeligson Firm as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined at trial but not less than 900 million dollars; and (iii) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and

disbursemens of this action and for such other and further relief as this Court deems just and proper.

12. On her Twelfth Cause of Action: (i) a judgment against Laurie Zeligson as follows: (a) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (b) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (ii) a judgment against the Zeligson Firm as follows: (a) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (b) punitive damages in an amount to be determined at trial but not less than 900 million dollars; and (iii) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursemens of this action and for such other and further relief as this Court deems just and proper.

13. On her Thirteenth Cause of Action, (i) a judgment against Susan S. Casero as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) punitive damages in an amount to be determined

357

at trial but not less than 500 million dollars; (e) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

14.     On her Fourteenth Cause of Action: (i) a judgment against Susan S. Casero as follows: (a) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (b) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (c) for plaintiff's attorneys' fees, the costs and disbursemens of this action and for such other and further relief as this Court deems just and proper.

15.     On her Fifteenth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but

358

believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to

359

be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

16.    On her Sixteenth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future

360

wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; and (vi) a judgment against each of the defendants mentioned in

361

this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

17. On her Seventeenth Cause of Action, (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to

362

be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

18.     On her Eighteenth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past,

363

present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future

364

wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

19. On her Nineteenth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and

365

future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional

366

distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

20.    On her Twentieth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than

367

300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300

368

million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

21.    On her Twenty-First Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less

369

than 100 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100

370

million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

22.    On her Twenty-Second Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past,

371

present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

372

23.   On her Twenty-Third Cause of Action: a judgment against Laurie Zeligson as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; and (d) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

24.   On her Twenty-Fourth Cause of Action: a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

373

25.    On her Twenty-Fifth Cause of Action: a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

26.    On her Twenty-Sixth Cause of Action: a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

374

27.    On her Twenty-Seventh Cause of Action: a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

28.    On her Twenty-Eighth Cause of Action: a judgment against Cindy Nygaard as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

375

29.    On her Twenty-Ninth Cause of Action: a judgment against Veronica Law as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

30.    On her Thirtieth Cause of Action, (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 900 million dollars; (e) ordering Schoeman to immediately reinstatement plaintiff as an attorney at Schoeman; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost

376

past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be

377

determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

31.     On her Thirty-First Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not

378

less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 900 million dollars; (e) ordering Schoeman to immediately reinstatement plaintiff as an attorney at Schoeman; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be

379

determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

32.    On her Thirty-Second Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but

380

believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 900 million dollars; (e) ordering Schoeman to immediately reinstatement plaintiff as an attorney at Schoeman; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress:

381

an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and

382

disbursements of this action, and for such other and further relief as this Court deems just and proper.

33.    On her Thirty-Third Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 900 million dollars; (e) ordering Schoeman to immediately reinstate plaintiff as an attorney at Schoeman; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to,

lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress:

384

an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

34.    On her Thirty-Fourth Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 900 million dollars; (e) ordering Schoeman to immediately reinstate plaintiff as an attorney at Schoeman; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300

385

million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past,

386

present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

35.    On her Thirty-Fifth Cause of Action: a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (e) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

387

36.     On her Thirty-Sixth Cause of Action: a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (e) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

37.     On her Thirty-Seventh Cause of Action: a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (e) for plaintiff's attorneys' fees, the

388

costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

38.   On her Thirty-Eighth Cause of Action: a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (e) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

39.   On her Thirty-Ninth Cause of Action: a judgment against Cindy Nygaard as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined

389

at trial but not less than 500 million dollars; (e) for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

40. On her Fortieth Cause of Action: (i) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (ii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Charles B. Updike as follows: (a) for compensatory damages,

390

including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; and (v) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

41.    On her Forty-First Cause of Action: (i) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost

past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (ii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be

392

determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (v) a judgment against Cindy Nygaard as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (vi) a judgment against Veronica Law as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than

393

300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; and (vii) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

42.    On her Forty-Second Cause of Action: (i) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (ii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as

permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iii) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less than 500 million dollars; (iv) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (d) for punitive damages: an amount to be determined at trial but not less

395

than 500 million dollars; and (v) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

43. On her Forty-Third Cause of Action: (i) a judgment against Schoeman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (ii) a judgment against Mindy H. Stern as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iii) a judgment against Beth L. Kaufman as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300

396

million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (iv) a judgment against Charles B. Updike as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; (v) a judgment against Andrea D. Ascher as follows: (a) for compensatory damages, including, but not limited to, lost past, present and future wages: an amount to be determined at trial but believed to be not less than 300 million dollars, plus 9% statutory interest as permitted by law; (b) for past, present, and future injury to reputation: an amount to be determined at trial but believed to be not less than 300 million dollars; (c) for past, present, and future emotional distress: an amount to be determined at trial but believed to be not less than 100 million dollars; and (vi) a judgment against each of the defendants mentioned in this paragraph for plaintiff's attorneys' fees, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

397