PROSKAUER ROSE LLP
Bettina B. Plevan
Gregory J. Couillou
Eleven Times Square
New York, NY 10036-8299
(212) 969-3065
*bplevan@proskauer.com*
*gcouillou@proskauer.com*
*Attorney for Defendants*
*Schoeman Updike Kaufman Stern & Ascher LLP,*
*Mindy H. Stern, Beth L. Kaufman, Charles B.*
*Updike, Andrea D. Ascher, Susan S. Casero,*
*Cindy Nygaard, and Veronica Law*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

RONIT D. APPEL,

                          Plaintiff,

          -against-

SCHOEMAN UPDIKE KAUFMAN STERN &
ASCHER LLP, MINDY H. STERN, BETH L.
KAUFMAN, CHARLES B. UPDIKE, ANDREA D.
ASCHER, SUSAN S. CASERO, CINDY NYGAARD,
VERONICA LAW, LAURIE ZELIGSON,
THE ZELIGSON FIRM, PAUL E. BREENE,
REED SMITH LLP, MADISON 96 ASSOCIATES, LLC.,
STUART J. BOESKY, JAMISON WEINER,
FRENCH PARTNERS, LLC, THE FEIL
ORGANIZATION, INC., JEFFREY MANAGEMENT
CORP., JEFFREY FEIL, JOHN
FRANCIS BORRELLI ARCHITECT, P.C., JOHN
FRANCIS BORRELLI, INTERIOR CONSTRUCTION
CORP., JOSEPH BRUZZESE,
CREATIVE ENVIRONMENT SOLUTIONS CORP.,
H & B CONSTRUCTION SERVICES, INC., M & B
CONSTRUCTION, and M & B CONSTRUCTION
SERVICES,

                          Defendants.

-----------------------------------------------------------------------X

Civil Case No. 14 CV 2065 (AJN)

ECF Case

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
DISMISS OF DEFENDANTS
SCHOEMAN UPDIKE
KAUFMAN STERN & ASCHER
LLP, MINDY H. STERN, BETH
L. KAUFMAN, CHARLES B.
UPDIKE, ANDREA D. ASCHER,
SUSAN S. CASERO, CINDY
NYGAARD AND VERONICA
LAW**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

SUMMARY OF FACTS ........................................................................... 1

ARGUMENT ............................................................................................ 5

I.  THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION, LIBEL OR SLANDER ............................................................................ 5

    A.  Statements Made In The Termination Letter. ..................................... 6

        1.  The Statements Made In The Termination Letter Constitute Non-Actionable Opinion. ................................................................ 6

        2.  There Was No Publication Of The Alleged Defamatory Statements. .............................................................................. 10

        3.  Statements In The Termination Letter Are Protected By The "Common Interest" Privilege. ................................................ 12

    B.  Any Defamation Claims Based On Statements In The Zeligson Report Are Time-Barred and Otherwise Fail As A Matter Of Law. ..................................... 13

    C.  The Complaint Fails To State A Claim For Slander. ........................... 17

II.  THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS OR WITH PROSPECTIVE BUSINESS RELATIONS ........................................................................ 18

    A.  The Complaint Fails To State A Claim For Tortious Interference With Business Relations. ........................................................................ 18

        1.  There Is No Allegation Of Interference With Business Relations With A Third Party. ............................................... 18

        2.  There Is Not A Sufficient Allegation That Defendants Acted With The Sole Purpose Of Harming The Plaintiff Or Used Wrongful Means. ......................................................................... 20

    B.  Plaintiff's Purported Claim For Tortious Interference Based On Alleged Interference With Prospective Employers Fails As A Matter Of Law. ............... 22

i

C.      The Tortious Interference Claims Against Ms. Casero Are Time-Barred
        And Fail To State A Plausible Claim.................................................. 23

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR INTENTIONAL
        INFLICTION OF EMOTIONAL DISTRESS................................................. 25

        A.      Schoeman, The Schoeman Partners, And Ms. Casero's Conduct Was Not
                Extreme or Outrageous. ........................................................... 25

        B.      The Intentional Infliction Of Emotional Distress Claim Against Susan
                Casero Is Also Time-Barred. ..................................................... 28

        C.      The Intentional Infliction of Emotional Distress Claim Should Be
                Dismissed as Duplicative of the Claims for Defamation, Tortious
                Interference and Discrimination. ............................................. 28

IV.     THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIGIOUS
        DISCRIMINATION ................................................................................. 29

        A.      The Complaint Fails To State A Failure To Accommodate Claim. .............. 30

        B.      The Complaint Fails To State A Discriminatory Termination Claim.............. 33

        C.      The Complaint Fails To State A Claim for Aiding And Abetting Religious
                Discrimination Under The NYSHRL And NYCHRL. ............................ 35

V.      THE COMPLAINT FAILS TO STATE A CLAIM FOR RETALIATION FOR
        COMPLAINTS ABOUT RELIGIOUS DISCRIMIMINATION .................................. 38

VI.     THE COMPLAINT FAILS TO STATE A CLAIM FOR REVERSE AGE
        DISCRIMINATION ................................................................................. 40

        A.      The Complaint Fails To State A Claim For Reverse Age Discrimination
                Under The NYSHRL And NYCHRL. .................................................. 41

        B.      The Complaint Fails To State A Claim For Aiding And Abetting Reverse
                Age Discrimination Under The NYSHRL And NYCHRL. ....................... 43

VII.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RETALIATION
        BASED ON ALLEGED COMPLAINTS OF AGE DISCRIMINATION ...................... 45

VIII.   THE COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF
        NEW YORK LABOR LAWS SECTIONS 200, 241 OR 740.......................... 46

        A.      The Complaint Fails to State a Claim for Violations of Sections 200 and
                241 of the New York Labor Laws. .................................................. 46

1.      Schoeman is Not an Owner or Contractor of the Office Space Where the Construction Work Was Performed, and Therefore Cannot be Held Liable under New York Labor Law §200 or 241 Claim............................................................................. 47

2.      Plaintiff Does Not Have Standing To Bring A New York Labor Law §241 Claim................................................................................. 49

B.      The Complaint Fails To Set Forth A Claim For Retaliation Under Section 740 Of The New York Labor Laws. ....................................... 49

1.      The Complaint Fails To Allege An Activity, Policy Or Practice By Schoeman That Constitutes An Actual Violation Of Law, Rule Or Regulation. .............................................................................. 51

2.      The Complaint Fails To Allege An Activity, Policy Or Practice By Schoeman That Presented A Substantial And Specific Danger To Public Health Or Safety. ........................................................... 52

IX.     THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENCE..................... 53

A.      Plaintiff Does not Allege that Defendants Owed Her Nor Has She Plausibly Alleged a Breach of any Duty............................................. 54

B.      Plaintiff Cannot Establish a Casual Link Between Schoeman's Alleged Negligent Acts and Any Damages. ......................................... 54

C.      Air Quality Tests Submitted to OSHA Were Not the Proximate Cause of Plaintiff's Termination.......................................................... 55

CONCLUSION.............................................................................. 56

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abrams v. Bloomberg,*
  2012 U.S. Dist. LEXIS 89564 (S.D.N.Y. Mar. 27, 2012) ................................................40, 41

*Akpinar v. Moran,*
  83 A.D.3d 458 (1st Dep't 2011) ...................................................................................................29

*Albert v. Loksen,*
  239 F.3d 256 (2d Cir. 2001).........................................................................................................5

*Amato v. New York City Dep't of Parks & Recreation,*
  110 A.D.3d 439 (1st Dep't 2013) ...............................................................................................13

*Anand v. New York State Div. of Hous. & Cmty. Ren.,*
  2013 U.S. Dist. LEXIS 126925 (S.D.N.Y. Aug. 29, 2013).........................................................46

*Baker v. Guardian Life Ins. Co.,*
  12 A.D.3d 285 (1st Dep't 2004) ..................................................................................................22

*Baker v. The Home Depot,*
  445 F.3d 541 (2d Cir. 2006).........................................................................................................30

*Barbato v Bowden,*
  63 A.D.3d 1580, 880 N.Y.S.2d 817 (4th Dep't 2009)..................................................................35

*Barroso v. Office of General Counsel,*
  2013 U.S. Dist. LEXIS 112701 (E.D.N.Y. Aug. 9, 2013)...........................................................46

*Bennett v. Health Mgmt. Sys., Inc.,*
  92 A.D.3d 29, 936 N.Y.S.2d 112 (1st Dep't 2011) ...............................................................30, 40

*Bordell v. General Electric Co.,*
  88 N.Y.2d 869, 644 N.Y.S.2d 912 (1996) ...................................................................................51

*Boule v. Hutton,*
  138 F. Supp. 2d 491 (S.D.N.Y. 2001), *vacated in part on other grounds* ...............................6

*Bowles v. New York Transit Auth.,*
  285 F. App'x 812 (2d Cir. 2008) .................................................................................................29

*Boyar v. City of New York,*
  2010 U.S. Dist. LEXIS 115289 (S.D.N.Y. Oct. 28, 2010) ........................................................34

*Brancaleone v. Mesagna*,
    290 A.D.2d 467 (2d Dep't 2002) .......................................................................29

*Brattis v. Rainbow Adver. Holdings, L.L.C.*,
    2000 U.S. Dist. LEXIS 7345 (S.D.N.Y. May 31, 2000) .......................................9

*Brian v. Richardson*,
    87 N.Y.2d 46, 637 N.Y.S.2d 347 (1995) .............................................................8

*Burkybile v. Bd. of Educ. of Hastings-on-Hudson*,
    411 F.3d 306 (2d Cir. 2005) ..............................................................................39

*Byrnie v. Town of Cromwell Bd. of Educ.*,
    243 F.3d 93 (2d Cir. 2001) ................................................................................41

*Capobianco v. American Stock Exchange*,
    233 A.D.2d 189, 649 N.Y.S.2d 688 (1st Dep't 1996); ........................................51

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (2004) ...................................................................................20, 21

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
    547 F.3d 115 (2d Cir. 2008) ..............................................................................18

*Celle v. Filipino Reporter Enters., Inc.*,
    209 F.3d 163 (2d Cir. 2000) ................................................................................6

*Chao v. Mount Sinai Hosp.*,
    10 CV 2869 (HB), 2010 WL 5222118 (S.D.N.Y. Dec. 17, 2010) ..................13, 21

*Chao v. Mount Sinai Hosp.*,
    476 F. App'x 892 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 547 (U.S. 2012) ............13

*Chukwueze v. NYCERS*,
    891 F. Supp. 2d 443 (S.D.N.Y. 2012) ..............................................30, 31, 33, 40

*Clemons v. WellPoint Companies*,
    2013 U.S. Dist. LEXIS 35899 (N.D.N.Y. Mar. 15, 2013) ...............................10, 11

*Colantonio v. Mercy Medical Center*,
    73 A.D.3d 966, 901 N.Y.S.2d 370 (2d Dep't 2010) .............................................7

*Connolly v. Harry Macklowe Real Estate Co.*,
    161 A.D.2d 520 (1st Dep't 1990) ..................................................................50, 51

*Cosme v. Henderson*,
    287 F.3d 152 (2d Cir. 2002) ..............................................................................31

*Cotrone v. Consol. Edison Co.*,
    50 A.D.3d 354, 856 N.Y.S.3d 48 (1st Dep't 2008) ................................................53

*Cruz v. Marchetto*,
    2012 U.S. Dist. LEXIS 142662 (S.D.N.Y. Sept. 28, 2012)....................................29

*Daniels v. Alvarado*,
    2004 U.S. Dist. LEXIS 3893 (E.D.N.Y. Mar. 12, 2004).....................................18, 19, 20, 27

*D'Cunha v. New York Hosp. Med. Ctr. of Queens*,
    2006 U.S. Dist. LEXIS 11929 (E.D.N.Y. Mar. 3, 2006) .......................................42

*Delgado v. Triborough Bridge & Tunnel Auth.*,
    485 F. Supp. 2d 453 (S.D.N.Y. 2007).....................................................................46

*DiFolco v. MSNBC Cable*,
    622 F.3d 104 (2d Cir. 2010)....................................................................................24

*Dilacio v. N.Y. City Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*,
    593 F. Supp. 2d 571 (S.D.N.Y. 2008) .....................................................................10

*Dillon v. City of New York*,
    261 A.D.2d 34 (1st Dep't 1999) ...............................................................................6

*Doe v. White Plains Hosp.*,
    2011 U.S. Dist. LEXIS 76076 (S.D.N.Y. July 8, 2011) ................................. passim

*Dougherty v. Mem'l Sloan-Kettering Cancer Ctr.*,
    2002 U.S. Dist. LEXIS 13216 (S.D.N.Y. Jul. 22, 2002) ........................................52

*Farzan v. Wells Fargo Bank, N.A.*,
    2013 U.S. Dist. LEXIS 169743 (S.D.N.Y. Dec. 2, 2013) .................................11, 15

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006)......................................................................................2

*Febesh v. Elcejay Inn Corp.*,
    157 A.D.2d 102 (1st Dep't 1990) ............................................................................53

*Ferluckaj v. Goldman Sachs & Co.*,
    12 N.Y.3d 316 (2009) ..............................................................................................47

*Fincher v. Depository Trust and Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010)...............................................................................39, 45

*Foster v. Churchill*,
    87 N.Y.2d 744 (1996) ..............................................................................................12

*Frank v. Walgreens Col,*
    2011 U.S. Dist. LEXIS 109003 (E.D.N.Y. Sept. 26, 2011)................................................50, 52

*Frechtman v. Gutterman,*
    979 N.Y.S.2d 58, 2014 N.Y. App. Div. LEXIS 429 (1st Dep't Jan. 23, 2014)....................6, 9

*Frierson v Concourse Plaza Assocs.,*
    189 A.D.2d 609, 592 N.Y.S.2d 309 (1st Dep't 1993) .............................................................48

*Goldin v. Eng'rs Country Club,*
    54 A.D.3d 658 (2d Dep't 2008).............................................................................................37

*Gross v. New York Times Co.,*
    82 N.Y.2d 146, 603 N.Y.S.2d 813 (Ct. App. 1993) .............................................................7, 8

*Guelen v. Distinctive Pers., Inc.,*
    2011 U.S. Dist. LEXIS 86064 (E.D.N.Y. Aug. 4, 2011)....................................................23, 24

*Guzman v. L.M.P. Realty Corp.,*
    262 A.D.2d 99 (1st Dep't 1999) ...........................................................................................49

*Hazen Paper Co. v. Biggins,*
    507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993).......................................................43

*Henny v. New York State,*
    842 F. Supp. 2d 530 (S.D.N.Y. 2012)..................................................................................38

*Herlihy v. Metropolitan Museum of Art,*
    160 Misc.2d 279, 608 N.Y.S.2d 770 (Sup. Ct. N.Y. County 1994) .......................................16

*Herling v. New York City Dep't of Educ.,*
    2014 U.S. Dist. LEXIS 56442 (E.D.N.Y. Apr. 23, 2014) ....................................................46

*Hollander v. American Cyanamid Co.,*
    895 F.2d 80 (2d Cir. 1990)...................................................................................................40

*Hunt v. Klein,*
    2011 U.S. Dist. LEXIS 14918 (S.D.N.Y. Feb. 10, 2011).....................................................40

*Hussey v. New York State Dep't of Law/Office of Atty. Gen.,*
    933 F. Supp. 2d 399 (E.D.N.Y.2013) ..................................................................................12

*In Touch Concepts, Inc. v. Cellco P'ship,*
    949 F. Supp. 2d 447 (S.D.N.Y. 2013)..................................................................................21

*Jones v. Commerce Bank, N.A.,*
    2006 U.S. Dist. LEXIS 65630 (S.D.N.Y. 2006)...................................................................11

*Kalsi v. N.Y.C. Transit Auth.*,
 62 F. Supp. 2d 745 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999).............................41

*Kaupp v. Church*,
 2011 U.S. Dist. LEXIS 105794 (S.D.N.Y. 2011)...................................................................40

*Kelly G v. Board of Educ. of City of Yonkers*,
 99 A.D.3d 756 (2d Dep't 2012)..............................................................................................35

*Kessler v. Westchester Cnty. Dep't of Soc. Servs.*,
 461 F.3d 199 (2d Cir. 2006)....................................................................................................38

*Kiblitsky v. Lutheran Medical Center*,
 32 Misc. 3d 575, 922 N.Y.S.2d 769 (N.Y. Sup. 2011).........................................................11

*Kim v. Herbert Construction Co., Inc.*,
 275 A.D.2d 709 (2d Dep't 2000).............................................................................................47

*Kimmerle v. New York Evening Journal*,
 262 N.Y. 99, 186 N.E. 217 (1933)............................................................................................7

*Knight-McConnell v. Cummins*,
 2004 U.S. Dist. LEXIS 14746 (S.D.N.Y. July 29, 2004)......................................................23

*Kosson v. "Algaze"*,
 203 A.D.2d 112, 610 N.Y.S.2d 227 (N.Y. App. Div. 1994)..................................................19

*Krepps v. Reiner*,
 588 F. Supp. 2d 471 (S.D.N.Y. 2008).....................................................................................21

*Kwarren v. American Airlines*,
 303 A.D.2d 722, 757 N.Y.S.2d 105 (2d Dep't 2003).............................................................28

*Lau v. S&M Enters.*,
 72 A.D.3d 497 (1st Dep't 2010) .............................................................................................25

*Leifer v. New York State Div. of Parole*,
 391 F. App's 32 (2d Cir. 2010)................................................................................................33

*Lindner v. IBM*,
 2010 U.S. Dist. LEXIS 6499 (S.D.N.Y. Jan 21, 2010)..........................................................23

*Long v. Marubeni Am. Corp.*,
 406 F. Supp. 2d 285 (S.D.N.Y. 2005).................................................................................11, 15

*Lydgatte v. Bronx Overall Economic Dev.*,
 2001 U.S. Dist. LEXIS 1670 (S.D.N.Y. Feb. 22, 2001)........................................................26

*Malec v. Metro Life Insur. Co.*,
   2007 WL 969086, at *25 (W.D.N.Y. 2007) ...........................................................19

*Mangiameli v Galante*,
   171 App. Div. 2d 162, 574 N.Y.S.2d 842 (3d Dep't 1991)......................................49

*Marmulszteyn v. Napolitano*,
   2012 U.S. Dist. LEXIS 119047 (E.D.N.Y. Aug. 12, 2012), *aff'd by* 2013 U.S. App.
   LEXIS 12439 (2d Cir. N.Y., June 19, 2013) ...........................................32, 33, 34

*Mascola v. City Univ. of NY*,
   14 A.D.3d 409, 787 N.Y.S.2d 655 (1st Dep't 2005) ...............................................35

*Maumud v. Kaufman*,
   607 F.Supp.2d 541 (S.D.N.Y. 2009)........................................................................19

*McCarthy v. Dun and Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007).......................................................................................2

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)...............................30, 34, 41

*McNaughton v. City of New York*,
   234 A.D.2d 83 (1st Dep't 1996) ...............................................................................12

*McQuillan v. Kenyon & Kenyon*,
   271 A.D.2d 511, 705 N.Y.S.2d 671 (2d Dep't 2000) ...............................................16

*Med. Express Ambulance Corp., v. Kirkland*,
   79 A.D.3d 886 (2d Dep't 2010)................................................................................37

*Medcalf v. Walsh*,
   938 F. Supp. 2d 478 (S.D.N.Y. 2013).......................................................................20

*Melman v. Montefiore Med. Ctr.*,
   98 A.D.3d 107, 946 N.Y.S.2d 27 (1st Dep't 2012) ..................................................30

*Memnon v. Clifford Chance US, LLP*,
   667 F. Supp. 2d 334 (S.D.N.Y. 2009)..................................................................18, 23

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
   715 F.3d 102 (2d Cir. 2013)......................................................................................30

*Miloscia v. B.R. Guest Holdings LLC*,
   33 Misc. 3d 466, 928 N.Y.S.2d 905 (Sup Ct, NY County 2011]), *mod. on other
   grounds* 94 A.D.3d 563, 942 N.Y.S.2d 484 (1st Dep't 2012) ................................37

ix

*Mordkofsky v. V.C.V. Development Corp.*,
    563 N.E.2d 263 (1990)................................................................................49

*Morgan v. NYS AG office*,
    2013 U.S. Dist. LEXIS 17458 (S.D.N.Y. Feb. 8, 2013)....................................39

*Munoz-Nagel v. Guess, Inc.*,
    2013 WL 1809772 (S.D.N.Y. April 30, 2013) ...............................................48

*Murray v. Visiting Nurses Servs. Of N.Y.*,
    528 F. Supp. 2d 257 (S.D.N.Y. 2007).............................................................40

*Nadkarni v. N. Shore-Long Island Jewish Health Sys.*,
    21 A.D.3d 354 (2d Dep't 2005).....................................................................51

*Naughright v. Weiss*,
    826 F. Supp. 2d 676 (S.D.N.Y. 2011)............................................................26

*Olorode v. Streamingedge, Inc.*,
    11 Civ. 6934 (GBD) (AJP), 2014 U.S. Dist. LEXIS 59421 (S.D.N.Y. Apr. 29, 2014) .........45

*Orenstein v. Figel*,
    677 F. Supp. 2d 706 (S.D.N.Y. 2009)............................................................13

*Ott v. Automatic Connector, Inc.*,
    193 A.D.2d 657, 598 N.Y.S.2d 10 (2d Dep't 1993) ..........................................9

*Parks v. Steinbrenner*,
    131 A.D.2d 60 (1st Dep't 1987) ..............................................................6, 7

*Peace v. KRNH, Inc.*,
    12 A.D.3d 914, 785 N.Y.S.2d 547 (3d Dep't 2004).........................................52

*Perez v. Consol. Edison Corp. of NY*,
    2006 U.S. Dist. LEXIS 67459 (S.D.N.Y. Sept. 20, 2006)....................................50

*Peterec-Tolino v. Commerical Elec. Contractors*, Inc.,
    2009 U.S. Dist. LEXIS 76952 (S.D.N.Y. Aug. 19, 2009)....................................29

*Phillip v. Sterling Home Care, Inc.*,
    959 N.Y.S.2d 546, 103 A.D.3d 786 (2d Dep't Feb. 20, 2013)...............................11

*Pitcock v. Kasowitz*,
    910 N.Y.S.2d 765 (Sup. Ct. 2010)................................................................24

*Poplar v. Bourjois, Inc.*,
    80 N.E.2d 334 (1948), *overruled on other grounds* ........................................55

*Potash v. Fla. Union Free Sch. Dist.*,
  2013 U.S. Dist. LEXIS 133512 (S.D.N.Y. Sept. 18, 2013)................................42

*Quinn v. Green Tree Credit Corp.*,
  159 F.3d 759 (2d Cir. 1998), *abrogated on other grounds* ....................................39

*Ramsay v. Mary Imogene Bassett Hospital*,
  113 A.D.2d 149, 495 N.Y.S.2d 282 (3d Dep't 1985)..............................................24

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997)......................................................................................30

*Reilly v. Natwest Mrkts. Grp. Inc.*,
  181 F. 3d 253 (2d Cir. 1999)......................................................................................9

*Reynolds v. Barrett*,
  685 F.3d 193 (2d Cir. 2012)....................................................................................34

*Rodriguez v. American Friends of the Hebrew Univ.*,
  1998 U.S. Dist. LEXIS 3701 (S.D.N.Y. Mar. 23, 1998) .......................................27

*Rosenberg v. MetLife, Inc.*,
  8 N.Y.3d 359 (2007) ...............................................................................................13

*Ruiz v. Cnty. Of Rockland*,
  609 F.3d 486 (2d Cir. 2010).....................................................................................33

*Sank v. City Univ. of New York*,
  2011 U.S. Dist. LEXIS 125016 (S.D.N.Y. Oct. 28, 2011) .....................................40

*Schoettle v. Taylor*,
  282 A.D.2d 411 (1st Dep't 2001) ............................................................................22

*Sharabura v. Taylor*,
  2003 U.S. Dist. LEXIS 16515 (E.D.N.Y. Sept. 16, 2003).................................26, 28

*Sicular v. N.Y.C. Dep't of Homeless Servs.*,
  2010 U.S. Dist. LEXIS 10089 (S.D.N.Y. Feb. 4, 2010), *aff'd*, 455 Fed. App'x 129 (2d
  Cir. 2012) .................................................................................................................34

*Silver v. Mohasco Corp.*,
  62 N.Y.2d 741, 465 N.E.2d 361, 476 N.Y.S.2d 822 (1984)................................11, 15

*Simon v. 160 W. End Ave.*,
  7 A.D.3d 318, 775 N.Y.S.2d 851 (1st Dep't 2004) ................................................10

*Sista v. CDC Ixis N. Am., Inc.*,
  445 F.3d 161 (2d Cir. 2006)....................................................................................30

*Spence v. Md. Cas. Co.*,
   995 F.2d 1147 (2d Cir. 1993)...............................................................................26

*Steinhilber v. Alphonse*,
   68 N.Y.2d 283, 508 N.Y.S.2d 901 (1986) ................................................... passim

*Strauss v New York State Dept. of Educ.*,
   26 A.D.3d 67 (3d Dep't 2005).......................................................................35, 37

*Thai v. Cayre Grp., Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010).................................................................10

*Thompson v. Kaufman Bakery, Inc.*,
   2005 U.S. Dist. LEXIS 22431, 2005 WL 643433 (W.D.N.Y. Mar. 16, 2005) ......................32

*Tongring v. Bronx Cmty. Coll. Of City Univ. of New York Sys.*,
   2014 U.S. Dist. LEXIS 14099 (S.D.N.Y. Feb. 4, 2014)........................................12

*Treppel v. Biovail Corp.*,
   233 F.R.D. 363 (S.D.N.Y. 2006))..........................................................................6

*Tucker v. New York City*,
   2007 U.S. Dist. LEXIS 77879 (S.D.N.Y. Oct. 17, 2007) .......................................52

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
   455 F. App'x 102 (2d Cir. 2012) .........................................................................20

*Van Buskirk v. New York Times Co.*,
   325 F.3d 87 (2d. Cir. 2003)................................................................................24

*Vardi v Mutual Life Ins. Co. of N.Y.*,
   136 A.D.2d 453, 523 N.Y.S.2d 95 (1988) ...........................................................10

*Vaughn v. Am. Multi Cinema, Inc.*,
   2010 WL 3835191 (S.D.N.Y. Sept. 13, 2010).....................................................12

*Viehdeffer v. Tryon*,
   2012 U.S. Dist. LEXIS 122926 (W.D.N.Y. Aug. 28, 2012) ..................................29

*Vinokur v. Sovereign Bank*,
   701 F. Supp. 2d 276 (E.D.N.Y. 2010) ...........................................................34, 41

*Washington v. Garage Mgmt. Corp.*,
   2012 U.S. Dist. LEXIS 136439 (S.D.N.Y. Sept. 20, 2012)...............................12, 13

*Weber v. City of New York*,
   2013 U.S. Dist. LEXIS 140187 (E.D.N.Y. Sept. 29, 2013)........................30, 32, 33

*Weiss v. Dep't of Educ. Of City of N.Y.*,
    2012 U.S. Dist. LEXIS 44273 (S.D.N.Y. Mar. 29, 2012) ...................................................29

*Weldy v. Piedmont Airlines, Inc.*,
    985 F.2d 57 (2d Cir. 1993).....................................................................................6, 17

*WFB Telecommunications, Inc. v. NYNEX Corp.*,
    188 A.D.2d 257 (1st Dep't  1992) ........................................................................18

*Whelen v. Warwick Valley Civic and Social Club*,
    393 N.E.2d 1032 (1979)........................................................................................49

*Whethers v. Nassau Health Care Corp.*,
    2013 U.S. Dist. LEXIS 94828 (E.D.N.Y. July 8, 2013) .......................................42

*Wieder v. Chem. Bank*,
    202 A.D.2d 168, 608 N.Y.S.2d 195 (1st Dep't 1994) .........................................11

*Williams v. Calderoni*,
    2012 WL 691832 (S.D.N.Y. Mar. 1, 2012) ........................................................48

*Williams v. New York City Housing Authority*,
    61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2011) ...............................................45

*Williams v. Varig Brazilian Airlines*,
    169 A.D.2d 434, 564 N.Y.S.2d 328 (1st Dep't 1991) ...........................................9

*Youmans v. Smith*,
    153 N.Y. 214, 47 N.E. 265 (1897).......................................................................15

*Yoselovsky v. Associate Press*,
    917 F. Supp. 2d 262 (S.D.N.Y. 2013)............................................................29, 34

*Zacharowicz v. Nassau Health Care Corp.*,
    2005 U.S. Dist. LEXIS 21052 (E.D.N.Y. Jun. 29, 2005), *aff'd* 2006 U.S. App. LEXIS
    10378 (2d Cir. N.Y., Apr. 21, 2006)....................................................................32

*Zhengfang Liang v. Café Spice SB, Inc.*,
    911 F. Supp. 2d 184 (E.D.N.Y. Nov. 29, 2012) .................................................26

## STATUTES

29 U.S.C. § 631(a) ..................................................................................................40

C.P.L.R. § 215(3) ..........................................................................................13, 24, 28

N.Y.C. Admin Code § 8-107 ...........................................................30, 35, 39, 40

N.Y. Exec. Law § 296.............................................30, 35, 36, 37, 38, 40, 44

N.Y. Labor Law § 200 ......................................................................................46, 47

N.Y. Labor Law § 240 .............................................................................................49

N.Y. Labor Law § 241 .........................................................................46, 47, 48, 49

N.Y. Labor Law § 740 .........................................................46, 49, 50, 51, 52, 53

## PRELIMINARY STATEMENT

In a complaint that runs to almost 500 pages (not including exhibits), and purports to plead 102 claims against 27 defendants, plaintiff alleges an assortment of federal and state law claims in 67 causes of action, against her former employer, Schoeman Updike Kaufman Stern & Ascher LLP ("Schoeman"), partners of the Schoeman Firm, Mindy H. Stern, Beth L. Kaufman, Charles B. Updike and Andrea D. Ascher (collectively the "Schoeman Partners"), and employees of Schoeman, Susan S. Casero (counsel), Cindy Nygaard (office manager), and Veronica Law (a secretary). One or more of the Schoeman defendants is named in 67 claims, none of which states a claim upon which relief may be granted.

Every purported claim is devoid of substantive plausible allegations, and/or is fatally flawed as a matter of law. Accordingly, the Schoeman defendants' motion should be granted and the Complaint as to the Schoeman defendants should be dismissed, with prejudice, in its entirety.

## SUMMARY OF FACTS

Plaintiff was hired as a litigation associate by Schoeman and began her employment on or about September 8, 2009. (Compl. ¶1.)[1] Plaintiff's "at-will" employment was terminated on April 24, 2013. (Compl. ¶¶1, 96.)

The Termination Letter from Schoeman to plaintiff, attached to the Complaint as Exhibit D, stated, in part:

> We have been considering whether to continue your employment
> with us for some time and have concluded that we should

---

[1] A copy of the Complaint filed on February 20, 2014 in the Supreme Court of the State of New York, New York County, Index No. 151541/2014, is annexed to the accompanying Declaration of Bettina B. Plevan ("Plevan Decl.") as Exhibit 1 and shall be referenced herein as "(Compl. ¶__)" or "(Compl. Ex. __)."

1

> terminate it. We planned to advise you of that decision at the meeting we asked you to attend this afternoon. In light of your most recent email, however, we are communicating our decision in writing. Accordingly, we hereby advise you that we are terminating your employment with us effective at the close of business today.
>
> Although you are an employee at will under New York law, and may therefore be terminated at any time for any reason or no reason, we believe it is both fair to you and otherwise useful to spell out the considerations that led to our decision and have done so below.
>
> After consideration over a period of time, we have come to the conclusion that we do not have confidence in your judgment or your ability to work effectively with your colleagues.

The Termination Letter goes on to cite to a number of incidents that led Schoeman to its determination that it no longer had "confidence in [plaintiff's] judgment or ability to work effectively with [her] colleagues." (*See* Compl. Ex. D.)  Although the Termination Letter was sent to no one other than plaintiff, it is at the heart of her claims for defamation.

The Complaint alleges that approximately one year prior to the termination of plaintiff's employment with Schoeman, on or about April 19, 2012, defendant Susan Casero asked plaintiff whether plaintiff would be available to work on a Saturday.  (*See* Compl. ¶131 and emails dated April 20, 2012, attached as Exhibit 2 to the Declaration of Charles B. Updike, dated May 9, 2014, and hereafter referred to as "(Updike Decl. Ex. __)".)[2]  On April 20, 2012, in an email sent by plaintiff to Ms. Casero, with copies to Ms.

---

[2] Plaintiff references and quotes from the emails exchanged between plaintiff and Ms. Casero on or about April 20, 2012, in her Complaint.  Therefore, the documents may properly be considered on a motion to dismiss.  *See McCarthy v. Dun and Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (when deciding a motion to dismiss, the court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference); *accord Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  Documents that are integral to the complaint, are partially quoted in the complaint, or were relied upon by plaintiff in drafting the complaint may be properly considered on a motion to dismiss.  *See Faulkner*, 463 F.3d at 134.

Kaufman, Ms. Stern and Ms. Nygaard, plaintiff stated that in her opinion Ms. Casero's "asking [plaintiff] yesterday if [plaintiff] can come in and work on Saturday was particularly inappropriate."  Ms. Casero replied to plaintiff's email stating that "[a]sking whether Ronit has availability to work on this case on the weekend, which I have asked of everybody involved in this case, is not inappropriate and has nothing to do with religion.  I did not know that she did not work on Saturdays and when she told me, I assured her that was not a problem, I was just assessing work flow."  (*See* Updike Decl. Ex. 2.)  The emails exchanged between plaintiff and Ms. Casero on April 20, 2012 indicate that, following Ms. Casero's inquiry, no further discussion regarding whether plaintiff was available to work over the weekend took place.  (*Id*.)  Notably, plaintiff does not allege, because she cannot, that she was ever required to work on a Saturday.

Because the allegation of religious discrimination was contained in a writing on which the partner in charge of the case, the Office Manager and the Firm's Managing Partner were copied, in May 2012, Schoeman retained defendant Laurie Zeligson, an attorney, to conduct an internal investigation of plaintiff's complaint regarding the alleged religious discrimination by Ms. Casero.  (Compl. Ex. E.)  Ms. Zeligson met with Ms. Kaufman and Mr. Updike regarding the investigation on May 18, 2012.  (*Id*. at p. 6.)  Ms. Zeligson also interviewed Ms. Casero and Ms. Nygaard, as part of the investigation, on June 18, 2012.  (*Id.*, p. 1.)  Plaintiff refused to be interviewed by Ms. Zeligson.  (*Id.*)  In conjunction with Ms. Zeligson's investigation of plaintiff's religious discrimination complaints, Ms. Zeligson prepared a written report (the "Zeligson Report"), dated June 26, 2012, and concluded, pursuant to her investigation, that "[plaintiff's] allegations of inappropriate conduct by [Ms. Casero] on the basis of her religion has no merit."  (*Id*.)

In drawing her conclusions, Ms. Zeligson noted that "[plaintiff] does not allege that she was forced to work on Saturday by [Ms. Casero] . . . or that her refusal had any impact at all on her work on the case or her employment." (*See* Compl. Ex. E at pp. 6-7.) Rather, Ms. Zeligson concluded that "[plaintiff] made clear to [Ms. Casero] during their conversation that she was a Sabbath observer and could not work on Saturday, and [Ms. Casero] accepted that, effectively putting an end to the conversation." (*Id*. at p. 7.) Ms. Zeligson further concluded that there was "no evidence to support [the] claim" that "[Ms. Casero] should have known better than to even ask [if plaintiff could work on Saturday]." (*Id*.)

Plaintiff also alleges that she contacted the Occupational Safety and Health Administration ("OSHA") on or about Monday, April 15, 2013, and reported an alleged "unsafe work environment at Schoeman." (Compl. ¶59.) The workplace complaint to OSHA as received by Schoeman was anonymous. (Updike Decl. Ex. 3.) On April 19, 2013, Schoeman responded to the workplace complaint and included copies of air quality tests performed on behalf of the French Building in response to plaintiff's reported difficulties. (Compl. Ex. C.) The air samples were taken at Schoeman's new offices by defendant Creative Environment Solutions ("CES") on April 17, 2013, and the tests concluded that "[t]he laboratory analysis of the five air samples collected [in Schoeman office space] were below the regulatory limits as established by the USEPA, NYDOL and NYCDEP of 0.01 f/cc." (*See* Compl. Ex. B.) Moreover, on or about April 23, 2013, OSHA concluded, based on CES's findings regarding the office's air quality, that the investigation of plaintiff's OSHA workplace complaint should be closed. (*See* Compl. Ex. C.)

Plaintiff also alleges that on or about April 17, 2013, she filed a retaliation complaint with OSHA.  (Compl. ¶74.)  On or about April 24, 2014, OSHA advised the parties that it had concluded its investigation of plaintiff's retaliation complaint and found that there was "no reasonable cause to believe that Respondent [Schoeman] had violated the [Section 11(c)(1) of the Occupational Health and Safety] Act.  (*See* Updike Decl. Ex. 4.)

Finally, on or about October 2, 2013, plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging religious discrimination and retaliation.  (*See* Updike Decl. Ex. 5.)  The Notice of Right to Sue was issued to plaintiff on or about December 9, 2013.  (*See* Compl. ¶1035 and Ex. H.)

## ARGUMENT

## I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION, LIBEL OR SLANDER

Plaintiff's First through Sixth Causes of Action purport to bring claims for defamation, defamation *per se*, libel, libel *per se*, slander and slander *per se* (referred to collectively as "defamation claims") based entirely on the statements contained in the Letter of Termination, dated April 24, 2013.  Plaintiff's Seventh Cause of Action purports to bring a claim for defamation, defamation *per se*, slander, libel, and libel *per se* based on statements contained in the Zeligson Report, dated June 26, 2012, and the alleged republication of the Zeligson Report to OSHA as part of Schoeman's response to plaintiff's retaliation complaint in June, 2013.[3]

In order to state a claim for defamation[4] under New York law, plaintiff must allege a false statement, published without privilege or authorization to a third party, constituting fault as

---

[3] Plaintiff's claim as asserted in her First through Seventh causes of action will collectively be referred to as the "defamation claims."

[4] "Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (citation omitted).  "Generally, spoken defamatory

judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se. *Frechtman v. Gutterman*, 979 N.Y.S.2d 58, 2014 N.Y. App. Div. LEXIS 429 (1st Dep't Jan. 23, 2014) (quoting *Dillon v. City of New York*, 261 A.D.2d 34, 37-38 (1st Dep't 1999).  Plaintiff's defamation claims fail to state a claim upon which relief may be granted where, as here, (1) the purportedly defamatory statements are non-actionable opinion; (2) plaintiff fails to allege facts constituting publication of the alleged defamatory statements; and (3) the purportedly defamatory statements are protected by the "common interest" and/or judicial proceedings privileges.  Plaintiff's defamation claims based on statements contained in the Zeligson Report also are time barred by the one year statute of limitations.  For these reasons, the defamation claims should be dismissed.

### A.  Statements Made In The Termination Letter.

#### 1.  The Statements Made In The Termination Letter Constitute Non-Actionable Opinion.

In determining whether a statement can reasonably constitute defamation, the "threshold issue which must be determined as a matter of law is whether the complained of statements constitute fact or opinion."  *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290, 508 N.Y.S.2d 901 (1986) (the question of whether a statement constitutes fact or opinion is one of law for the court); *see also Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) (applying New York law); *Parks v. Steinbrenner*, 131 A.D.2d 60, 62 (1st Dep't 1987)[5].  The

---

words are slander; written defamatory words are libel."  *Id.* (citations omitted).  The elements of a defamation claim are the same regardless of whether the defamation is written or oral.  *Boule v. Hutton*, 138 F. Supp. 2d 491, 504 (S.D.N.Y. 2001), *vacated in part on other grounds* (citing *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61-62 (2d Cir. 1993)).

[5] For the purposes of determining whether a statement can be defamatory, there is no determinative difference between the various types of defamation alleged.  *See Doe v. White Plains Hosp.*, 2011 U.S. Dist. LEXIS 76076, at *6, fn. 1 (S.D.N.Y. July 8, 2011) (citing *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 375 (S.D.N.Y. 2006)).

New York Court of Appeals has defined defamation as a statement that threatens to expose an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[s] an evil opinion in the minds of right-thinking persons, and . . . deprives one of confidence and friendly intercourse in society." *Celle*, 209 F.3d at 176 (citing *Kimmerle v. New York Evening Journal*, 262 N.Y. 99, 186 N.E. 217, 219 (1933)).

The factors to be considered when determining whether a statement constitutes fact or opinion are: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false, and (3) whether either the full context of the communication in which the statement appears, or the broader social context and surrounding circumstances, are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact. *Doe*, 2011 U.S. Dist. LEXIS 76076, at *6 (citing *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153, 603 N.Y.S.2d 813 (Ct. App. 1993)); *see also Colantonio v. Mercy Medical Center,* 73 A.D.3d 966, 968, 901 N.Y.S.2d 370 (2d Dep't 2010).

If the statements are "pure opinion" then they are not defamatory as a matter of law, even if they are false and libelous. *Steinhilber*, 69 N.Y.2d at 289; *Parks v. Steinbrenner*, 131 A.D.2d 60, 62, 520 N.Y.S.2d 374, 375 (1st Dep't 1987).  "A 'pure opinion' is a statement of opinion which is accompanied by a recitation of the facts upon which it is based." *Steinhilber*, 68 N.Y.2d at 289; *see also Doe*, 2011 U.S. Dist. LEXIS 76076, at *7-8.  Such statements are not

actionable because "a proffered hypothesis that is offered after a full recitation of the facts on

which it is based is readily understood by the audience as conjecture." *Gross*, 82 N.Y.2d at 154.[6]

The statements contained in the Termination Letter constitute non-actionable opinion.  In

the Termination Letter, Ms. Stern, on behalf of the Schoeman Firm, communicated to plaintiff --

and to plaintiff only-- the Firm's decision to terminate her employment pointing out that her

employment was "at will" and could therefore be "terminated at any time for any reason or no

reason." (Compl. ¶99).  The letter further stated the Firm's belief that "it is both fair to [plaintiff]

and otherwise useful to spell out the considerations that led to their decision." (*Id*.)  The firm

went on to express its opinion that the Schoeman Partners no longer "have confidence in

[plaintiff's] judgment or [plaintiff's] ability to work effectively with her colleagues." (*Id*.)  The

letter then provides facts and opinions that support that conclusion.  This falls squarely within the

definition of "pure opinion" as defined by the New York Court of Appeals.

In *Doe v. White Plains Hospital Medical Center*, this Court dismissed an almost identical

defamation claim based on statements made in a termination letter.  2011 U.S. Dist. LEXIS

76076, at *9.  In holding that the statements contained in the termination letter at issue in *Doe*

were "pure opinion," the Court explained that

> a reasonable reader or listener would readily understand these
> statements as opinion . . . though some of the statements such as [a
> supervisor's] statement that Plaintiff failed particular tests are
> objective statements that could be proven true or false, courts are
> to avoid "hypertechnical parsing" of written and spoken words for

---

[6] "In distinguishing between actionable factual assertions and non-actionable opinion, the courts must consider the content of the communication as a whole, as well as its tone and apparent purpose.  Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believe that the challenged statements were conveying facts about the libel plaintiff." *Brian v. Richardson*, 87 N.Y.2d 46, 51, 637 N.Y.S.2d 347, 350-51 (1995).  "In addition to considering the immediate context in which the disputed words appear, the courts are required to take into consideration the larger context in which the statements were published, including the nature of the particular forum." *Id.*

> the purpose of identifying "possible facts" that might form the
> basis of a sustainable libel action.

*Doe*, 2001 U.S. Dist. LEXIS 76076, at *8 (quoting *Gross*, 82 N.Y.2d at 156)).

New York courts have consistently held that subjective job evaluations, including those in connection with an employee's termination, are non-actionable. *See, e.g.*, *Doe*, 2001 U.S. Dist. LEXIS 76076, at *9; *Reilly v. Natwest Mrkts. Grp. Inc.*, 181 F. 3d 253, 271 (2d Cir. 1999); *Brattis v. Rainbow Adver. Holdings, L.L.C.*, 2000 U.S. Dist. LEXIS 7345, at *11-12 (S.D.N.Y. May 31, 2000); *Williams v. Varig Brazilian Airlines*, 169 A.D.2d 434, 564 N.Y.S.2d 328, 331 (1st Dep't 1991) (finding statements in termination letter about plaintiff's "work and attitude" to be non-actionable opinion); *Ott v. Automatic Connector, Inc.*, 193 A.D.2d 657, 598 N.Y.S.2d 10 (2d Dep't 1993) (unfavorable assessment of work performance in termination letter amounted to a non-actionable expression of opinion). Such statements are not actionable because "[a]n employer has the right to assess an employee's performance on the job without judicial interference." *Ott*, 193 A.D.2d at 658; *Williams*, 169 A.D.2d 434.

The fact that plaintiff alleges that she disagrees with Defendants' opinions is irrelevant to the statements' protected status. As the First Department explained in *Parks:*

> That one may dispute the conclusions drawn from the specified
> facts is not, however the test. So long as the opinion is
> accompanied by a recitation of the facts upon which it is based it is
> deemed a "pure opinion" and is afforded complete immunity even
> though the facts do not support the opinion.

131 A.D.2d at 66, 520 N.Y.S.2d at 378; *see also Frechtman*, 979 N.Y.S.2d at 62 (holding that statements in termination letter were "opinion" after "[c]onsidering the full content of the statements at issue here, including their "tone and . . . apparent purpose" (*Steinhilber, 68 NY2d at 293*), their broader context and their surrounding circumstances").

The same analysis applies to the statements in the Termination Letter. Considering the full content of the statements at issue here, including their "tone and . . . apparent purpose," *Steinhilber*, 68 NY2d at 293, their broader context and their surrounding circumstances, the challenged statements are opinion. Such communications of opinion by an employer to an employee of their work performance are non-actionable and, therefore, the First through Sixth Causes of Action should be dismissed.[7]

### 2.   There Was No Publication Of The Alleged Defamatory Statements.

A defamation claim is "only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Thai v. Cayre Grp., Ltd.,* , 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010). Plaintiff alleges generally that the Letter of Termination was published to "other employees at Schoeman," and "[unidentified] parties outside of Schoeman." (Compl. ¶¶302, 378).

Neither of these allegations is sufficient to meet the publication requirement essential to a claim for defamation. The time, manner, and persons to whom the communication was made must be alleged in order to state an adequate claim of defamation. *See, e.g.*, *Simon v. 160 W. End Ave.*, 7 A.D.3d 318, 775 N.Y.S.2d 851 (1st Dep't 2004) (dismissing claim because of failure to set forth with particularity to whom the statements were made); *Vardi v Mutual Life Ins. Co. of N.Y.*, 136 AD2d 453, 456, 523 N.Y.S.2d 95 (1988); *see also Dilacio v. N.Y. City Dist. Council*

---

[7] To the extent that plaintiff alleges that "Schoeman's statement" in the Termination Letter that "it would only confirm the dates of plaintiff's employment and her position" is somehow defamatory is illogical. Schoeman's neutral reference policy is designed to communicate to prospective employer's solely factual information regarding its former employees. Moreover, courts have held that neutral references cannot form the basis of a defamation claim. *See, e.g.*, *Clemons v. WellPoint Companies*, 2013 U.S. Dist. LEXIS 35899, at *58-59 (N.D.N.Y. Mar. 15, 2013) ("There is no dispute that Defendant provides each Plaintiff with a neutral employment reference listing only the dates it employed the Plaintiff and the position each held. The employment reference contains no reference to, or intimation of, misconduct by Plaintiffs. Accordingly, the employment reference, in and of itself, does not provide the basis for a libel claim").

*of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 578 (S.D.N.Y. 2008);

*Jones v. Commerce Bank, N.A.*, 2006 U.S. Dist. LEXIS 65630, at *11 (S.D.N.Y. 2006).  Plaintiff

has not, because she cannot, sufficiently alleged to whom the Termination Letter was published.

Plaintiff's failure to identify to whom the alleged defamatory statements were published by the

Schoeman defendants is fatal to her defamation claims.  For this reason alone, plaintiff's

defamation claims must fail.[8]

   In an apparent effort to overcome her failure to sufficiently allege the requisite

publication element, plaintiff attempts to rely on a theory of "imposed self-publication."

Plaintiff alleges that "plaintiff was forced to publish the Letter of Termination and the contents

of the Letter of Termination to third parties."  (Compl. ¶380).  Such an attempt must fail because

New York does not recognize a cause of action for "compelled self-publication."  *See Clemons v.

WellPoint Companies*, 2013 U.S. Dist. LEXIS 35899, at *58-59 (N.D.N.Y. Mar. 15, 2013) (and

cases cited therein); *Phillip v. Sterling Home Care, Inc.,* 959 N.Y.S.2d 546, 103 A.D.3d 786 (2d

Dep't Feb. 20, 2013); *Wieder v. Chem. Bank,* 202 A.D.2d 168, 169, 608 N.Y.S.2d 195 (1st Dep't

1994); *Kiblitsky v. Lutheran Medical Center,* 32 Misc. 3d 575, 922 N.Y.S.2d 769, 773 (N.Y.

Sup. 2011).  For these reasons, plaintiff's attempt to allege publication to third parties by virtue

of her own conduct fails as a matter of law.

---

[8] To the extent plaintiff seeks to rely on the allegation that the Zeligson Report was re-published by Schoeman to OSHA in June of 2013 as part of Schoeman's response to plaintiff's OSHA complaint, such an allegation is insufficient to establish the element of publication as a matter of law.  Under New York law, absolute immunity attaches to statements made in the course of a judicial or quasi-judicial proceeding.  *See Farzan v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 169743, at *89-90 (S.D.N.Y. Dec. 2, 2013) (citing *Silver v. Mohasco Corp.*, 62 N.Y.2d 741, 465 N.E.2d 361, 476 N.Y.S.2d 822, 822 (1984)); *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 293-95 (S.D.N.Y. 2005).

**3.   Statements In The Termination Letter Are Protected By The "Common Interest" Privilege.**

Even if the court were to find any of the alleged statements are statements of fact, or that plaintiff has sufficiently alleged the requisite publication element, the defamation claims must fail because the statements are protected by the "common interest" privilege.  "Even though a statement is defamatory, there exists a qualified privilege where the communication is made to persons who have some common interest in the subject matter." *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996) (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992)).  The "common interest" may be a shared economic or business interest in the subject matter, and includes "communications reviewing an employee's performance, competence or fitness." *McNaughton v. City of New York*, 234 A.D.2d 83, 84 (1st Dep't 1996).

The statements contained in the Termination Letter evaluating plaintiff's work performance were an issue of "common interest" among the Schoeman Partners.  The Schoeman Partners had common interests in evaluating plaintiff's performance and ultimately communicating the reasons for the decision to terminate plaintiff's "at-will" employment.  In analogous situations, New York courts apply the common interest privilege to statements made by employers and fellow employees to one another evaluating another employee's performance. *See Tongring v. Bronx Cmty. Coll. Of City Univ. of New York Sys*., 2014 U.S. Dist. LEXIS 14099, at *19-20 (S.D.N.Y. Feb. 4, 2014) (dismissing defamation claim because employee evaluations containing defamatory statements were protected by common interest privilege); *see also Hussey v. New York State Dep't of Law/Office of Atty. Gen*., 933 F. Supp. 2d 399, 404 (E.D.N.Y.2013)); *Washington v. Garage Mgmt. Corp*., 2012 U.S. Dist. LEXIS 136439, at *53-54 (S.D.N.Y. Sept. 20, 2012); *Vaughn v. Am. Multi Cinema, Inc*., 2010 WL 3835191, at *2-4

(S.D.N.Y. Sept. 13, 2010); *Amato v. New York City Dep't of Parks & Recreation*, 110 A.D.3d 439, 440 (1st Dep't 2013).

The privilege is "qualified" in the sense that it may be overcome with allegations that the defendant made the defamatory statement with malice or reckless disregard for its truth or falsity. *See Washington*, 2012 U.S. Dist. LEXIS 136439, at *54. To overcome the qualified privilege at the motion to dismiss stage, a plaintiff must plausibly allege that the defendant acted with malice, that is, "spite or a knowing or reckless disregard of a statement's falsity." *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009) (citing *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365 (2007)). However, mere conclusory allegations of malice that are layered upon factual allegations that do not support a plausible inference of malice are insufficient to survive a motion to dismiss. *See id*. Here, plaintiff's conclusory allegations of malice are not plausibly supported by factual allegations and are thus insufficient to overcome the qualified privilege.[9]

### B. Any Defamation Claims Based On Statements In The Zeligson Report Are Time-Barred and Otherwise Fail As A Matter Of Law.

Causes of action for defamation are subject to a one year statute of limitations. C.P.L.R. §215(3). The statute begins to run on the first date that the defamatory statement is "published," and expires one year from that date. *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2d.

---

[9] The Second Circuit recently affirmed Judge Baer's dismissal of a defamation claim based on a similar analysis. *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (summary order) *cert. denied*, 133 S. Ct. 547 (U.S. 2012). There, the plaintiff had alleged various facts that the plaintiff argued demonstrated the defendant's malice. Judge Baer determined that even if these facts were true, they could not establish that the defendant had been exclusively motivated by malice, as other facts in the complaint made clear that there were legitimate business purposes for defendants' actions. *Chao v. Mount Sinai Hosp.*, 10 CV 2869 (HB), 2010 WL 5222118, at *6-12 (S.D.N.Y. Dec. 17, 2010). In upholding this determination, the Second Circuit noted, "defendants made their allegedly defamatory statements in the course of fulfilling their professional obligation to investigate and offer their studied views on [plaintiff's] research integrity. Accordingly, 'spite or ill will' cannot have been the 'one and only cause for the publication' of those statements, as is required to show common law malice." *Chao*, 476 F. App'x at 895. In the same way, spite or ill will – which defendants deny was a motivation for the Termination Letter or the Zeligson Report – in any event could not have been the only motivation for the Letter or the Report based on the facts alleged in the Complaint.

Cir. 2003).  The Zeligson Report was prepared on June 26, 2012.  (*See* Compl. Ex. E.)  Ms. Zeligson was retained by Schoeman to conduct an investigation into plaintiff's concerns of religious discrimination by Ms. Casero, and met with Ms. Kaufman and Mr. Updike with regard to that investigation on May 18, 2012.  (*See* Compl. Ex. E at p. 6.)  Ms. Zeligson interviewed Ms. Casero and Ms. Nygaard as part of the investigation on June 18, 2012.  (*See* Compl. Ex. E at p. 1.)  Therefore,  the oral statements made to Ms. Zeligson as part of the investigation of plaintiff's complaints and the written report prepared by Ms. Zeligson containing the alleged defamatory statements were all made between April and June 26, 2012, more than one year prior to plaintiff's filing of the complaint in the instant action in February, 2014.[10]  As a result, any claims of defamation, libel or slander based on the Zeligson Report or statements contained therein, including but not limited to the Seventh Cause of Action, and all claims against Ms. Casero and Ms. Nygaard, should be dismissed as time-barred.

Plaintiff seeks to avoid the statute of limitations bar to her defamation claims concerning the statements made in the Zeligson Report by alleging that the Zeligson Report was published by Schoeman, the Schoeman Partners, the Zeligson Firm and Ms. Zeligson to unidentified "other employees at Schoeman" and "parties outside of Schoeman" (without alleging the date(s) on which such publication allegedly occurred), and that the Zeligson Report was republished by Schoeman in its Letter of Termination in April, 2013.  These allegations do not meet the publication requirement, as discussed in Section I.A.2., *supra.*  Moreover, plaintiff's allegation that Schoeman republished the Zeligson Report as part of Schoeman's response to plaintiff's OSHA retaliation complaint in June of 2013, also is insufficient to establish the element of

---

[10] Any documents reviewed by Ms. Zeligson in connection with her investigation were obviously created prior to Ms. Zeligson's preparation of the Report on June 26, 2012, and, thus, any alleged defamatory statements contained therein would also be barred by the one-year statute of limitations.

publication, as a matter of law.[11]   Under New York law, absolute immunity attaches to

statements made in the course of a judicial or quasi-judicial proceeding.  *See Farzan v. Wells*

*Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 169743, at *11-12 (S.D.N.Y. Dec. 2, 2013) (citing

*Silver v. Mohasco Corp.*, 62 N.Y.2d 741, 465 N.E.2d 361, 476 N.Y.S.2d 822, 822 (1984)); *Long*

*v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 293-95 (S.D.N.Y. 2005).  The "complete immunity

for such statements" exists because of "the public interest in the freedom . . . to 'speak with that

free and open mind which the administration of justice demands.'"  *Farzan*, 2013 U.S. Dist.

LEXIS 169743, at *12 (quoting *Youmans v. Smith*, 153 N.Y. 214, 47 N.E. 265 (1897)).  Thus, in

order to encourage open communication both in the judicial process and in quasi-judicial

proceedings (such as those before administrative agencies), any statements made during such

proceedings become privileged and will not support a defamation claim.  *Id.* (citations omitted).

Even if plaintiff's defamation claims concerning the Zeligson Report and the statements

contained therein were not time-barred, plaintiff's claims would, in any event, be subject to

dismissal because they fail to state a claim upon which relief may be granted.  The statements

made in the Zeligson Report constitute protected, non-actionable opinions provided to Ms.

Zeligson in response to her investigation of plaintiff's claims for religious discrimination and the

events that led to the email exchange between plaintiff and Ms. Casero on April 20, 2012.  For

example, plaintiff alleges that Ms. Casero stated that she "*felt* Ronit was robotic, cold" (Compl.

¶183, Ex. E at p. 4), that she "*thinks* Ronit is too unpredictable and wouldn't put her in front of a

client" (Compl. ¶182, Ex. E at p. 4), and that she "does not trust that [plaintiff] will not have

---

[11] The allegation that the Zeligson Report was republished in the Letter of Termination in April, 2013, and to OSHA in June, 2013, is directed at Schoeman and the Schoeman Partners.  (*See* Compl. ¶¶696-698.)  There is no allegation that Ms. Casero or Ms. Nygaard published or "republished" the Zeligson Report, or any of their respective statements as contained in the Zeligson report, at any time.  Thus the defamation claims against Ms. Casero and Ms. Nygaard must be dismissed as time-barred.

another blowup and *feels* she cannot rely on her" (Compl. ¶184, Ex. E at p. 4).   Further, plaintiff

alleges that Ms. Nygaard, Schoeman's office manager, stated to Ms. Zeligson in conjunction

with Ms. Zeligson's investigation:   (1) that Ms. Nygaard "*found* [plaintiff] to be structured and

tightly wound"; (2) that plaintiff "worked behind closed doors"; (3) that plaintiff "had issues

with others in the firm" and (4) that "Ronit *might* have an inability to work with her peers"

(Compl. ¶¶185-188).   Considering the full content of the statements at issue here, including their

"tone and apparent purpose," *Steinhilber*, 68 NY2d at 293, their broader context and their

surrounding circumstances, the challenged statements are non-actionable opinion.   *See* Section

I.A.1., *supra*.

The statements made in the Zeligson Report also are protected by the common-interest

privilege.   Schoeman retained Ms. Zeligson specifically to investigate plaintiff's claims of

religious discrimination and the events that led to the email exchange between plaintiff and Ms.

Casero on April 20, 2012.   It was only pursuant to this investigation that Ms. Casero and Ms.

Nygaard provided their opinions about working with Ms. Appel.   The common interest privilege

also applies to statements made during the course of an internal investigation, including but not

limited to investigations of harassment complaints.   *See Herlihy v. Metropolitan Museum of Art*,

160 Misc.2d 279, 285, 608 N.Y.S.2d 770 (Sup. Ct. N.Y. County 1994) ("communications made

during the course of an investigation into sexual harassment or other improprieties are protected

by the qualified privilege").   Thus, communications made during the course of an investigation

into harassment or other improprieties is protected by the common interest privilege.   *Id*. at 286.

In addition, New York courts have applied the qualified privileged to internal communications at

law firms.   *McQuillan v. Kenyon & Kenyon*, 271 A.D.2d 511, 512, 705 N.Y.S.2d 671 (2d Dep't

2000).   Plaintiff cannot overcome this privilege by arguing that such statements were motivated

solely by spite or ill will where there was a legitimate business purpose for the conversation –
e.g. to evaluate the merit of plaintiff's religious discrimination claims and the events leading to
the email exchange on April 20, 2012.  *See Chao*, discussed *supra* at fn. 9.

### C.  The Complaint Fails To State A Claim For Slander.

Although plaintiff styles her Fifth, Sixth and Seventh Causes of Action as claims for
slander, plaintiff fails to allege any oral statements that form the basis of these claims.  There are,
generally speaking, four elements necessary to establish a *prima facie* case of slander: (l) an oral
defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party by the
defendant, and (4) injury to the plaintiff.  *See Weldy v. Piedmont Airlines*, 985 F.2d 57 (2d Cir.
1993) (citing 2 *NY PJI* 104-05 (Supp. 1991)).  Plaintiff's slander claims are based solely on the
Termination Letter.[12]  Although plaintiff alleges generally that the "libelous statements" were
"also orally published" (Compl. ¶535), such an allegation is insufficient to establish oral
defamatory statements of fact to support a claim for slander.

Further, for the reasons set forth in Section I.A.2., plaintiff has failed to allege facts
sufficient to meet the publication element of her slander claim.  Plaintiff must allege the time,
manner, and persons to whom the communication was made must be alleged in order to state an
adequate claim of defamation.  *See* cases on pp. 10-11.  Plaintiff fails to make any allegations as
to who made the statements, when the statements were made, or to whom the statements were
made.  The only words that the Complaint attributes to the Schoeman defendants as allegedly

---

[12] Plaintiff's allegations of slander arising from the statements made in the Zeligson Report must also be dismissed,
not only because they are barred by the one-year statute of limitation, but also because plaintiff has failed to state a
cause of action upon which relief may be granted. As noted in Section I.B., *supra*, any oral statements made to Ms.
Zeligson as part of her investigation into plaintiff's claims were statements of opinion, subject to the common
interest privilege as statements made, not to a "third-party", but to an agent of Schoeman hired specifically in
response to plaintiff's allegation of religious discrimination.

defamatory are contained in the Letter of Termination and the Zeligson Report. Therefore, the slander claims should be dismissed.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS OR WITH PROSPECTIVE BUSINESS RELATIONS

### A. The Complaint Fails To State A Claim For Tortious Interference With Business Relations.

Plaintiff's claims for tortious interference with business relations against Schoeman and the Schoeman Partners (Eighth Cause of Action) and against Ms. Casero (Thirteenth Cause of Action) fail to state a claim upon which relief may be granted, and those claims should be dismissed in their entirety. To state a cause of action for tortious interference with business relations, a plaintiff must allege: (1) the plaintiff's business relations with a third party; (2) that the defendants knew of the relationship and intentionally interfered with it; (3) that the defendant acted with the sole purpose of harming the plaintiff or used wrongful means; and (4) injury to the business relationship. *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008); *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 349 (S.D.N.Y. 2009).

### 1. There Is No Allegation Of Interference With Business Relations With A Third Party.

The basis of plaintiff's claim against the Schoeman Partners as set forth in the Eighth Cause of Action is that they interfered in various ways with plaintiff's relationship with Schoeman. (*See* Compl. ¶701.) In order to state a claim for tortious interference with business relations, plaintiff must identify a third party with whom she would have "entered into or extended a contractual relationship with" but for the intentional acts of the defendants. *Daniels v. Alvarado*, 2004 U.S. Dist. LEXIS 3893, at *23 (E.D.N.Y. Mar. 12, 2004) (citing *WFB Telecommunications, Inc. v. NYNEX Corp.*, 188 A.D.2d 257 (1st Dep't 1992)). "A claim for

tortious interference cannot be sustained against agents of an employer or partners to a partnership 'absent a showing that they acted outside the scope of their authority.'" *Daniels v. Alvarado*, 2004 U.S. Dist. LEXIS 3893, at *23 (E.D.N.Y. Mar. 12, 2004) (quoting *Kosson v. "Algaze",* 203 A.D.2d 112, 610 N.Y.S.2d 227, 228-9 (N.Y. App. Div. 1994)).

As alleged, Ms. Stern, Ms. Kaufman, Mr. Updike and Ms. Ascher are members of the partnership that make up the Schoeman Firm, a limited liability partnership. (Compl. ¶¶3-6.) Therefore, for purposes of analyzing a tortious interference claim, there is no difference between the Schoeman Firm and the Schoeman Partners who comprise it. Plaintiff's contention that the individual partners interfered with plaintiff's business relation with the Schoeman Firm is nonsensical, when the individuals are in fact partners comprising the same entity and acting on its behalf. *See Maumud v. Kaufman*, 607 F.Supp.2d 541, 561 (S.D.N.Y. 2009) (citing *Malec v. Metro Life Insur. Co.*, 2007 WL 969086, at *25 (W.D.N.Y. 2007) (holding that a tortious interference claim cannot be brought against the employer, as the employer necessarily cannot interfere with a relationship to which it is a party). Furthermore, "[a] tortious interference claim may not lie against agents of the employer absent a showing that they acted outside the scope of their authority." *Maumud*, 607 F. Supp. 2d at 561. To the extent that plaintiff alleges tortious interference against the Schoeman Partners, plaintiff has not alleged that any of the Schoeman Partners acted outside the scope of his or her authority, because she cannot.

Nor can Ms. Casero, an employee of Schoeman with no supervisory responsibility over plaintiff, be held to have interfered with plaintiff's contract with Schoeman, because the statements she made to Ms. Zeligson were expressly made within the scope of her employment pursuant to Schoeman's investigation into plaintiff's claim of religious discrimination and the events leading up to the email exchange between Ms. Casero and plaintiff on April 20, 2012.

19

In a virtually identical claim, the Court dismissed a former employee's claim for tortious interference with business relations with a law firm, brought against the partner of a law firm for allegedly "spreading false comments about him."  *Daniels*, 2004 U.S. Dist. LEXIS 3893, at *23-24.  The Court held that "[p]laintiff fail[ed] to allege a pre-existing business relationship or third party through which he would have done business if not for the allegedly tortious behavior."

Likewise, here, plaintiff has not, because she cannot, allege that defendants interfered with plaintiff's business relations with *a third party*, a requisite element of her claim.  Her claims against the Schoeman Partners and Ms. Casero fail on this basis alone.

## 2. There Is Not A Sufficient Allegation That Defendants Acted With The Sole Purpose Of Harming The Plaintiff Or Used Wrongful Means.

As to the tortious interference claims against Schoeman, the Schoeman Partners and Ms. Casero, plaintiff also has failed to allege facts to satisfy the third element of the tortious interference claim, *i.e.,* that the defendant acted with the sole purpose of harming the plaintiff or used wrongful means.  To satisfy the third element of the tortious interference claim, the Complaint must sufficiently allege "a crime or independent unlawful action by the defendants, or alternatively plaintiff must plausibly allege that the defendants acted with the sole purpose of inflecting intentional harm" on plaintiff.  *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013); *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004); *see also Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105-06 (2d Cir. 2012).

The Complaint does not allege facts that allow for the plausible inference that Schoeman, the Schoeman Partners, or Ms. Casero's alleged conduct amounted to a crime or independent tort.  The alleged acts of tortious interference by Schoeman and the Schoeman Partners are Schoeman's: (1) alleged misrepresentations contained in the Termination Letter, including statements regarding plaintiff's refusal to work on a matter assigned to her by Ms. Stern,

plaintiff's communications with Paul Breene of Reed Smith, and plaintiff's work on the Madison 96 matter; (2) the decision to move Schoeman into the offices on the Twelfth Floor of 551 Fifth Avenue on April 5, 2013; and (3) not allowing plaintiff to work for an extended period of time from home despite the fact that Schoeman did not have a policy that would allow this.[13]  (Compl. ¶702.)  Further, plaintiff alleges that the tortious acts committed by Ms. Casero were Ms. Casero's (1) statements surrounding the events that prompted plaintiff's religious discrimination complaint on or about April 20, 2012, and (2) speaking to Ms. Zeligson as part of Schoeman's investigation of plaintiff's complaint.[14]  (Compl. ¶750.)   None of these alleged acts constitutes a crime or independent tort.

Nor is there any allegation that would allow a plausible inference that the Schoeman Firm, the Schoeman Partners or Ms. Casero's actions were carried out with the "sole purpose of inflicting intentional harm on" the plaintiff.  Plaintiff's conclusory allegation that the defendants "acted solely out of malice" and that the interference was "done with malice, spite, and ill will" (Compl. ¶¶703, 710, 751), are insufficient as a matter of law to establish that the Schoeman defendants acted with the "sole purpose of inflicting intentional harm on plaintiff."  *See, e.g.*, *Medcalf v. Walsh*, 938 F. Supp. 2d at 490 (dismissing tortious interference claim where aside from a conclusory statement, plaintiff failed to allege facts that "give rise to a plausible inference that the defendants acted with the 'sole purpose of inflicting harm'" on plaintiff); *Carvel*, 3 N.Y.3d at 190; *In Touch Concepts, Inc. v. Cellco P'ship*, 949. F. Supp. 2d 447, 478 (S.D.N.Y.

---

[13] To the extent that plaintiff reiterates her claims of defamation, libel and slander against Schoeman, the Schoeman Partners and Ms. Casero as a basis for her tortious interference claim, such an attempt must fail.  *See, e.g.*, *Chao v. Mount Sinai Hosp.*, 2010 U.S. Dist. LEXIS 133686, at *38 (S.D.N.Y. Dec. 17, 2010) (dismissing tortious interference with business relations claim because it was duplicative of plaintiff's defamation claim).  "Plaintiff is not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage."  *Krepps v. Reiner*, 588 F. Supp. 2d 471, 485 (S.D.N.Y. 2008).

[14] In any event, any claims based on statements made to Ms. Zeligson in or around June, 2012, are time-barred.  *See* Section I.B., *supra.*

2013).  Accordingly, the Complaint fails to state a claim for tortious interference with business relations and the claims asserting that should be dismissed.

**B. Plaintiff's Purported Claim For Tortious Interference Based On Alleged Interference With Prospective Employers Fails As A Matter Of Law.**

Plaintiff's Ninth Cause of Action purports to be a claim against Schoeman and the Schoeman Partners for tortious interference with prospective relations with prospective employers.  Plaintiff alleges "upon information and belief" that Schoeman was contacted by "numerous prospective employers" regarding plaintiff and that "upon information and belief" Schoeman refused to "say anything good about plaintiff and led the prospective employers to believe that plaintiff was a poor employee."  (Compl. ¶709.)  In addition, plaintiff alleges that the Schoeman Partners played "an active role" in the tortious interference because they made the decision to terminate plaintiff, and "upon information and belief" drafted the Letter of Termination, and "refused to say anything good about plaintiff to prospective employers." (Compl. ¶¶713, 714.)

First, such a claim fails because plaintiff has failed to identify any prospective employer or third party who would have entered into a contractual relationship with plaintiff *but for* the alleged statement(s) or lack of statement(s) at issue.  To sustain a claim for tortious interference with prospective economic advantage, plaintiff must allege a specific prospective business relationship that she was prevented from entering into by reason of the purported tortious interference.  *Doe v. White Plains Hosp.*, 2011 U.S. Dist. LEXIS 76076 (S.D.N.Y. July 8, 2011) (citing *Baker v. Guardian Life Ins. Co.*, 12 A.D.3d 285, 286 (1st Dep't 2004)); *see also Schoettle v. Taylor*, 282 A.D.2d 411 (1st Dep't 2001).  Plaintiff's failure to identify any prospective employer with whom she would have entered into a contractual relationship but for the alleged tortious interference by defendants is fatal to her claim.

Plaintiff must also allege that she "would have entered into an economic relationship but for the defendant's wrongful conduct." *Memnon*, 667 F. Supp. 2d at 349 (citing *Knight-McConnell v. Cummins*, 2004 U.S. Dist. LEXIS 14746, at *13 (S.D.N.Y. July 29, 2004)). Plaintiff has failed to set forth any such allegation; rather, she merely states in a conclusory manner that defendants interfered with the "prospective contracts between plaintiff and prospective employers." (Compl. ¶706.)  This is insufficient to plead tortious interference with prospective business relations, as a matter of law.[15]

### C. The Tortious Interference Claims Against Ms. Casero Are Time-Barred And Fail To State A Plausible Claim.

The acts alleged to have been committed by Ms. Casero in support of plaintiff's tortious interference claim are, in essence, claims of defamation.  Plaintiff alleges in a conclusory manner that Ms. Casero interfered with plaintiff's relationship with Schoeman by "lying about her actions that prompted plaintiff's complaint of religious discrimination" and "libeling, defaming and slandering plaintiff during the investigation conducted into plaintiff's claims of religious discrimination."  (Compl. ¶750.)  Plaintiff's attempt to circumvent the one-year statute of limitations for defamation by couching her claims against Ms. Casero as tortious interference claims must fail as a matter of law.

Although a three-year statute of limitations normally applies to a tortious interference claim, under New York law, the essence of the claim, rather than its name, dictates the applicable statute of limitations.  *Guelen v. Distinctive Pers., Inc.*, 2011 U.S. Dist. LEXIS 86064, at *11 (E.D.N.Y. Aug. 4, 2011) (citing New York law).  If the cause of action plaintiff has billed as

---

[15] In addition, as set forth in Section II.A.2., *supra*, even if plaintiff had alleged the identity of a particular prospective employer and could prove that defendants "refused to say anything good about plaintiff to prospective employers," there is no allegation that they did so with the sole purpose of inflicting harm on plaintiff.  *See, e.g.*, *Lindner v. IBM*, 2010 U.S. Dist. LEXIS 6499, at *13 (S.D.N.Y. Jan 21, 2010).

"tortious interference" is in essence a claim for defamation, the plaintiff "may not circumvent the one-year limitation applicable to defamation by re-describing the tort as" interference with contractual or economic relationships.  *Guelen*, 2011 U.S. Dist. LEXIS 86064, at *11, *see also Ramsay v. Mary Imogene Bassett Hospital*, 113 A.D.2d 149, 151, 495 N.Y.S.2d 282 (3d Dep't 1985).  *See also Pitcock v. Kasowitz*, 910 N.Y.S.2d 765, 765 (Sup. Ct. 2010); *DiFolco v. MSNBC Cable*, 622 F.3d 104, 110 (2d Cir. 2010).

Causes of action for defamation are subject to a one year statute of limitations.  *See* C.P.L.R. §215(3).  The statute begins to run on the first date that the defamatory statement is "published," and expires one year from that date.  *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2d. Cir. 2003).  As set forth above, the claims against Ms. Casero are premised on statements allegedly made by Ms. Casero in April and June, 2012, more than one year prior to the filing of the Complaint in February, 2014.  Therefore, the Thirteenth Cause of Action against Ms. Casero should be dismissed as time-barred.

There also is no plausible allegation that Ms. Casero interfered with plaintiff's relationship with Schoeman.  Plaintiff alleges only in a conclusory manner that Ms. Casero "knew of plaintiff's business relationship with Schoeman" and "interfered with it by . . . lying about her actions that prompted plaintiff's complaint of religious discrimination" and making certain statements during the investigation of plaintiff's religious discrimination complaint (Compl. ¶750.)  Plaintiff sets forth no allegations as to how Ms. Casero, an employee with no supervisory authority over plaintiff, could have interfered with plaintiff's relationship with the firm based solely on alleged statements made by Ms. Casero in 2012.  Plaintiff has failed to sufficiently allege that Ms. Casero acted with the sole purpose of harming the plaintiff or used

wrongful means.  Such a claim against Ms. Casero is not plausible, is based solely on conclusory allegations, and should be dismissed.

## III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### A.  Schoeman, The Schoeman Partners, And Ms. Casero's Conduct Was Not Extreme or Outrageous.

Plaintiff's claims for intentional infliction of emotional distress against Schoeman and the Schoeman Partners (the Tenth Cause of Action) and against Ms. Casero (the Fourteenth Cause of Action) must be dismissed as a matter of law because the alleged conduct does not rise to the level of extreme and outrageous conduct as required to maintain the cause of action.  Under New York law, the elements of a claim for intentional infliction of emotional distress are (1) extreme and outrageous conduct, (2) an intent to cause – or the disregard of a substantial probability of causing – severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) the resultant severe emotional distress.  *Lau v. S&M Enters.,* 72 A.D.3d 497 (1st Dep't 2010).

Plaintiff claims that Schoeman and the Schoeman Partners intentionally inflicted emotional distress and acted with "extreme and outrageous conduct" when it "unlawfully terminated" her in retaliation for filing an OSHA complaint, for refusing to allow her to work from home for an extended period of time, and for including a recitation of certain events in the Termination Letter.  (Compl. ¶¶721-734.)  In addition, plaintiff alleges that Ms. Casero's "acts of subjecting plaintiff to religious discrimination . . . and libeling, slandering and defaming plaintiff during the investigation conducted into plaintiff's claims of religious discrimination" constitute extreme and outrageous conduct.  (Compl. ¶756.)  Based simply on the well-established

standards for outrageous conduct, it is clear that no outrageous conduct can be ascribed to the Schoeman, the Schoeman Partners or Ms. Casero.

A plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 697 (S.D.N.Y. 2011) (internal citations omitted). Indeed, as stated in *Kaupp v. Church,* 2011 U.S. Dist. LEXIS 105794, at *10 (S.D.N.Y. 2011):

> New York courts continually advise that the standard for intentional infliction of emotional distress is difficult to satisfy. According to the New York Court of Appeals, "of the intentional infliction of emotional distress claims considered by this court, *every one* has failed because the alleged conduct was not sufficiently outrageous." (Emphasis supplied.)

Further, federal District Courts in New York, when applying New York law, have held repeatedly that claims involving discriminatory or retaliatory discharge are insufficient to state a claim for intentional infliction of emotional distress. *See, e.g.*, *Zhengfang Liang v. Café Spice SB, Inc.*, 911 F. Supp. 2d 184, 213-14 (E.D.N.Y. Nov. 29, 2012) (dismissing intentional infliction of emotional distress claim based on allegations that defendant employer "criticized her, placed her under surveillance, and terminated her in retaliation for her complaints.").[16]

---

[16] *See also Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1158 (2d Cir. 1993) ("Defendants' criticisms of [plaintiff's] job performance and their conditional threats of termination . . . fall far short of the 'extreme' and 'outrageous' conduct that is actionable as an intentional infliction of emotional distress."); *Sharabura v. Taylor*, 2003 U.S. Dist. LEXIS 16515, at *13-14 (E.D.N.Y. Sept. 16, 2003) (holding that plaintiff's allegations that her "employer criticized her unfairly, gave her undesirable assignments and ultimately terminated her" failed to meet "New York's high threshold for conduct that is actionable under the tort of intentional infliction of emotional distress"); *Lydgatte v. Bronx Overall Economic Dev.*, 2001 U.S. Dist. LEXIS 1670, at *2 (S.D.N.Y. Feb. 22, 2001) ("Plaintiff alleges that defendant was biased against her based on her race, that she was harassed and treated poorly on the job, and that she was denied the same benefits, opportunities and conditions of employment as her Hispanic co-workers until she was ultimately wrongfully terminated. Additionally, plaintiff alleges that defendant retaliated against her . . . . While the alleged behavior of which plaintiff complains may support an employment discrimination lawsuit, it is not the type of behavior that merits recovery for intentional infliction of emotional distress as established by the New York Courts.")

Therefore, the claims against Schoeman and the Schoeman Partners based on their alleged unlawful termination of plaintiff should be dismissed as a matter of law.

Nor can plaintiff's claim for intentional infliction of emotional distress against Ms. Casero stand on the bare allegation that she allegedly "subjected plaintiff to religious discrimination" by inquiring if plaintiff was available to work on Saturday, especially where the April 20, 2012, email exchange indicates that Ms. Casero accepted that plaintiff does not work on Saturday in observance of the Sabbath, and plaintiff has not alleged that she was required to work on Saturday.

The claims against Schoeman, the Schoeman Partners and Ms. Casero based on alleged defamatory statements do not rise to the level of extreme and outrageous conduct as a matter of law. *Daniels v. Alvarado*, 2004 U.S. Dist. LEXIS 3893, at *15 (E.D.N.Y. Mar. 12, 2004) ("[f]alse statements in and of themselves do not meet this threshold."). In addition, evaluations of employees' conduct and performance do not rise to the level of intentional infliction of emotional distress, even in the context of wrongful termination, as this would, in effect, create a tort claim for wrongful discharge. *See, e.g.*, *Rodriguez v. American Friends of the Hebrew Univ.*, 1998 U.S. Dist. LEXIS 3701, at *30-31 (S.D.N.Y. Mar. 23, 1998) (stating that to accept criticism of plaintiff's performance and termination as stating a claim for intentional infliction of emotional distress "would be to establish a tort for alleged wrongful discharge of an at-will employee which the New York Court of Appeals has explicitly rejected").

Accordingly, the Tenth and Fourteenth Causes of Action must be dismissed in their entirety.

**B.   The Intentional Infliction Of Emotional Distress Claim Against Susan Casero Is Also Time-Barred.**

Plaintiff also alleges a claim for intentional infliction of emotional distress (Fourteenth Cause of Action) against Ms. Casero, based solely on events that occurred in April and June, 2012.  (*See* Compl. ¶756.)  This claim against Ms. Casero is time-barred.

A cause of action for the intentional infliction of emotional distress is subject to a one-year statute of limitations.  C.P.L.R. § 215(3).  *Sharabura v. Taylor*, 2003 U.S. Dist. LEXIS 16515, at *13-14 (E.D.N.Y. Sept. 16, 2003); *Kwarren v. American Airlines*, 303 A.D.2d 722, 757 N.Y.S.2d 105 (2d Dep't 2003) (dismissing claim for intentional infliction of emotional distress where alleged comments were made over one year prior to the filing of the complaint). The only intentional actions alleged in the Complaint that are attributed to Ms. Casero occurred on April 19, 2012, when Ms. Casero allegedly inquired as to plaintiff's availability to work on Saturday (Compl. ¶131); a subsequent email exchange between plaintiff and Ms. Casero that took place on April 20, 2012, regarding a communication between plaintiff and Ms. Casero that morning (Compl. ¶131); and a June 18, 2012 interview of Ms. Casero by an outside investigator hired by the Schoeman Firm to investigate the April, 2012 incident (Compl. ¶132).  Plaintiff has pled no acts by Ms. Casero that occurred after June, 2012.  Plaintiff did not file the present action until on or about February 20, 2014.  Therefore, the intentional infliction of emotional distress claim against Ms. Casero must be dismissed as time-barred.

**C.   The Intentional Infliction of Emotional Distress Claim Should Be Dismissed as Duplicative of the Claims for Defamation, Tortious Interference and Discrimination.**

Plaintiff's intentional infliction of emotional distress claims are based solely on the same alleged facts and seek the same damages as plaintiff's claims for defamation, tortious interference and discrimination.  The alleged acts of extreme and outrageous conduct are based

on Schoeman's decision to terminate plaintiff's employment and the contents of the Termination

Letter.  As such, the intentional infliction of emotional distress claim is based on the same

allegations underlying plaintiff's claims for defamation, libel, slander, tortious interference and

discrimination, and therefore must be dismissed as duplicative.  *See, e.g.*, *Cruz v. Marchetto*,

2012 U.S. Dist. LEXIS 142662, at *13-14  (S.D.N.Y. Sept. 28, 2012) (dismissing intentional

infliction of emotional distress claim where the claims were duplicative of claims for

defamation); *Viehdeffer v. Tryon*, 2012 U.S. Dist. LEXIS 122926  (W.D.N.Y. Aug. 28, 2012)

(dismissing intentional infliction of emotional distress claim where underlying allegations were

same as allegations to support defamation claim); *Peterec-Tolino v. Commerical Elec.*

*Contractors*, Inc., 2009 U.S. Dist. LEXIS 76952, at *1 (S.D.N.Y. Aug. 19, 2009) (stating that a

state court granted a motion to dismiss because, among other reasons "a claim for the intentional

infliction of emotional distress may not be maintained to the extent that the damages sought are

duplicative of those sought in the defamation claim"); *Akpinar v. Moran*, 83 A.D.3d 458, 459

(1st Dep't 2011); *Brancaleone v. Mesagna*, 290 A.D.2d 467, 468-469 (2d Dep't 2002).

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIGIOUS DISCRIMINATION

Plaintiff appears to assert two types of religious discrimination claims -- failure to

accommodate her religious observance and a discriminatory termination claim -- neither of

which state a claim upon which relief may be granted under Title VII, the NYSHRL,[17] or the

---

[17] The burden of proof for religious discrimination claims under Title VII and the NYSHRL are identical.  *Bowles v. New York Transit Auth.*, 285 F. App'x 812, 813 (2d Cir. 2008) ("claims brought under the New York State's Human Rights Laws are analytically identical to claims brought under Title VII"); *Yoselovsky v. Associate Press*, 917 F. Supp. 2d 262, 273, n.8 (S.D.N.Y. 2013); *Weiss v. Dep't of Educ. Of City of N.Y.*, 2012 U.S. Dist. LEXIS 44273, n.8 (S.D.N.Y. Mar. 29, 2012).

NYCHRL.[18]  Therefore, plaintiff's religious discrimination claims (Forty-Third, Forty-Fourth,

Forty-Fifth, Fifty-Second, Fifty-Third, Fifty-Fourth, Fifty-Sixth, Fifty-Seventh, Fifty-Eighth,

Fifty-Ninth, Sixty-Fourth and Sixty-Fifth Causes of Action)[19] should be dismissed as a matter of

law.

**A.  The Complaint Fails To State A Failure To Accommodate Claim.**

To make out a *prima facie* case of religious discrimination for failure to accommodate,

plaintiff must prove that: "(1) she held a bona fide religious belief conflicting with an

employment requirement; (2) she informed her employer of this belief; and (3) she was

disciplined for failure to comply with the conflicting employment requirement."  *Chukwueze v.

NYCERS,* 891 F. Supp. 2d 443, 453 (S.D.N.Y. 2012) (quoting *Baker v. The Home Depot*, 445

F.3d 541, 546 (2d Cir. 2006)); *see also Weber v. City of New York*, 2013 U.S. Dist. LEXIS

140187, at *81 (E.D.N.Y. Sept. 29, 2013).  The third prong "require[s] 'some adverse

---

[18]  As for the burden of proof for claims brought under the NYCHRL, the Second Circuit has recently explained in *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013) that

> [I]t is unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims. *Compare Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 936 N.Y.S.2d 112, 116 (1st Dep't 2011) (beginning to consider how *McDonnell Douglas* framework should be modified), *with Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 946 N.Y.S.2d 27, 30 (1st Dep't 2012) ("[N]either the [Restoration Act] nor the City Council report thereon . . . indicates that the *McDonnell Douglas* framework is to be discarded."). Although *Bennett* seemed to suggest the analysis has changed, the First Department later narrowly construed *Bennett* as only requiring trial courts to consider whether plaintiff's claim could survive under either the *McDonnell Douglas* analysis or a mixed motives theory of liability. *See Melman*, 946 N.Y.S.2d at 30.

Although not addressed by the First Department in *Melman*, the mixed-motive analysis as applied by federal courts in New York requires a threshold showing by the plaintiff of evidence of discriminatory motive on the part of the defendant.  As the Second Circuit has held, "[t]o warrant a mixed-motive burden shift, the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support his allegations of discriminatory treatment." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (quoting *Raskin v. Wyatt Co*., 125 F.3d 55, 61 (2d Cir. 1997)).  Plaintiff here has failed to make any allegations that would qualify as a "smoking gun" or a "thick cloud of smoke" and therefore the NYCHRL claims should be analyzed under the *McDonnell Douglas* framework.

[19] To the extent plaintiff has alleged claims against Ms. Stern, Ms. Kaufman, Mr. Updike, and Ms. Ascher under Section 296(1) of the New York State Human Rights Laws and under Section 8-107(1)(a) of the New York City Human Rights Laws, plaintiff's failure to state a claim for religious discrimination against Schoeman applies equally to the individual defendants and all claims against the Schoeman Partners should be dismissed.

employment action — typically, discipline, demotion, transfer or termination — *for refusing to comply with* the conflicting employment requirement.'" *Chukwueze*, 891 F. Supp. 2d at 453 (internal citation omitted) (emphasis supplied).

Once a *prima facie* case is established by an employee, the employer must offer [her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Id*. The employer's offer of a reasonable accommodation ends the inquiry into discrimination. *See, e.g.*, *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002).

Plaintiff has failed to allege any employment requirement that conflicted with her religious beliefs or practice. The facts alleged, even if taken as true, do not meet the third prong of a failure to accommodate claim where there is no allegation that plaintiff ever suffered an adverse employment action because she failed to comply with an employment requirement that conflicted with her religion. First, plaintiff alleges that on April 19, 2012, "Ms. Casero asked plaintiff to work on Saturday when she knew that plaintiff is an Orthodox Jew and that plaintiff does not work on the Sabbath." (Compl. ¶165.) There is no allegation that plaintiff was required to work on a Saturday in relation to this particular request or at any time during her employment or, indeed, that she ever suffered an adverse employment action for refusing to work on the Sabbath.[20] In fact, plaintiff admits that she regularly "left [the office] early on Fridays and that the Firm knew" that she left the office because she observed the Sabbath. (Compl. ¶167.) Although plaintiff argues that in her opinion Ms. Casero "should not have asked whether

---

[20] The emails exchanged between plaintiff and Ms. Casero on April 20, 2012, indicate that following Ms. Casero's inquiry, no further discussion regarding working over the weekend took place. In the April 20, 2012 email, plaintiff stated that in her opinion Ms. Casero "asking [her] yesterday if [she] can come in and work on Saturday was particularly inappropriate." In response, Ms. Casero indicated that "[a]sking whether Ronit has availability to work on this case on the weekend, which I have asked of everybody involved in this case, is not inappropriate and has nothing to do with religion. I did not know that she did not work on Saturdays and when she told me, I assured her that was not a problem, I was just assessing work flow." (*See* emails dated April 20, 2012, attached as Exhibit 2 to Updike Decl.)

31

plaintiff could come in the office on Saturday" (Compl. ¶192), there is no allegation that there was any further discussion of plaintiff coming in to work on any Saturday beyond the allegation that the question was asked on one occasion.

Likewise, plaintiff's allegation that "in January, 2013, Ms. Kaufman gave plaintiff an assignment on Friday afternoon that 'would take hours to complete' and 'demanded that Plaintiff complete it before leaving for the Sabbath'" (Compl. ¶167) also is fatally flawed.  There is no allegation that plaintiff stayed in the office on the Sabbath (i.e. past sunset on Friday) to complete the assignment or that there was any repercussion, let alone an adverse employment action, based on Ms. Kaufman's alleged request.

In analogous situations, where plaintiff has failed to allege that any adverse employment action occurred because of a plaintiff's failure to comply with a work requirement that conflicts with his or her religion, the courts have held that a religious discrimination claim cannot be sustained.  *See Weber v. City of New York*, 2013 U.S. Dist. LEXIS 140187 (E.D.N.Y. Sept. 29, 2013) (holding no religious discrimination claim "[b]ecause Plaintiff cannot demonstrate that his religious belief or practice conflicted with any employment requirement or that he was disciplined for failing to comply with any conflicting employment requirement"); *see also Marmulszteyn v. Napolitano,* 2012 U.S. Dist. LEXIS 119047 (E.D.N.Y. Aug. 12, 2012), *aff'd by* 2013 U.S. App. LEXIS 12439 (2d Cir. N.Y., June 19, 2013); *Zacharowicz v. Nassau Health Care Corp*., 2005 U.S. Dist. LEXIS 21052, at *12 (E.D.N.Y. Jun. 29, 2005), *aff'd* 2006 U.S. App. LEXIS 10378 (2d Cir. N.Y., Apr. 21, 2006); *Thompson v. Kaufman Bakery, Inc.,* 2005 U.S. Dist. LEXIS 22431, 2005 WL 643433, *8 (W.D.N.Y. Mar. 16, 2005).

Even assuming that plaintiff had pleaded a *prima facie* case of discrimination on this basis, her claim that Schoeman failed to accommodate her religious observance is implausible

and must fail.  Simply put, Schoeman did accommodate her, plaintiff fails to allege otherwise and in fact admits that the accommodation was made.  *See Chukwueze*, 891 F. Supp. 2d 443, 453-54 (S.D.N.Y. 2012) (granting motion to dismiss religious accommodation claim where plaintiff alleged that his leave requests were initially denied but ultimately he was permitted to take leave); *see also, Leifer v. New York State Div. of Parole*, 391 F. App's 32, 34 (2d Cir. 2010).

Finally, plaintiff's allegations that Schoeman did not make accommodations for plaintiff when it requested that plaintiff attend gatherings or firm celebrations at non-kosher restaurants or luncheons at hotels and that Schoeman did not order kosher pizza or kosher birthday cakes (except during the month of her birthday) (Compl. ¶¶168-170), are insufficient to maintain a claim for religious discrimination.  *See Weber v. City of New York*, 2013 U.S. Dist. LEXIS 140187, at *83-84 (E.D.N.Y. Sept. 29, 2013) ("[p]laintiff was never prevented through any action or policy of Defendants from complying with his religious dietary restrictions. Plaintiff could, and the record demonstrates that Plaintiff did, purchase kosher food for himself.")  There is no allegation that plaintiff was ever prevented through any action or policy of defendants from complying with her religious dietary restrictions.  Nor is there any allegation that the unavailability of kosher food on certain occasions conflicted with any employment requirement.

## B.  The Complaint Fails To State A Discriminatory Termination Claim.

The Complaint does not state a plausible claim for discriminatory termination based on religion.  To establish a *prima facie* case of religious discrimination based on disparate treatment, a plaintiff must show "that: '(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination.'"  *Marmulszteyn v. Napolitano*, 523 F. App'x 13, 15, 2013 U.S. App. LEXIS 12439, 2013 WL 3021144, at *2 (2d Cir. 2013) (quoting *Ruiz v. Cnty. Of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010)); *see also*

*Yoselovsky v. Associated Press*, 917 F. Supp. 2d 262, 273 (S.D.N.Y. 2013) (citing *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012)).[21]  A plaintiff must do more than make conclusory allegations for a discrimination claim to survive.  *See, e.g.*, *Vinokur,* 701 F. Supp. 2d at 291 ("[a] plaintiff cannot sustain an action based on her conclusory allegations of discrimination.").  Plaintiff has failed to do so here.

In the complaint, plaintiff only alleges in a wholly conclusory fashion that "throughout plaintiff's employment, Schoeman repeatedly discriminated against plaintiff in the terms, conditions, and privileges of plaintiff's employment because of plaintiff's religious beliefs." (Compl. ¶164.)  She alleges no facts that could support this conclusory assertion.  In fact, the only allegations that even relate to her religion in the complaint, as set forth *supra*, are her discussion with Ms. Casero on April 19, 2012, in which plaintiff alleges she was asked about her availability to work on a Saturday (Compl. ¶165); an assignment given to plaintiff by Ms. Kaufman in January, 2013 on a Friday (Compl. ¶167); and the fact that kosher food was not served at certain firm celebrations (Compl. ¶¶168-170).  None of these alleged events even remotely relates to her termination, which took place in April, 2013.

A plaintiff's own subjective belief that she was discriminated against because of her religion is insufficient to sustain a religious discrimination claim.  *See Boyar v. City of New York*, 2010 U.S. Dist. LEXIS 115289, at *10 (S.D.N.Y. Oct. 28, 2010) (finding that "[w]hile [plaintiff] states his belief that his [Jewish] religion played a role in these decisions, personal belief is insufficient to defeat defendants' summary judgment motion" on plaintiff's discrimination claim (citation and internal quotation marks omitted)); *Sicular v. N.Y.C. Dep't of Homeless Servs.*,

---

[21] Title VII disparate treatment religious discrimination claims are assessed using the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *See, e.g., Marmulszteyn*, 523 F. App'x at 15, 2013 U.S. App. LEXIS 12439, 2013 WL 3021144, at *2.

2010 U.S. Dist. LEXIS 10089, at *70 (S.D.N.Y. Feb. 4, 2010) ("[The plaintiff's] personal belief .

. . that his being Jewish played into the prejudices of the individual defendants and reinforced

their animosity against him is insufficient to defeat defendants' summary judgment motion."),

*aff'd*, 455 Fed. App'x 129 (2d Cir. 2012).

### C. The Complaint Fails To State A Claim for Aiding And Abetting Religious Discrimination Under The NYSHRL And NYCHRL.

For the reasons set forth above, plaintiff has failed to state a claim for religious

discrimination.  Therefore, plaintiff cannot sustain claims against defendants Mindy H. Stern,

Beth L. Kaufman, Charles B. Updike, Andrea Ascher, Susan S. Casero and Cindy Nygaard

(Forty-Ninth, Fiftieth, Fifty-First, Sixtieth, Sixty-First, and Sixty-Second Causes of action) for

aiding and abetting religious discrimination under Section 296(6) of the NYSHRL or Section 8-

107(6) of the NYCHRL[22] and, therefore, those claims should be dismissed.

An individual defendant cannot be individually liable for employment discrimination as

an aider and abettor of discrimination if a corporate employer or an owner-employee is not

liable.  *See Strauss v New York State Dept. of Educ.*, 26 A.D.3d 67, 73 (3d Dep't 2005); *see also*

*Kelly G v. Board of Educ. of City of Yonkers*, 99 A.D.3d 756, 758-59, (2d Dep't 2012) ("[w]here

no violation of the [State] Human Rights Law by another party has been established, . . . an

individual employee cannot be held liable for aiding and abetting such a violation."); *see also,*

*Barbato v Bowden*, 63 A.D.3d 1580, 1582, 880 N.Y.S.2d 817 (4th Dep't 2009); *Mascola v City*

*Univ. of NY*, 14 A.D.3d 409, 410, 787 N.Y.S.2d 655 (1st Dep't 2005).)

---

[22] *See* Executive Law § 296[6] and NYC Admin Code § 8-107[6] which provide that it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden" under the respective Laws.

Plaintiff alleges that Ms. Stern, Ms. Kaufman, Mr. Updike, and Ms. Ascher "aided and abetted the alleged religious discrimination plaintiff was subjected to" by (1) not ordering kosher food for plaintiff when the firm ordered non-kosher food for other firm employees (Compl. ¶958); (2) not inviting plaintiff to luncheons for the firm's female lawyers that were held at non-kosher restaurants and by not holding such luncheons at kosher restaurants so that plaintiff could eat at the luncheons (Compl. ¶959); (3) "causing" the Zeligson report to be circulated in June 2012 to themselves as partners of the Schoeman Firm and to OSHA in conjunction with Schoeman's response to an OSHA complaint (Compl. ¶960); and (4) playing "an instrumental role" in Schoeman's decision to terminate plaintiff's employment (Compl. ¶963).

Plaintiff further alleges that Ms. Nygaard "aided and abetted the religious discrimination" by (1) not ordering kosher food for plaintiff when the firm ordered non-kosher food for other firm employees and (2) "causing" the Zeligson report to be circulated in June 2012 to the partners of the Schoeman Firm and to OSHA in conjunction with Schoeman's response to an OSHA complaint.  (Compl. ¶¶966-68.)  Finally, plaintiff alleges that Ms. Casero aided and abetted the discrimination by "subjecting plaintiff to religious discrimination and then lying and libeling and slandering plaintiff during the investigation" into plaintiff's claims by Ms. Zelisgon. (Compl. ¶954).

Section 296(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."  For the reasons set forth in Section IV.A., *supra*, even if true, the fact that Schoeman did not order kosher food on certain occasions or hold informal luncheons at kosher restaurants does not constitute religious discrimination as a matter of law and, therefore, the

Schoeman Partners cannot have aided and abetted discrimination even if they had participated in the alleged conduct.  *See* cases cited on pp. 32-33, *supra*.

Moreover, it is illogical to assert, as alleged in the Complaint here, that the circulation by the Schoeman Partners of the Zeligson report amongst themselves in June, 2012, could be discrimination.  The report itself was the product of Schoeman's use of "best practices" to address plaintiff's religious discrimination complaint by bringing in a neutral third-party investigator.[23]  The Schoeman Partners cannot be held to have "encouraged, condoned, or approved" discrimination, as required for aiding and abetting liability, by circulating the report among the partners or by providing it to OSHA in response to its investigation of plaintiff's retaliation complaint.

Finally, as set forth in Section IV.B., *supra*, plaintiff has failed to allege facts sufficient to state a claim for discriminatory termination based on her religion, and therefore plaintiff has failed to plead aider and abettor liability on that basis.

The claims against Ms. Stern, Ms. Kaufman, Mr. Updike and Ms. Ascher also should be dismissed because "individuals cannot be held liable under *Executive Law § 296(6)* for aiding and abetting their own violations of the Human Rights Law."  *Strauss*, 26 A.D.3d at 73; *see also Med. Express Ambulance Corp.*, *v. Kirkland*, 79 A.D.3d 886 (2d Dep't 2010) (holding that plaintiff's supervisor "cannot be liable under [NYSHRL] §296(6) for aiding and abetting his own violation of the Human Rights law" (emphasis in the original)); *Goldin v. Eng'rs Country Club*, 54 A.D.3d 658 (2d Dep't 2008); *Miloscia v. B.R. Guest Holdings LLC,* 33 Misc. 3d 466, 479,

---

[23] The claims for aiding and abetting religious discrimination against Ms. Casero should be dismissed in their entirety for failure to state a claim. While plaintiff alleges that Ms. Casero inquired as to plaintiff's availability to work on a Saturday, the April 20, 2012 email exchange between the parties indicates that Ms. Casero accepted plaintiff's explanation that she does not work on Saturday in observance of the Sabbath, and plaintiff does not allege that she was ever forced to work on Saturday by Ms. Casero or anyone else.

928 N.Y.S.2d 905 (Sup Ct, NY County 2011]), *mod. on other grounds* 94 A.D.3d 563, 564, 942

N.Y.S.2d 484 (1st Dep't 2012)).  Because plaintiff has alleged religious discrimination claims

under Title VII, the NYSHRL and the NYCHRL against the Schoeman Partners individually,

they cannot also be liable for discrimination under an aider and abettor theory of liability.  The

above decisions make clear that a defendant alleged to have discriminated cannot also aid and

abet his own discrimination.  Such a defendant cannot be subject to liability under NYSHRL

§296(6) because that provision does not allow an individual to be held liable for aiding and

abetting his own violation of the NYSHRL or NYCHRL.

## V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RETALIATION FOR COMPLAINTS ABOUT RELIGIOUS DISCRIMIMINATION

Plaintiff has failed to allege a plausible claim for retaliation for alleged complaints of

religious discrimination under Title VII, the NYSHRL, or the NYCHRL (Forty-Sixth, Forty-

Seventh, Fifty-Fifth, Sixty-Third, and Sixty-Sixth Causes of Action), where there are no

allegations to support a causal connection between the alleged protected activity and the

termination of her employment.  To establish a cause of action for retaliation under Title VII, a

plaintiff must prove that "(1) she 'engaged in protected participation or opposition under Title

VII[,] (2) that the employer was aware of this activity, (3) that the employer took adverse action

against the plaintiff, and (4) that a causal connection exists between the protected activity and the

adverse action, i.e., that a retaliatory motive played a part in the adverse action.'"  *Henny v. New*

*York State*, 842 F. Supp. 2d 530, 559 (S.D.N.Y. 2012) (quoting *Kessler v. Westchester Cnty.*

*Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006)).  The analysis of a retaliation claim

under the NYCHRL "is broader than the analysis under Title VII, because under the NYCHRL

"retaliation 'in any manner' is prohibited, and '[t]he retaliation . . . need not result in an ultimate

action with respect to employment . . . or in a materially adverse change in the terms and

conditions of employment.'" *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (quoting N.Y.C. Admin. Code § 8-107(7)); *see also Morgan v. NYS AG office,* 2013 U.S. Dist. LEXIS 17458, at *42 (S.D.N.Y. Feb. 8, 2013) (citing *Williams v. New York City Housing Authority*, 61 A.D.3d 62, 69-72, 872 N.Y.S.2d 27 (1st Dep't 2011)).

The sole basis for plaintiff's retaliation claim is that she was terminated in retaliation for her alleged complaints of religious discrimination that were made in April, 2012, one year prior to her termination in April, 2013.  The alleged protected activity that took place on April 20, 2012, consisted of a single email sent by plaintiff to Ms. Casero and Ms. Kaufman.  Specifically, plaintiff alleges that "plaintiff told Ms. Casero in [the April 20, 2012] e-mail . . . that her asking plaintiff to work on Saturday was inappropriate."  (*See* Compl. ¶165 and email attached as Ex. 2 to Updike Decl.)  The alleged adverse employment action, the termination of plaintiff's employment, took place on April 24, 2013, more than one year later.  (*See* Compl. ¶96.)

The time elapsed between plaintiff's April 20, 2012 email and her termination from employment – the passage of one year – does not satisfy the requirement for temporal proximity and, therefore, is insufficient to establish a causal connection.  To state a claim for retaliation, a plaintiff must prove a causal connection between the alleged change in his working conditions and his engagement in protected activity.  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998), *abrogated on other grounds*.  Such a causal nexus requires temporal proximity between the alleged protected activity and the alleged retaliation.  For example, the Supreme Court ruled that temporal proximity cannot support an inference of causal connection unless the alleged retaliatory action and the protected activity were "very close" in time.  *See Burkybile v. Bd. of Educ. of Hastings-on-Hudson*, 411 F.3d 306, 314 (2d Cir. 2005) (passage of one year between allegedly protected activity and retaliatory conduct established employer's good faith).

This Court recently has held that a period of three to six months is insufficient to establish a

causal connection. *Chukwueze*, 891 F. Supp. 2d 443, 457 (S.D.N.Y. 2012).  In that action, the

court concluded that the *Chukwueze* plaintiff had "not alleged facts that 'nudge[]' his claim of

retaliation . . . 'across the line from conceivable to plausible," so it 'must be dismissed.'"  *Id.*

(quoting *Twombly*, 550 U.S. at 570).  *See also Sank v. City Univ. of New York*, 2011 U.S. Dist.

LEXIS 125016, at *28-29 (S.D.N.Y. Oct. 28, 2011); *Hollander v. American Cyanamid Co.*, 895

F.2d 80, 85-86 (2d Cir. 1990); *Hunt v. Klein*, 2011 U.S. Dist. LEXIS 14918, at *14 (S.D.N.Y.

Feb. 10, 2011); *Murray v. Visiting Nurses Servs. Of N.Y.*, 528 F. Supp. 2d  257, 275 (S.D.N.Y.

2007).

     For all of these reasons, plaintiff's retaliation claim based on alleged complaints of

religious discrimination should be dismissed.

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR REVERSE AGE DISCRIMINATION

     In contrast to federal law,[24] the employment protections of the NYSHRL apply to all

employees over age eighteen, *see* N.Y. Exec. Law § 296(3-a)(a), and the employment protections

of the NYCHRL have no age limitation.  *See* N.Y. City Admin. Code § 8-107(1).  Age

discrimination claims under the NYSHRL and NYCHRL are analyzed using the familiar

McDonnell Douglas burden-shifting framework.  *See, e.g.*, *Abrams v. Bloomberg*, 2012 U.S.

Dist. LEXIS 89564, at *13-14 (S.D.N.Y. Mar. 27, 2012); *Bennett v. Health Management Svs.,*

*Inc.*, 92 A.D.3d 29, 936 N.Y.S.2d 112 (1st Dep't 2011).  To establish a *prima facie* case of age

discrimination, a plaintiff must show that (1) she was within a protected age group; (2) she was

qualified for the position; (3) she was subject to an adverse employment decision; and (4) the

---

[24] Plaintiff has not alleged, nor can she allege, an age discrimination claim under federal law, which limits the protected age group to persons over 40.  *See* 29 U.S.C. § 631(a).

challenged employment action took place under circumstances giving rise to an inference of discrimination.  *Abrams*, 2012 U.S. Dist. LEXIS 89564, at *12 (citing *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001)).  Plaintiff has failed to plead facts sufficient to satisfy the fourth element of the claim *i.e.* that the termination of her employment occurred under circumstances giving rise to an inference of discrimination because of plaintiff's young age.  *See McDonnell-Douglas Corp.*, 411 U.S. 792 at 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668.

### A. The Complaint Fails To State A Claim For Reverse Age Discrimination Under The NYSHRL And NYCHRL.

Plaintiff has failed to allege facts to state a plausible *prima facie* case of discrimination because there are no circumstances alleged in her Complaint that can fairly be characterized as giving rise to an inference of age discrimination.  Although "there is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision . . . ." *Vinokur v. Sovereign Bank,* 701 F. Supp. 2d 276, 291 (E.D.N.Y. 2010) (internal quotation marks omitted), plaintiff "must point to facts that suggest" that the adverse action was motivated, at least in part, by discriminatory animus.  *Kalsi v. N.Y.C. Transit Auth.,* 62 F. Supp. 2d 745, 753 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999); *see also Vinokur,* 701 F. Supp. 2d at 291 ("A plaintiff cannot sustain an action based on her conclusory allegations of discrimination.") (internal quotation marks and brackets omitted)).

Plaintiff alleges in a wholly conclusory manner that she was terminated because of her "young age."  (Compl. ¶205.)  Absent plausible allegations suggesting that her "young age" played a role in the termination decision, plaintiff simply will be unable to establish a *prima facie* case.

Although plaintiff has asserted her belief that she was terminated because of her age, "[a]

41

plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." *Whethers v. Nassau Health Care Corp.*, 2013 U.S. Dist. LEXIS 94828, at *28 (E.D.N.Y. July 8, 2013) (internal citations omitted)); *see also Potash v. Fla. Union Free Sch. Dist.*, 2013 U.S. Dist. LEXIS 133512, at *77 (S.D.N.Y. Sept. 18, 2013); *D'Cunha v. New York Hosp. Med. Ctr. of Queens*, 2006 U.S. Dist. LEXIS 11929, at *20 (E.D.N.Y. Mar. 3, 2006) .

The only allegations that arguably relate to her age in fact do not relate or refer to her age at all: they all center on plaintiff's level of experience as an attorney; that she was hired after finishing law school and allegedly doing a one year clerkship at a law firm in Israel; that, at the time of the termination of her employment, plaintiff was a fifth year attorney (Compl. ¶¶32, 51, 205, 208); and that (1) Mr. Updike would "tell plaintiff and others" that plaintiff was a "first year associate" or "second year associate" when she, in fact, had more years of experience (Compl. ¶208); (2) Ms. Kaufman would treat plaintiff more "as a paralegal with a strictly administrative role" in front of clients and other attorneys (Compl. ¶210); (3) Ms. Kaufman would often not announce plaintiff's presence on conference calls (Compl. ¶210); (4) on one occasion, when Ms. Kaufman asked plaintiff to accompany her on a court appearance, Ms. Kaufman did not introduce plaintiff to the other attorneys working on the case (Compl. ¶210); (5) Ms. Kaufman would limit plaintiff's interactions with clients or would generally not allow plaintiff to meet with clients (Compl. ¶¶211, 213); (6) Ms. Kaufman would ignore plaintiff's emails (Compl. ¶212); (7) in March, 2013, Ms. Nygaard, Schoeman's office manager, "chose to ignore emails" sent to her by plaintiff in which plaintiff requested that the heat be turned off or lowered (Compl. ¶215); (8) Ms. Law, plaintiff's former secretary, would ignore plaintiff's work assignments and hardly performed any work at all for plaintiff (Compl. ¶216); (9) plaintiff was asked to take the

subway with Mr. Updike when traveling to court and at times was asked to carry a "heavy load

of documents" (Compl. ¶221); and (9) Schoeman did not feature plaintiff in any of the photos

appearing on Schoeman's website (Compl. ¶218).

Courts have held that employment decisions based on level or years of experience or

seniority do not constitute age discrimination.  *See, e.g.*, *Hazen Paper Co. v. Biggins*, 507 U.S.

604, 611, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993) (it is "incorrect to say that a decision based

on years of service is necessarily age-biased").

In direct contradiction to her claim of reverse age discrimination, plaintiff alleges that

because of her "exceptional skills as an attorney," plaintiff "was given significant responsibilities

during her time at Schoeman."  (Compl. ¶33.)  Plaintiff alleges that "in addition to drafting

motions for high profile litigation matters . . . plaintiff routinely appeared in court alone to argue

motions and attend court conferences, without the accompaniment of any other Schoeman

partner or attorney."  (*Id*.)  Such assignments and responsibilities allegedly given to plaintiff (and

therefore to be taken as true for purposes of this motion), belie her claims that she was

discriminated against based on her "young age."

Indeed, plaintiff's claims do not give rise to an inference of discriminatory intent because

there are no allegations from which such an inference can be made.  Accordingly, the Fifteenth,

Sixteenth, Seventeenth, Nineteenth, Twentieth, Twenty-First, Thirtieth, Thirty-First, Thirty

Second, Thirty-Fourth, Thirty-Fifth, Thirty-Sixth, Thirty-Seventh, Thirty-Eighth, Thirty-Ninth,

and Fortieth Causes of Action in the Complaint do not give rise to an inference of age

discrimination and the age discrimination claim should be dismissed.

**B.  The Complaint Fails To State A Claim For Aiding And Abetting Reverse Age**
**Discrimination Under The NYSHRL And NYCHRL.**

For the reasons set forth above, plaintiff has failed to state a claim for age discrimination.

43

Therefore, plaintiff cannot sustain claims against defendants Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, Andrea Ascher, Veronica Law[25] and Cindy Nygaard[26] (Twenty-Fourth through Twenty-Nine, and Forty-First Causes of action) for aiding and abetting age discrimination under the NYSHRL or the NYCHRL and, therefore, those claims should be dismissed.

The claims against Ms. Stern, Ms. Kaufman, Mr. Updike, Ms. Ascher, and Ms. Nygaard also should be dismissed because "individuals cannot be held liable under *Executive Law § 296(6)* for aiding and abetting their own violations of the Human Rights Law." *Strauss*, 26 A.D.3d at 73 and cases cited at pp. 37, *supra*.  Because plaintiff has alleged age discrimination claims the NYSHRL and the NYCHRL against Ms. Stern, Ms. Kaufman, Mr. Updike, Ms. Ascher, and Ms. Nygaard individually, they cannot also be liable for discrimination under an

---

[25] The factual allegations in the Complaint are wholly insufficient to state any plausible claim against Ms. Law, a secretary at Schoeman.  The only claims brought against Ms. Law are for aiding and abetting age discrimination (Twenty-Ninth and Forty-First Causes of Action).  Plaintiff alleges that "upon information and belief" Ms. Law put the Termination Letter in the mail to plaintiff via Federal Express (Compl. ¶101) and that "throughout her employment . . . Ms. Law would routinely ignore requests made . . . by plaintiff and treat plaintiff as an inferior whose requests [she] did not need to pay any attention to" (Compl. ¶¶214, 216).  It is clear on the face of the complaint that these minimal allegations fail to state a plausible claim against Ms. Law and as such, the claims against her should be dismissed.

[26] The factual allegations in the Complaint are wholly insufficient to state any plausible claim against Ms. Nygaard, Schoeman's office manager.  Plaintiff purports to bring claims against Cindy Nygaard for age discrimination, aiding and abetting age discrimination, religious discrimination, aiding and abetting religious discrimination, and defamation (libel and slander) (Seventh, Twenty-Eighth, Thirty-Ninth, Forty-First, Fifty-First, Fifty-Eighth, and Sixty-First Causes of Action).  The only allegations directed at Ms. Nygaard are as follows: (1) that Ms. Nygaard knew that plaintiff did not eat non-kosher pizza yet when pizza was ordered for employees at Schoeman not once did Schoeman order kosher pizza or reimburse plaintiff for the lunches plaintiff ordered herself (Compl. ¶169); (2) that "throughout her employment . . . Ms. Nygaard would routinely ignore requests made . . . by plaintiff and treat plaintiff as an inferior whose requests [she] did not need to pay any attention to" and that by way of example Ms. Nygaard ignored emails sent by plaintiff in March 2013 "complaining of the unbearable heat in the office and requesting that the heat be turned off or lowered" (Compl. ¶¶214, 215); (3) after plaintiff complained to Ms. Nygaard about her secretary, Ms. Law, Ms. Nygaard "did not take the necessary action to ensure that Veronica Law would begin to perform the work assignments assigned to her by plaintiff" (Compl. ¶216); and that "upon information and belief" Ms. Nygaard "played a role" in Schoeman's decision to terminate her employment (Compl. ¶853).  The claims relating to alleged defamatory statements made by Ms. Nygaard are addressed in Section I.B., *supra*.  The sparse allegations in the Complaint relating to Ms. Nygaard do not rise to the level of a plausible claim against her.  The claims against Ms. Nygaard should be dismissed.

aider and abettor theory of liability.

## VII.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RETALIATION BASED ON ALLEGED COMPLAINTS OF AGE DISCRIMINATION

Plaintiff has failed to allege a plausible claim for retaliation for alleged complaints of reverse-age discrimination under the NYSHRL or the NYCHRL (the Eighteenth, Twenty-Second, Thirty-Third and Forty-Second Causes of Action), because there are no plausible allegations to support that plaintiff engaged in protected activity or that there is a causal connection between any alleged protected activity and the termination of her employment.

To state a *prima facie* case for retaliation based on a complaint of employment discrimination, plaintiff must plead facts showing that (1) she was engaged in a protected activity; (2) defendants were aware of this activity; (3) plaintiff suffered an adverse action that would be reasonably likely to deter a person from engaging in protected activity; and (4) a causal connection exists between the protected activity and the adverse action.  *See Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 71, 872 N.Y.S.2d 27, 34 (1st Dep't 2011); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).  "The elements of a retaliation claim under the NYCHRL are identical [to the NYSHRL], 'except that the plaintiff need not prove any "adverse" employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity.'"  *Olorode v. Streamingedge, Inc.*, 11 Civ. 6934 (GBD) (AJP), 2014 U.S. Dist. LEXIS 59421, at *66-67 (S.D.N.Y. Apr. 29, 2014) (internal citations omitted).

Plaintiff alleges only generally that she "opposed the discrimination on the basis of her age" and that she "complained throughout her employment at Schoeman that she was improperly referred to as being far more junior than she actually was."  (Compl. ¶¶778, 779.)  The Complaint is devoid of allegations  as to when she made these alleged complaints, to whom she

made these alleged complaints, which defendants, if any, were aware of such complaints, and what the complaints consisted of (i.e. were they enough to put any defendant on notice that she was complaining of reverse age discrimination).  A vague and conclusory assertion that plaintiff "opposed the discrimination on the basis of her age" or that she complained "throughout her employment" is insufficient to sustain a retaliation claim.  *See, e.g.*, *Herling v. New York City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 56442, at *24 (E.D.N.Y. Apr. 23, 2014) (holding that plaintiff's allegation that he "regularly complained of unlawful discrimination and retaliation at the hands of Defendant Gray" is too vague and conclusory to constitute protected activity "as plaintiff fails to specify when he lodged these complaints, [and] who he complained to").

Second, while plaintiff suggests that she was retaliated against for allegedly making these generalized complaints about her young age, she fails to allege a nexus between any protected conduct and her termination in April, 2013.  *See Barroso v. Office of General Counsel*, 2013 U.S. Dist. LEXIS 112701 (E.D.N.Y. Aug. 9, 2013) (dismissing retaliation claim where conclusory statements fails to establish "the requisite causal connection to an adverse action"); *see also Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 461-62 (S.D.N.Y. 2007) *Anand v. New York State Div. of Hous. & Cmty. Ren.*, 2013 U.S. Dist. LEXIS 126925, at *31 (S.D.N.Y. Aug. 29, 2013).

For both of these reasons, plaintiff's claims for retaliation based on alleged complaints about discrimination based on her young age should be dismissed as a matter of law.

## VIII.   THE COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF NEW YORK LABOR LAWS SECTIONS 200, 241 OR 740

### A.   The Complaint Fails to State a Claim for Violations of Sections 200 and 241 of the New York Labor Laws.

Plaintiff purports to bring claims against Schoeman and the Schoeman Partners for

violations of New York Labor Law Sections 200 and 241 (Sixty-Eighth, Sixty-Ninth, and

Ninety-First Causes of Action).  Because plaintiff does not allege, because she cannot, that either

Schoeman or the Schoeman Partners are contractors, owners or agents of a contractor or owner

of the office space located at 551 Fifth Avenue on which construction was performed, neither the

Schoeman Firm nor the Schoeman Partners may be held liable under these statutes.  Further,

plaintiff does not have standing to bring an action under Section 241.

   1.   **Schoeman is Not an Owner or Contractor of the Office Space Where the
        Construction Work Was Performed, and Therefore Cannot be Held Liable
        under New York Labor Law §200 or 241 Claim.**

Labor Law Section 200 requires certain entities to provide safe workplaces: "so

constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate

protection to the lives, health and safety of all persons employed therein or lawfully frequenting

such places."  Labor Law § 200.  Section 200 "applies to owners, contractors, or their agents

who exercise control or supervision over the work, or either created the allegedly dangerous

condition or had actual or constructive notice of it."  *Kim v. Herbert Construction Co., Inc.*, 275

A.D.2d 709, 712 (2d Dep't 2000).

Similarly, Section 241 of the New York Labor Law entitled "Construction, Evacuation and

Demolition Work" provides that:

> All contractors and owners and their agents, except owners of one
> and two-family dwellings who contract for but do not direct or
> control the work, when constructing or demolishing buildings or
> doing any excavating in connection therewith, shall comply with
> the following requirements: . . . .

N.Y. Labor Law §241 (emphasis added).

This statute places a duty on "contractors and owners and their agents."  *See Ferluckaj v.

Goldman Sachs & Co.,* 12 N.Y.3d 316 (2009).  It says nothing about tenants or lessees.  Plaintiff

does not allege that Schoeman is the owner or contractor of the office space located at 551 Fifth

Avenue.  Rather, plaintiff alleges that Schoeman leased the office space located at 551 Fifth

Avenue (Compl. ¶51) and is a tenant of the office space, and as such cannot be held liable under

these statutes.

Although it has been held that lessees who hire a contractor may be construed as

"owners" within the meaning of the statute, *see, e.g.*, *Frierson v Concourse Plaza Assocs.,* 189

A.D.2d 609, 611, 592 N.Y.S.2d 309 (1st Dep't 1993), plaintiff has failed to properly allege those

facts as to Schoeman.  First, plaintiff's allegation that "upon information and belief, Schoeman

contracted for the construction and renovation work" is insufficient to state a plausible claim

where there are no statements of fact upon which the belief is founded fails to state a plausible

claim.  *See, e.g.*, *Munoz-Nagel v. Guess, Inc.*, 2013 WL 1809772, at *7 (S.D.N.Y. April 30,

2013) (granting motion to dismiss and holding that "[a]lthough Plaintiff is entitled to plead facts

upon information and belief, she has failed to accompany her allegations . . . with a 'statement of

the facts upon which the belief is founded'"); *Williams v. Calderoni*, 2012 WL 691832, at *7

(S.D.N.Y. Mar. 1, 2012) (allegations based upon "information and belief" insufficient where

plaintiff pointed to no information that would allow his allegations to be considered as anything

more than speculative claims or conclusory assertions).

Further, plaintiff's allegation "upon information and belief" is contradicted by the

Agreement Between Owner and Contractor which was entered into between Jeffrey Management

Corp. and Interior Construction Corporation for the construction and renovation work to be

performed on the 12 Floor of 551 Fifth Avenue.  *See* Ex. 6 to Updike Aff.

Because there are no allegations that Schoeman is an owner or contractor of 551 Fifth

Avenue, or an agent thereof, and there is no plausible claim that Schoeman contracted for the

construction work, all claims against Schoeman for violations of Sections 200 or 241 must be

dismissed.  *See, e.g.*, *Guzman v. L.M.P. Realty Corp.*, 262 A.D.2d 99, (1st Dep't 1999)

(dismissing complaint alleging violation of Section 240 of Labor Law claim against lessees of

property); *Mangiameli v Galante*, 171 App. Div. 2d 162, 574 N.Y.S.2d 842 (3d Dep't 1991)

(homeowner's association not liable under N.Y. Labor Law Sections 240 or 241 because the

association had no ownership interest in the property).

  **2.   Plaintiff Does Not Have Standing To Bring A New York Labor Law §241 Claim.**

  Plaintiff's Sixty-Ninth and Ninety-First Causes of Action must be dismissed with

prejudice because plaintiff does not have the standing to bring such claims because plaintiff does

not and cannot allege that she took part in any work covered by New York State Labor Law

§241.

  In *Mordkofsky v. V.C.V. Development Corp.*, 563 N.E.2d 263, 265 (1990) the New York

State Court of Appeals held that: "in order to invoke the protections afforded by the labor law

and to come within the special class for whose benefit liability is imposed upon contractors,

owners and their agents… a plaintiff must demonstrate that he was both permitted or suffered to

work on a building or structure and that he was hired by someone, be it owner, contractor or their

agent." *Mordkofsy*, 563 N.E.2d at 265 (quoting *Whelen v. Warwick Valley Civic and Social Club*,

393 N.E.2d 1032 (1979) (emphasis added).  Plaintiff did not perform any construction work on

Schoeman's office and was not hired by the owner of the building or any contractor.  Therefore,

Plaintiff does not have standing to allege a cause of action against for an alleged violation of

New York State Labor Law §241 and Plaintiff's Sixty-Ninth Cause of Action must be dismissed

in its entirety with prejudice.

  **B.  The Complaint Fails To Set Forth A Claim For Retaliation Under Section 740 Of
      The New York Labor Laws.**

  Section 740 of the New York Labor Law provides, in relevant part that:

> An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following:
>
> (a) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety . . .

N.Y. Labor law §740(2).  In order to maintain an action under Section 740, a plaintiff must: "'establish a violation of a law, rule or regulation, which violation must be actual and not merely possible,'" and (2) demonstrate "'that the lack of compliance presents a substantial and specific danger to the public health or safety.'"  *Frank v. Walgreens Col*, 2011 U.S. Dist. LEXIS 109003, at *12 (E.D.N.Y. Sept. 26, 2011) (quoting *Connolly v. Harry Macklowe Real Estate Co.*, 161 A.D.2d 520 (1st Dep't 1990)); *see also Perez v. Consol. Edison Corp. of NY*, 2006 U.S. Dist. LEXIS 67459, at *46 (S.D.N.Y. Sept. 20, 2006).  Plaintiff has failed to meet either of those requirements and has failed to plead that the alleged activity she reported to OSHA constitutes an actual violation of law or a substantial and specific danger to public safety.

Although plaintiff alleges in the Sixty-Seventh Cause of Action that Schoeman "compelled" its employees to work in its new office space "in which there were heavy fumes and dust emitted containing toxic substances," she does not deny that all of Schoeman's employees except her occupied the newly renovated space from April 5, 2013 to the present.  (Compl. ¶1051.)  Plaintiff also attaches to the Complaint a report prepared by Creative Environment Solutions Corp. ("CES"), dated April 19, 2013.  (*See* Compl. Ex. B.)  CES is an environmental testing company that performed air quality tests of Schoeman's offices allegedly at the request of Schoeman, French Partners, and The Feil Organization.  (Compl. ¶¶82, 86.)   CES concluded in its report that "[t]he laboratory analysis of the five air samples collected [in the Schoeman office space] were below the regulatory limits as established by the USEPA, NYDOL and NYCDEP of

0.01 f/cc." (*See* Compl. Ex. B.)  Plaintiff also attached to her complaint OSHA's letter to her in

which they concluded, based on CES's conclusions regarding the office's air quality, that the

investigation of her OSHA workplace complaint should be closed.  (*See* Compl. Ex. C.)  Plaintiff

also alleges generally that plaintiff's office space was "not so arranged, operated, and conducted

as to provide reasonable and adequate protection and safety to Schoeman's employees."

(Compl. ¶1053.)   None of these allegations—alone or together—pleads a sufficient claim under

Labor Law §740.

### 1.   The Complaint Fails To Allege An Activity, Policy Or Practice By Schoeman That Constitutes An Actual Violation Of Law, Rule Or Regulation.

To state a claim under New York Labor Law Section 740, the activity, policy or practice,

reported must be an *actual* violation of law, rule or regulation.  In order for an action to be

maintained, the employee must "establish a violation of a law, rule or regulation, which violation

must be actual and not merely possible, and that the lack of compliance presents a substantial

and specific danger to the public health or safety."  *Connolly v. Harry Macklowe Real Estate*

*Co., Inc.*, 161 A.D.2d 520, 522, 555 N.Y.S.2d 790 (1st Dep't 1990) (internal citations omitted).

A plaintiff's reasonable belief that the behavior was dangerous is not sufficient.  *Bordell v.*

*General Electric Co.*, 88 N.Y.2d 869, 644 N.Y.S.2d 912, 913 (1996) ("the language and

legislative history of Labor Law § 740 militate in favor of a construction of that section requiring

proof of an actual violation of law to sustain a cause of action"); *see also Nadkarni v. N. Shore-*

*Long Island Jewish Health Sys.*, 21 A.D.3d 354, 355 (2d Dep't 2005) ("Labor Law § 740

requires a plaintiff to allege an actual violation of a law, rule, or regulation. An employee's good

faith, reasonable belief that a violation occurred is insufficient.")[27]; *Capobianco v. American*

---

[27] In *Nadkarni*, the plaintiff refused to participate in a plan that allowed volunteers to help prepare meals and serve meals for patients.  21 A.D.3d at 354-55.  She believed that this practice violated the Health Care Financing

*Stock Exchange*, 233 A.D.2d 189, 649 N.Y.S.2d 688(1st Dep't 1996); *Dougherty v. Mem'l Sloan-Kettering Cancer Ctr.*, 2002 U.S. Dist. LEXIS 13216, at *11-12 (S.D.N.Y. Jul. 22, 2002).

The general and unsupported allegations set forth by plaintiff in support of this claim, along with the exhibits attached to plaintiff's complaint, in and of themselves show that there was no actual violation of law, rule or regulation as required to sustain a claim under Section 740.  At the very least, they demonstrate that plaintiff has alleged nothing more than *plaintiff's belief* that a violation occurred, which is wholly insufficient to maintain a claim for violation of Section 740.  On this basis alone, the Sixty-Seventh Cause of Action should be dismissed.

### 2. The Complaint Fails To Allege An Activity, Policy Or Practice By Schoeman That Presented A Substantial And Specific Danger To Public Health Or Safety.

Plaintiff has failed to allege that the purported violation of law "created or presented" a "substantial and specific danger to public health or safety." N.Y. Labor Law §740(2)(a).  Even if plaintiff had alleged this required element, this element of Section 740 "has generally been narrowly construed to apply to the public at large." *Frank*, 2011 U.S. Dist. LEXIS 109003, at *14 (internal quotation omitted); *see also Tucker v. New York City*, 2007 U.S. Dist. LEXIS 77879, at *9 (S.D.N.Y. Oct. 17, 2007).

The possibility that the work environment could have posed a danger to an employee's health does not create a substantial and specific danger to the public health or safety within the meaning of Section 740.  The statute "clearly envisions a certain quantum of dangerous activity before its remedies are implicated." *Frank*, 2011 U.S. Dist. LEXIS 109003, at *15 (quoting *Peace v. KRNH, Inc.*, 12 A.D.3d 914, 785 N.Y.S.2d 547, 549 (3d Dep't 2004).  Thus, any claim

---

Administration Regulation §483.35 that required hospitals to provide sufficient support personnel to provide residents with nourishing, well balanced meals.  *Id.*  Her concerns, solely based upon her belief that utilizing volunteers would create a substantial and specific danger to the public health or safety, were an insufficient ground for a § 740 claim.  *Id.*  The court held that an employee's good faith, reasonable belief that a violation occurred does not invoke § 740 protection.  *Id.*

that alleged wrongdoing would create a substantial and specific danger to the public health or safety must be based on more than "mere speculation." *Cotrone v. Consol. Edison Co.*, 50 A.D.3d 354, 856 N.Y.S.3d 48 (1st Dep't 2008) (finding that although defendant's alleged conduct, namely two "isolated incidents" of tanker trucks with hazardous materials being left unattended on a public street, violated federal regulations, the plaintiff's claim that such conduct created a substantial and specific danger to the public health and safety was "based on mere speculation," particularly where "these incidents led to no adverse consequences").

Because plaintiff's claim that defendant's conduct created a substantial and specific danger to the public health or safety is based solely on speculation, she cannot sustain a cause of action under Section 740.

## IX.  THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENCE

In order to establish a cause of action in negligence, plaintiff must allege "1) the existence of a duty flowing from defendant to plaintiff; 2) a breach of this duty; 3) a reasonably close causal connection between the contact and the resulting injury; and 4) actual loss, harm or damage." *Febesh v. Elcejay Inn Corp.*, 157 A.D.2d 102, 104 (1st Dep't 1990).  Plaintiff's Ninty-Sixth Cause of Action against Schoeman, the Schoeman Partners, and Ms. Nygaard[28] must be dismissed because plaintiff has failed to allege that these defendants owed plaintiff a duty of care, breached said duty if one existed, that the alleged breach was the proximate cause of plaintiff's termination and actual loss, harm or damage.

---

[28] It should be noted that although plaintiff asserts a negligence claim against Ms. Nygaard, plaintiff fails to direct any allegations towards Ms. Nygaard in relation to any air quality tests performed at Schoeman's office or the submission of the results of such tests to OSHA.

**A. Plaintiff Does not Allege that Defendants Owed Her Nor Has She Plausibly Alleged a Breach of any Duty.**

Plaintiff fails to plausibly allege that the Schoeman defendants owe plaintiff any duty of care or that any alleged duty of care was breached.  Plaintiff alleges that the Schoeman defendants "owed plaintiff a duty of care in arranging air quality tests . . . after plaintiff experienced symptoms of heavy coughing and nausea after breathing in the toxic air on the Twelfth Floor of 551 Fifth Avenue."  Plaintiff alleges that "upon information and belief" Schoeman arranged for the air quality tests" to be performed at Schoeman's office.

Plaintiff appears to allege that the breach of a duty owed to her by Schoeman occurred when Schoeman "submit[ed] tests to OSHA that purported to conclude that the air at Schoeman was safe without including tests of plaintiff's personal office."  (Compl. ¶1271.)  However, plaintiff fails to explain why or how the submission of results of air quality testing, attached to plaintiff's complaint as Exhibit B, to OSHA is a breach of duty of care to her.  The April 19, 2013 Asbestos Ambient Air Sampling test conducted by Defendant CES conclusively established that "the laboratory analysis of each of the five (5) air samples collected were below the regulatory limits as established by the USEPA, NYSDOL and NYCDEP of 0.01 f/cc." (*Id*.) Plaintiff's failure to allege how the submission of air quality tests could constitute a breach of duty of care owed to her by Schoeman is fatal to her claim.

**B. Plaintiff Cannot Establish a Casual Link Between Schoeman's Alleged Negligent Acts and Any Damages.**

Any allegation of a breach of duty-- i.e. that Schoeman "submit[ed] tests to OSHA that purported to conclude that the air at Schoeman was safe without including tests of plaintiff's personal office"--does not plausibly establish any causal link between this act and any of plaintiff alleged damages.  To the extent that plaintiff alleges that "as a direct result of [Schoeman's]

actions, OSHA made a determination that it felt that plaintiff's workplace complaint against Schoeman could be closed and immediately thereafter, plaintiff was terminated" (Compl. ¶1273), any allegation that she was terminated because of air quality samples submitted to OSHA is not plausible.  Moreover, plaintiff's allegations are directly contradicted and conclusively disproved by the Termination Letter, Exhibit D.

### C. Air Quality Tests Submitted to OSHA Were Not the Proximate Cause of Plaintiff's Termination.

The alleged acts by Schoeman in submitting the air quality test results to OSHA were not the proximate cause of any damage to plaintiff. "If a negligent act be the reasonable and proximate cause of an injury that is, if the plaintiff's injury is traceable to the defendant's negligence without the intervention of any other independent, legally operative event the injured person is entitled to recover for the harm actually suffered, even though the precise nature and extent of those injuries, as they finally developed, were more severe than could ordinarily have been foreseen." *Poplar v. Bourjois, Inc.*, 80 N.E.2d 334, 336-37 (1948), *overruled on other grounds*.  Here, plaintiff alleges not that the submission of the test results caused her termination but, rather, that it led OSHA to wrongfully concluding that its workplace investigation could be closed.  Aside from being a disappointment to her, OSHA's closing of its workplace investigation caused no injury whatever to plaintiff.  As for whether OSHA's conclusion was erroneous, it spent a year investigating plaintiff's claims for retaliatory termination before concluding that "the case can be closed on the grounds that the hazardous conditions have been corrected (or no longer exist)."  (*See* Compl. Ex. C.)  Plaintiff's negligence claim seeks damages for emotional stress and compensatory damages resulting from her termination.  There cannot possibly be attributed to Schoeman's having submitted to OSHA in response to plaintiff's anonymous workplace complaint the results of air quality tests conducted by others.

## <u>CONCLUSION</u>

For the foregoing reasons, the Schoeman defendants' motion to dismiss should be granted in its entirety and plaintiff's complaint against the Schoeman defendants should be dismissed in its entirety.

Dated: New York, New York
       May 9, 2014

PROSKAUER ROSE LLP


By: /s Bettina B. Plevan                    
       Bettina B. Plevan
       Gregory J. Couillou
Eleven Times Square
New York, NY 10036-8299
(212) 969-3065
*bplevan@proskauer.com*
*gcouillou@proskauer.com*
*Attorney for Defendants*
*Schoeman Updike Kaufman Stern & Ascher LLP,*
*Mindy H. Stern, Beth L. Kaufman, Charles B.*
*Updike, Andrea D. Ascher, Susan S. Casero,*
*Cindy Nygaard, and Veronica Law*