Ronit D. Appel, Esq. (RA 8950)
322 West 78th Street
New York, NY 10024
(347) 387-6100
ronitdappel@gmail.com
*Plaintiff and Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x
RONIT D. APPEL,

Plaintiff,

-against-                              14-Civ-2065 (AJN)(DF)

SCHOEMAN UPDIKE KAUFMAN STERN &
ASCHER LLP, MINDY H. STERN, BETH L.                    ECF CASE
KAUFMAN, CHARLES B. UPDIKE, ANDREA D.
ASCHER, NANCY J. MERTZEL, SUSAN S. CASERO,
CINDY NYGAARD, VERONICA LAW, LAURIE
ZELIGSON, THE ZELIGSON FIRM, PAUL E.
BREENE, REED SMITH LLP, MADISON 96
ASSOCIATES, LLC, STUART J. BOESKY, JAMISON
WEINER, FRENCH PARTNERS, LLC, THE FEIL
ORGANIZATION, INC., JEFFREY MANAGEMENT
CORP., JEFFREY FEIL, AVANT-GARDE GROUP, INC.,
SERGEI GOLOUBENKO, JOHN FRANCIS
BORRELLI ARCHITECT, P.C., JOHN FRANCIS
BORRELLI, INTERIOR CONSTRUCTION CORP.,
JOSEPH BRUZZESE, CREATIVE ENVIRONMENT
SOLUTIONS CORP., IVANE CHIKHLADZE,
MICHAEL J. RATTACASA, and H & B
CONSTRUCTION SERVICES, INC.,

Defendants.

-----------------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
RECOVER ATTORNEYS' FEES AND COSTS OF AVANT-GARDE GROUP, INC. AND
<u>SERGEI GOLOUBENKO</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………ii - iii

PRELIMINARY STATEMENT……………………………………………….....…1 - 8

ARGUMENT

     I.     THERE IS NO BASIS FOR AN AWARD OF SANCTIONS………………8 - 11

     II.     NEGLIGENCE…………………………………………………...11 - 21

          A.  The AGG Defendants Owed Plaintiff a Duty of Care…………………..11 - 17

             i.    The AGG Defendants Created and Exacerbated a Risk
                 of Harm to Plaintiff…………………………………………………12 - 15

             ii.   Plaintiff Detrimentally Relied Upon the AGG Defendants'
                 Performance of Their Contractual Obligations…………………...15 - 17

          B.  The AGG Defendants Breached Their Duty of Care………………….........17

          C.  The Breach of Duty Proximately Caused Plaintiff's Injuries………....…17 - 20

          D.  The AGG Defendants are Liable for Plaintiff's Economic Harm………20 - 21

     III.    BREACH OF FIDUCIARY DUTY…………………………………..21 - 24

     IV.    AIDING AND ABETTING THE BREACH OF A
          FIDUCIARY DUTY.................................................................24 - 25

CONCLUSION………………………………………………………………..25

# TABLE OF AUTHORITIES

*Court Decisions*                                                                                           *Page(s)*

*Bauerlein v. Salvation Army*,
    74 AD3d 851 (2d Dep't 2010)………………………………………………………...14

*Briarpatch Ltd., L.P. v. Briarpatch Film Corp.*,
    2013 NY Slip Op 31263(U) (Sup Ct. NY Co. 2013)…………………………………22

*Campbell v. Barbaro Elec. Co., Inc.*,
    116 AD3d 728 (2d Dep't 2014)……………………………………………………….12

*Computech Int'l, Inc. v. Compaq Computer Corp.*,
    2004 U.S. Dist. LEXIS 9120 (SDNY May 21, 2004)……………….…………….20, 21

*Deangelis v. Corzine (In re MF Global Holdings Inv. Litig.)*,
    2014 U.S. Dist. LEXIS 17205 (SDNY Feb. 11, 2014)…………………………………20

*Derdiarian v. Felix Contr. Corp.*,
    51 N.Y.2d 308, 434 N.Y.S.2d 166 (1980)……………………………………………19

*DiVetri v. ABM Janitorial Serv., Inc.*,
    2014 N.Y. App. Div. LEXIS 5391 (1st Dep't 2014)………………………………….12

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
    387 F. Supp. 2d 265 (SDNY 2004)………………………………………...………..21

*Espinal v. Melville Snow Contrs.*,
    98 NY2d 136 (2002)………………………………………………………………….12

*Grunberger v. S & Z Serv. Sta. Inc.*,
    28 Misc 3d 1206(A), 2010 NY Slip Op 51163(U) (Sup Ct.  Kings Co. 2010)…….…..14

*Hydro Invs., Inc. v. Trafalgar Power, Inc.*,
    227 F3d 8 (2d Cir 2000)………………………………………………………………20

*In re Mission Constr. Litig.*,
    2013 U.S. Dist. LEXIS 124926 (SDNY Aug. 30, 2013)………………………........20

*Kim v. Cruz*,
    2009 U.S. Dist. LEXIS 119011 (SDNY Dec. 16, 2009)………………………….…..11

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
    2014 U.S. Dist. LEXIS 44039 (SDNY Mar. 30, 2014)…………………………………21

*Palka v. Servicemaster Management Servs. Corp.*,
    83 NY2d 579 (1994)………………………………………………………..11, 15, 19

*Ravo v. Rogatnick*,
    70 NY2d 305 (1987)………………………………………………………..18

*Stiver v. Good & Fair Carting & Moving, Inc.*,
    9 N.Y3d 253 (2007)………………………………………………………..14

*United States v. Wells Fargo Bank, N.A.*,
    972 F. Supp. 2d 593 (SDNY 2013)………………………………………...21

**<u>Statutes and Rules</u>**                                                                    **<u>Page(s)</u>**

Fed. R. Civ. P. 12(b)(6)………………………………………………………..21

Plaintiff Ronit D. Appel respectfully submits this memorandum of law in opposition to the motion of defendants Avant-Garde Group, Inc. and Sergei Goloubenko (the "AGG Defendants") to recover attorneys' fees and costs.

## PRELIMINARY STATEMENT

This highly improper motion seeking that plaintiff be sanctioned and ordered to pay the AGG Defendants their attorneys' fees and costs is an improper attempt by the AGG Defendants to divert the Court's attention from their grossly unlawful conduct that caused plaintiff severe injury. The motion has no basis in law or fact and was conveniently made before discovery has begun in an attempt to evade discovery, evade criminal prosecution, and hide from the Court the grossly illegal conduct engaged in by the AGG Defendants for their own pecuniary gain and with a complete disregard for the lives and safety of others. The AGG Defendants are no innocent party. Their unlawful actions, constituting gross negligence at best or criminal fraud at worst, directly caused plaintiff's workplace to be an unsafe environment where large quantities of asbestos and other toxic and carcinogenic substances permeated the air. As a direct result of their actions, plaintiff was vindictively terminated and blacklisted for her refusal to come into her unsafe office and for complaining to OSHA and others about the toxic air. Their actions caused plaintiff to breathe in asbestos and other toxic and carcinogenic substances, lose her job, be blacklisted, lose her home, her reputation, and her career. They caused plaintiff's life and dreams to crumble before her eyes. Yet, they shamelessly, with no remorse for their actions that caused plaintiff severe injury, try to convince this Court that this litigation is just a "game" or "contest" for plaintiff. This is no game for plaintiff and no contest. As a result of the horrific actions of the defendants in this action, including the AGG Defendants, plaintiff lost her job and her livelihood, her career and reputation were destroyed, she lost her home, is in severe debt with no income, is

1

unable to secure other employment, and has suffered severe emotional distress. Below is a brief summary of the facts relating to plaintiff's claims against the AGG Defendants. Plaintiff respectfully refers the Court to her Amended Verified Complaint, attached as Exhibit A to her accompanying Declaration, for a full recitation of the facts therein.

In or about July of 2012, the AGG Defendants were retained by plaintiff's employer at the time, Schoeman Updike Kaufman Stern & Ascher LLP ("Schoeman"), and/or by the landlord/managing agent of the French Building, located at 551 Fifth Avenue, to perform an asbestos assessment report (the "Asbestos Report"), to be submitted to the New York City Department of Environmental Protection (the "DEP") for the purpose of determining whether construction work to be performed on the twelfth floor of the French Building, to be occupied by Schoeman, would disturb asbestos. By law, if asbestos was to be disturbed, asbestos abatement was required and no work could commence prior to the completion of asbestos abatement. The Asbestos Report prepared by the AGG Defendants (Exhibit C to plaintiff's amended complaint), which was submitted to the DEP on or about August 4, 2012, stated that asbestos was present in large quantities on the twelfth floor of the French Building, including in 6,000 square feet of drywall plaster walls and ceilings in the antique entrance area on the twelfth floor and east of the antique entrance area, in 1,500 square feet of floor tiles and mastic, and in 480 linear feet of pipe insulation throughout Suite 1210 (the suite to be occupied by Schoeman). It also stated that the antique entrance area was outside the scope of the construction project and that neither the asbestos in the antique entrance area nor the asbestos within the interior of Suite 1210 would be disturbed during the construction. The AGG Defendants are parties to this litigation because, either intentionally or through a gross failure to exercise reasonable care in the performance of their duties, their representations that the asbestos in the antique entrance area and within Suite

1210 would not be disturbed and that the antique entrance area was excluded from the scope of

the construction project were false ones. As discussed herein, their false representations

proximately caused plaintiff to sustain severe damage that they did or should have foreseen.

Though the AGG Defendants were quick to sign a report that stated that no work would

be performed in the antique entrance area where large quantities of asbestos were present and

that stated that neither the asbestos in the antique entrance area nor the asbestos in the interior of

Suite 1210 would be disturbed, they are not so quick to explain what they relied upon in making

those false representations and they are not so quick to explain how they could lawfully represent

that no asbestos would be disturbed during the construction work when the construction plans

themselves, when read in conjunction with  the Asbestos Report, indicated that asbestos would

be disturbed during the construction work (for instance, as discussed in plaintiff's affidavit in

opposition to the motion for summary judgment of John Francis Borrelli Architect, P.C. and

John Francis Borrelli (Dkt. No. 212), the construction plans indicated that the 1,500 square feet

of tiles and mastic that, per the Asbestos Report, contained asbestos, were removed during the

construction work). Nowhere, either in their motion to dismiss plaintiff's amended complaint or

in this motion, do the AGG Defendants address the following crucial questions, which are central

to plaintiff's claims against them, and their failure to do so speaks volumes: 1. what steps, if any,

did the AGG Defendants take to ascertain whether construction work would be performed in the

antique entrance area, which contained asbestos in large quantities, before they signed a report

stating that no work would be performed in the antique entrance area and that no asbestos would

be disturbed; and 2. what steps, if any, did the AGG Defendants take to ascertain whether the

asbestos present within the interior of Suite 1210 would be disturbed during the construction

work? The construction plans themselves, when read in conjunction with the Asbestos Report,

indicated that certain areas containing asbestos, including, but not limited to, 1,500 square feet of checker style floor tiles and mastic, would be renovated and that the asbestos therein would be disturbed. Clearly, if the AGG Defendants performed their duties properly, they could not have represented in their report that no asbestos would be disturbed during the construction work. As the complaint makes clear, the AGG Defendants' statements that the antique entrance area was outside the scope of the construction work and that no asbestos, either in the antique entrance area or within Suite 1210 itself, would be disturbed were false ones and the defendants have provided no explanation, let alone a reasonable one, for their false statements. Instead of addressing these crucial questions, the AGG Defendants repeatedly state that their report was limited to the interior space of Suite 1210 and that the antique entrance area was "expressly excluded from AGG's scope of work." First, the antique entrance area was not excluded from the AGG Defendants' work.  It was explicitly included in their report and they made an explicit material, and false, representation in their report that the antique entrance area was excluded *from the scope of the construction work to be performed* (not from the scope of the report) and that the asbestos contained therein would not be disturbed.  If the antique entrance area was outside the scope of the report, as the AGG Defendants falsely claim, the report would not have listed in great detail the presence of asbestos in the antique entrance area and would not have represented that such asbestos would not be disturbed. Moreover, in Section 8 of the Report, the Report clearly indicated that the construction work included areas in the antique entrance area, as well as within the interior of Suite 1210, where asbestos was present but falsely stated that such asbestos would not be disturbed during the construction work when the asbestos was in fact disturbed. Thus, the AGG Defendants cannot argue that the antique entrance was not included in the report when it clearly was. Moreover, the asbestos that was disturbed was not only located in

the antique entrance area, but was located within the interior of Suite 1210 as well. The AGG Defendants claim that they only did what they were required to do. But, the facts make clear that they did not do what they were required to do. They did not accurately ascertain and report whether asbestos would be disturbed during the construction work. Their statements as to which areas were to be included in the scope of the construction work were false ones as were their statements that no asbestos would be disturbed during the construction work.

The AGG Defendants argue that the Asbestos Report stated that asbestos was merely assumed to be present in the walls and ceilings in the antique entrance area and in the checker style floor tiles and mastic and in the pipe insulation throughout Suite 1210. In fact, the Report, in addition to stating that asbestos was assumed to be present in such areas also expressly stated that asbestos is *present* (not just assumed to be present) in such areas. Initially, Section 8 of the Report specifically states that asbestos is present (not assumed to be present) in 6,000 square feet of plaster and drywall ceilings and walls in the antique entrance area and east of the antique entrance area, in 1,500 square feet of checker style floor tiles and mastic, and in 480 linear feet of pipe insulation throughout Suite 1210. Moreover, the portion of the Asbestos Report labeled Results of Asbestos Building Survey contains two columns; one titled Asbestos Present and one titled Assumed ACM. The AGG Defendants did not merely write Yes under the column titled Assumed ACM. They wrote Yes under the column titled Asbestos Present as well. If they did not know for certain whether asbestos was present in those areas, they should merely have written Yes under the column titled Assumed ACM. Instead, they wrote Yes under the column titled Asbestos Present as well as under the column titled Assumed ACM. Thus, the Report clearly indicates that asbestos was definitely present, not just assumed to be present, in these areas. If this was not the case, there would have been no reason to write Yes under the column titled

Asbestos Present. It would have been sufficient to write Yes under the column titled Assumed ACM. Nowhere does the report state that an investigator who assumes asbestos is present in a certain location should also write Yes under the column titled Asbestos Present rather than just under the column titled Assumed ACM. The defendants' decision to include a notation in the report that asbestos was "assumed" to exist in certain areas was, like many other acts of the defendants in this action, a ruse to hide the defendants' illegal conduct in the hope that the defendants could, if necessary, try to argue that asbestos was merely "assumed" to be present on the twelfth floor. The facts indicate otherwise. Asbestos was not just "assumed" to be present. Asbestos was very much present, and in very large quantities. Moreover, the fact that the report states that if suspected materials are found during the construction, the work shall stop and the asbestos shall be inspected cannot absolve the AGG Defendants of liability for their gross negligence or criminal fraud. The AGG Defendants were obligated to exercise reasonable care in performing their duties and cannot absolve themselves of liability by claiming that others were responsible to stop the work that disturbed asbestos when they themselves caused a permit for the unlawful construction work to be issued. Moreover, if the AGG Defendants' false representations regarding the asbestos were intentionally made, the AGG Defendants knew well that the work would not stop when the asbestos was disturbed.

As a direct result of the AGG Defendants' actions, a permit was issued for the construction work which disturbed asbestos both in the antique entrance area and in the interior of Suite 1210 under the false pretense that no asbestos would be disturbed and the work that disturbed asbestos proceeded, including while plaintiff sat in the area where the asbestos was being disturbed. In addition to disturbing asbestos, the work in the antique entrance area caused tremendous amounts of dust and toxic substances to escape into the air when the very thick walls

and ceilings were broken through. If not for the AGG Defendants' submission of a false report that enabled asbestos-disturbing work to proceed without asbestos abatement, both in the antique entrance area and within Suite 1210, asbestos would not have been disturbed. Moreover, if the report had accurately indicated that asbestos abatement was required, Schoeman and the landlord would very likely not have performed work at all in the antique entrance area because they would not have wanted to incur the very high cost of performing asbestos abatement.

Over the weekend of April 5, 2013, Schoeman moved its employees from its temporary location on the fourteenth floor of the French Building to the twelfth floor of the French Building despite the fact that heavy construction work, including work in the antique entrance area, was still ongoing on the twelfth floor. The air caused plaintiff to experience symptoms of heavy coughing and nausea and plaintiff, who did not want to expose herself to asbestos and other toxic substances in the air at Schoeman and who received advice from her father, a highly-respected physician in Manhattan, not to expose herself to the unsafe air at Schoeman, insisted on working from home until the construction work was complete. After Schoeman refused to allow plaintiff to work from home, plaintiff filed a work safety complaint with OSHA. In response to plaintiff's OSHA work safety complaint, Schoeman submitted air tests which it falsely claimed showed that the air was safe. As the facts in the complaint show, the tests did not show that the air was safe. In the afternoon of April 24, 2013, plaintiff received a letter from OSHA stating that based upon the air tests it received from Schoeman, it decided that plaintiff's work safety complaint could be closed. As a direct result, just hours later, plaintiff was vindictively terminated by Schoeman without notice, without severance pay, and without any opportunity to secure another job prior to her termination, and has been blacklisted by Schoeman. Plaintiff's letter of termination lists her

refusal to come into her office and her communications with the firm's landlord and architect regarding asbestos and other toxic substances in the air as reasons for her termination.

If not for the AGG Defendants' actions, work that disturbed asbestos never would have been performed and the toxic substances present in large quantities in the ceilings and walls in the antique entrance area, including, but not limited to, asbestos, would not have been released into the air and plaintiff, who refused to come into her office because she did not want to breathe in asbestos and other toxic substances, would not have been vindictively terminated by Schoeman for refusing to come into her office and for complaining about the unsafe air. Notably, although plaintiff was vindictively terminated immediately after complaining about the toxic air, other employees at Schoeman are still breathing in the air on the twelfth floor, which may very well still contain asbestos and other toxic, carcinogenic substances in harmful quantities.

In an attempt to mislead the Court, the AGG Defendants have concocted their own absurd version of what plaintiff's claims against them are. They claim that plaintiff is claiming that they were part of a "conspiracy" to get plaintiff terminated. This bizarre theory of liability is a blatant distortion of plaintiff's claims against them. As is readily apparent to anyone who reads plaintiff's complaint, plaintiff's claim against the AGG Defendants is that they prepared and filed a false asbestos assessment report that enabled the unlawful and dangerous construction work to proceed, which directly caused plaintiff, who complained about the unsafe air and who refused to come into her unsafe office, to be vindictively terminated.

## ARGUMENT

### I.    THERE IS NO BASIS FOR AN AWARD OF SANCTIONS

As discussed herein, there is no basis for an award of attorneys' fees and costs against plaintiff. Anyone who reads plaintiff's amended complaint and the pleadings in this action can

readily see that plaintiff's claims are far from frivolous and that plaintiff has not unreasonably or vexatiously multiplied the proceedings in this case. The AGG Defendants argue that the mere fact that there are so many defendants in this action and the mere fact that plaintiff's complaint is a lengthy one shows that plaintiff has engaged in sanctionable conduct. Quite to the contrary. The reason there are so many defendants in this action is because of the large number of players who committed illegal actions, many of which are criminal, all of which together contributed to plaintiff's injuries. Plaintiff's amended complaint speaks for itself. It is 1,271 pages because of the many facts in this case relevant to plaintiff's claims, the very large number of crimes and other unlawful acts committed by the defendants, and the many causes of action against the defendants. Moreover, as anyone who reads the pleadings in this action can readily see, naming the AGG Defendants was not an "egregious abuse of the judicial system." As discussed below, each of plaintiff's claims against the AGG Defendants is well-supported by the facts and the law.

The AGG Defendants further make the baseless argument that because plaintiff is seeking hundreds of millions of dollars in damages for each cause of action, that must mean that her claims are frivolous. As the facts in the complaint show, plaintiff is a highly-intelligent and extraordinarily talented attorney with a unique set of skills and legal experience that are unmatched. Plaintiff, who is currently 28 years old, is fully bilingual in English and Hebrew, with outstanding written and oral communication skills in both languages. She is admitted to practice law in New York and Israel and is a skilled litigator who can litigate in both New York and Israeli courts. She also has extensive experience in corporate law in both New York and Israel. She, who grew up in an English-speaking home to American parents and who enrolled in law school in Israel in Hebrew at the age of 18, quickly became bilingual in English and Hebrew and was recognized to be one of the best Hebrew writers and most academically successful

students in her law school class. She was one of just a few students selected to serve on the school's very prestigious Law Review. Plaintiff's school moreover recognized her to be a proven leader with outstanding leadership skills, selecting her as an Argov Fellow in Leadership and Diplomacy, in which capacity plaintiff traveled around the world to meet with world leaders in the fields of law, business, and government. In a letter of recommendation, a New York State Supreme Court Judge who plaintiff clerked for during the summer following her third year of law school stated regarding his decision to hire plaintiff, "[i]n my twenty-five years as an attorney and a judge, I have never made a better decision." Plaintiff completed law school at the age of 21 and then went on to complete a very prestigious one-year Articled Clerkship at Meitar Liquornik Geva & Leshem Brandwein (now named Meitar Liquornik Geva Leshem Tal) ("Meitar"), Israel's leading international law firm. After completing her Articled Clerkship, plaintiff joined Schoeman in September of 2009 and worked there for nearly four years. Plaintiff was the star Articled Clerk at Meitar; she was the star associate at Schoeman. The defendants cannot deny that plaintiff is an extraordinarily bright and skilled attorney with very unique talents and experience. They cannot deny that plaintiff, who was only 26 years old when she was vindictively terminated, and who was already recognized both in New York and Israel to be a brilliant lawyer with outstanding and unique credentials, had a brilliant career ahead of her. They also cannot deny that plaintiff's career and stellar reputation have been completely, irreparably destroyed, in New York, Israel, and around the world, resulting in colossal economic and other damage to plaintiff. The amount of damages plaintiff should be awarded for the severe damage she suffered is a matter for the jury to determine. Plaintiff believes that any amount less than the amount of damages sought in the complaint will not adequately compensate her for the horrific injuries she suffered as a result of the actions of the defendants in this action, which destroyed

her life, career, livelihood, and reputation, among other severe damage. Plaintiff further seeks significant punitive damages to punish the defendants for their unconscionable actions and to deter them from ever even considering committing such heinous actions again in the future.

## II.    NEGLIGENCE

Plaintiff's 210th cause of action states a claim of negligence against the AGG Defendants, which requires that the defendant owed the plaintiff a duty of care; that the defendant breached that duty; and that the breach proximately caused the plaintiff's injuries. *Kim v. Cruz*, 2009 US Dist. LEXIS 119011 (SDNY Dec. 16, 2009). Here, all of these elements are met.

### A.    The AGG Defendants Owed Plaintiff a Duty of Care

The existence of a common-law duty of care is a threshold question of law for the court. *Palka v. Servicemaster Management Servs. Corp.*, 83 NY2d 579 (1994). In determining whether a duty of care exists, courts balance various factors, including "the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *Id.* Here, there can be no question that a balancing of the above factors requires a finding that a City of New York Certified Asbestos Investigator and the company he owns who prepare a report, required by law, for the purpose of ascertaining whether construction work to be performed in areas where employees sit all day long will disturb asbestos owe a duty of care to persons employed in such areas to exercise reasonable care in ascertaining whether the construction work will disturb asbestos and thereby create a work environment where breathing in the air can cause the employees to contract fatal diseases. The defendants argue that because they were not retained by plaintiff, they owe her no duty. This argument lacks merit. A defendant need not be retained by the plaintiff in order to

11

owe the plaintiff a duty of care. The defendants themselves admit that where a contracting party, in failing to exercise reasonable care in the execution of the contract, creates an unreasonable risk of harm to others or exacerbates that risk, such party will be held to have assumed a duty of care to non-contracting third-parties. *DiVetri v. ABM Janitorial Serv., Inc.*, 2014 NY App. Div. LEXIS 5391 (1st Dep't 2014); *Espinal v. Melville Snow Contrs.*, 98 NY2d 136 (2002); *Campbell v. Barbaro Elec. Co., Inc.*, 116 AD3d 728 (2d Dep't 2014). Here, as discussed *infra*, the AGG Defendants, in the negligent performance of their duties under a contract, created the unsafe conditions on the twelfth floor by enabling the asbestos-disturbing work to be performed without the required asbestos abatement and by enabling Schoeman to perform work in the antique entrance area which, in addition to disturbing asbestos, disturbed large quantities of other toxic and carcinogenic substances. As such, they are liable for the injuries plaintiff suffered as a result of their creation of the unsafe conditions on the twelfth floor. The defendants further admit that where a party detrimentally relies on a defendant's continued performance of a contractual obligation, the defendant will be held to have assumed a duty of care to the non-contracting third-party. *See Espinal, supra*. Here, as discussed *infra*, plaintiff detrimentally relied on the AGG Defendants' continued performance of their contractual obligations and the AGG Defendants' owed plaintiff a duty of care to properly perform their contractual obligations.

**i. The AGG Defendants Created and Exacerbated a Risk of Harm to Plaintiff** – The AGG Defendants, in failing to exercise reasonable care in the performance of their duties under their contract, created and exacerbated a risk of harm to plaintiff and launched a force or instrument of harm by enabling work that disturbed asbestos to proceed and by causing Schoeman's employees to breathe in air contaminated with asbestos and other toxic and carcinogenic substances. In a feeble attempt to convince the Court that they did not launch a force or instrument of harm, the

12

AGG Defendants argue that they "performed the job they were hired to do" and "did not create or exacerbate a risk of harm to Plaintiff or others in doing so." Their claims ring hollow. The AGG Defendants did not perform the job they were required to perform and they created a risk of harm to plaintiff and others in failing to perform their duties. The AGG Defendants falsely claim that the antique entrance area was excluded from AGG's scope of work. As discussed *supra*, the antique entrance area was not excluded from the AGG Defendants' work; it was explicitly included in their report and they made an explicit material, and false, representation in their report that the antique entrance area was excluded from the scope of the construction work to be performed and that the asbestos contained therein would not be disturbed. The report clearly indicates that the antique entrance area was outside the scope of the *construction work*, not that it was outside the scope of the report. If it was outside the scope of the report, as the AGG Defendants falsely claim it was, the report would not have listed in great detail the presence of asbestos in the antique entrance area and would not have represented that such asbestos would not be disturbed. Moreover, in Section 8 of the Report, the Report clearly indicates that the construction work included areas in the antique entrance area, as well as within the interior of Suite 1210, where asbestos was present but falsely stated that such asbestos would not be disturbed during the construction work when it in fact was. Thus, the AGG Defendants cannot argue that the antique entrance was not included in the report when it clearly was. Moreover, as discussed *supra*, the asbestos that was disturbed was not only located in the antique entrance area, but was located within the interior of Suite 1210 as well. The AGG Defendants further argue that as "inspection contractors" they cannot be said to have launched an instrument of harm. Initially, the AGG Defendants did not just "inspect" whether asbestos was present on the twelfth floor. They made a representation as to whether the work on the twelfth floor would

disturb asbestos, a representation that the DEP and the Department of Buildings (the "DOB") relied upon in issuing a permit for the construction work. The cases cited to by the defendants in their motion to dismiss are inapposite. In *Stiver v. Good & Fair Carting & Moving, Inc.*, 9 NY3d 253 (2007), the Court held that a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party. Here, plaintiff is not a third party relying on a contractual obligation to give rise to liability against the AGG Defendants. Rather, she is making a claim of negligence. *See Grunberger v. S & Z Serv. Sta. Inc.*, 2010 NY Slip Op 51163(U) (Sup Ct. Kings Co. 2010) (distinguishing *Striver*). Moreover, in *Striver*, the Court held that the defendant's inspection did not make a car's condition any less safe than it was beforehand. Here, the AGG Defendants' actions unquestionably made the air at Schoeman less safe than it was beforehand because their report enabled construction work to commence that disturbed asbestos and excessive quantities of other toxic substances. If not for the AGG Defendants' actions, the asbestos would have remained undisturbed and the tremendous amounts of other toxic and carcinogenic substances in the thick ceilings and walls in the antique entrance area would not have been disturbed. *Bauerlein v. Salvation Army*, 74 AD3d 851 (2d Dep't 2010) is similarly inapposite. In *Baurlein*, the Court held that an elevator inspection company could not be liable for failing to discover a defect in an elevator because such failure to discover the instrument of harm would merely constitute a failure to become "an instrument for good," which is insufficient to impose a duty of care upon a party not in privity of contract with the injured party. The AGG Defendants did not just fail to become an instrument of good. They launched an instrument of harm when they issued a report which falsely stated that no asbestos would be disturbed during the construction, which directly caused the issuance of a permit for the performance of the asbestos-disturbing construction work and enabled the work to proceed, thereby causing

14

Schoeman employees to be exposed to the asbestos in the air, and which enabled work to

proceed in the antique entrance area which, in addition to disturbing asbestos, disturbed large

quantities of other toxic and carcinogenic substances contained in the thick ceilings and walls.

The AGG Defendants make the odd statement that plaintiff "is not complaining of

asbestos exposure," a statement which brazenly ignores the facts in plaintiff's amended

complaint. Plaintiff is certainly complaining of asbestos exposure and anyone who reads her

complaint can readily see that. Plaintiff was vindictively terminated as a direct result of her

complaining to OSHA and others about her exposure to asbestos and other toxic substances and

her refusal to come into the office and breathe in the asbestos and other toxic substances.

Moreover, contrary to the defendants' claims, regardless of whether the defendants' actions

caused plaintiff bodily harm, the AGG Defendants are liable for the severe economic,

reputational, and other damage, including severe emotional distress, they caused plaintiff.

Moreover, as discussed herein, the injuries plaintiff suffered as a result of the AGG

Defendants' actions, which caused the air at Schoeman to be contaminated with asbestos and

other toxins, were all foreseeable by the AGG Defendants. They knew that they created toxic air

contaminated by asbestos on the twelfth floor; they knew that Schoeman's employees were

required to work on the twelfth floor; and they knew that any whistleblower employee who

complained that the air was unsafe and who refused to come into the office because of the unsafe

air would foreseeably be vindictively terminated. Moreover, foreseeability and causation "are

issues generally and more suitably entrusted to fact finder adjudication." *Palka,* 83 NY2d at 585.

**ii. Plaintiff Detrimentally Relied Upon the AGG Defendants' Performance of Their**

**Contractual Obligations -** Plaintiff detrimentally relied upon the asbestos report prepared by the

AGG Defendants. The defendants argue that because the asbestos inspection took place on July

31, 2012 and Schoeman only moved into the French Building in November of 2012,[1] plaintiff could not have relied upon the report. However, the defendants neglect to mention that plaintiff was aware of the ongoing construction work months before Schoeman actually moved into the French Building. Schoeman was involved with the construction work as early as July of 2012, which is when the construction plans were presented to Schoeman, as indicated by the plans themselves. Plaintiff knew that the French Building, as an old building, contains asbestos and she relied upon the party who was tasked with ascertaining whether asbestos would be disturbed during the construction work to ensure that the necessary steps were taken to ensure that no work that disturbed asbestos was performed without the asbestos abatement required by law.

While stating that the dispositive inquiry on the detrimental reliance exception "is whether defendant's conduct placed plaintiff in a more vulnerable position than plaintiff would have been in had defendant done nothing," the AGG Defendants argue that there was no detrimental reliance because "[h]ad the AGG Defendants 'done nothing,' *i.e.*, conducted no pre-construction asbestos inspection, the construction would have proceeded; Plaintiff later would have entered the space and endured what she claims to have endured; and all the intervening events leading to her alleged harm (her firing) would have happened as well." This claim lacks merit. Without the asbestos report prepared by the AGG Defendants, the construction work *could not* have proceeded. Any contractor and any NYC Certified Asbestos Investigator knows that and the AGG Defendants know that as well. Without the report, the DOB could not have issued a permit for the construction work. The law requires the report as a prerequisite to the issuance of a permit. *And without a permit, the construction work would not have proceeded, the asbestos would not have been disturbed, and no work would have been performed in the antique entrance*

---

[1] Schoeman initially moved to the fourteenth floor of the French Building in or about November of 2012 and then moved to the twelfth floor in April of 2013.

*area, which disturbed great amounts of toxic and carcinogenic substances, including, but not limited to, asbestos.* Had the unlawful construction work not proceeded, the air would not have been unsafe, plaintiff would not have had to insist on working from home, she would not have had to complain to OSHA and others about the air, and she would not have been terminated.

### B. <u>The AGG Defendants Breached Their Duty of Care</u>

As the facts in the complaint show, the AGG Defendants breached their duty of care. They failed to accurately report what portions of the twelfth floor would be worked on and they failed to accurately report whether asbestos would be disturbed during the construction work. As a result, a permit was issued for the construction work under the false pretense that no asbestos would be disturbed during the construction work and heavy construction work proceeded in the antique entrance area, in addition to in other areas within Suite 1210 containing asbestos. Schoeman's employees thus were exposed to large quantities of asbestos and other toxic and carcinogenic substances released into the air and plaintiff, who complained about the toxic air and who insisted on working from home so as not to expose herself to the toxic air, was vindictively terminated as a direct result of the AGG Defendants' breach of duty of care.

### C. <u>The Breach of Duty of Care Proximately Caused Plaintiff's Injuries</u>

As a direct result of the AGG Defendants' actions, asbestos was disturbed on the twelfth floor and, after insisting on working from home and complaining about the unsafe air to OSHA and others, plaintiff was vindictively terminated by Schoeman, just hours after she received a letter from OSHA stating that based upon Schoeman's false representations that the air was safe, OSHA felt that plaintiff's work safety complaint could be closed. Plaintiff's letter of termination explicitly lists plaintiff's refusal to come into the office and her communications with others, including the building's landlord and architect and her colleagues, as reasons for her termination.

The AGG Defendants argue that plaintiff's injuries were the result of her termination, which they claim was an intervening act and that therefore there is no causation between their acts and plaintiff's injuries. Their argument lacks any merit. Schoeman's letter of termination states in clear and unequivocal terms that plaintiff's refusal to come into her office and her complaining to others, including the landlord and architect, about the unsafe conditions at the office were reasons for her termination. Thus, plaintiff's termination was not an "intervening act." It was a direct result of the unsafe conditions at Schoeman, which were created by the AGG Defendants. Notably, the fact that the acts of other tortfeasors also contributed to plaintiff's termination does not absolve the AGG Defendants of liability. Rather, the defendants are joint tortfeasors. As evidenced by Schoeman's letter of termination, which gives eight unlawful reasons for plaintiff's termination, one of which is plaintiff's refusal to come into her office and one of which is plaintiff's communications with her colleagues and the firm's landlord and architect about the unsafe air, the unlawful acts of numerous tortfeasors, including the AGG Defendants, caused plaintiff's termination. All of the events listed in the termination letter as reasons for plaintiff's termination (which are all falsely described therein) together contributed to plaintiff's termination and but for the AGG Defendants' actions, plaintiff would not have been terminated. Plaintiff's refusal to come into her unsafe office and her complaining about the unsafe conditions at her office and her being a whistleblower about the unsafe conditions played a heavy role in her termination, which occurred just hours after she received notice from OSHA indicating that it decided to close her work safety complaint. The defendants in this action are all jointly and severally liable to plaintiff for the role they played in causing her vindictive termination and for the severe damage she suffered as a result. *See, e.g., Ravo v. Rogatnick*, 70 NY2d 305 (1987).

The AGG Defendants argue that plaintiff's termination was not foreseeable to them. First, foreseeability is generally an issue for the jury to determine. *Palka, supra*, 83 NY2d at 585 (holding that foreseeability and causation "are issues generally and more suitably entrusted to fact finder adjudication"). Moreover, the AGG Defendants engaged in unlawful conduct and it was certainly foreseeable to them that someone at Schoeman, a whistleblower, would discover what they had done and would expose the illegal activity and would be not just terminated, but *vindictively* terminated, as a result. It was moreover foreseeable to them that someone at Schoeman would become ill from the unsafe air and would refuse to come into the office so as not to breathe in the air and would be vindictively terminated for refusing to come into the office and for complaining about the air. Plaintiff's vindictive termination was not an "intervening act." Her vindictive termination and the severe damage she suffered therefrom were a direct and foreseeable result of the AGG Defendants' actions. In *Derdiarian v. Felix Contr. Corp.*, 51 NY2d 308 (1980), cited to by the AGG Defendants, the Court, in upholding a jury verdict in favor of the plaintiff, refused to recognize that what the defendant argued was a superseding act broke the nexus between the defendant's actions and the plaintiff's injury. The Court held:

> Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence [internal citations omitted.] If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus…Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve.

Here, Schoeman's decision to vindictively terminate plaintiff was a direct result of her refusal to come into her unsafe work environment, which the AGG Defendants created, and a direct result of her complaining about the unsafe work environment to OSHA and others. It is not an act that

is "extraordinary under the circumstances" or "not foreseeable in the normal course of events" or "independent or far removed from the defendant's conduct." It was entirely foreseeable to the AGG Defendants that if someone at Schoeman reported the unsafe conditions, which the AGG Defendants were directly responsible for, such whistleblower would be vindictively terminated.

## D. **The AGG Defendants are Liable for Plaintiff's Economic Harm**

Although the defendants do not give a name to their legal theory, they appear to argue in their motion to dismiss that they are protected from liability by the economic loss doctrine. The economic loss doctrine provides that "plaintiffs who enter into transactions that are of a contractual nature -- even if no contract exists -- are limited to 'the benefits of their bargains' unless they can show 'a legal duty separate and apart from obligations bargained for and subsumed within the transaction.'" *Deangelis v. Corzine (In re MF Global Holdings Inv. Litig.)*, 2014 U.S. Dist. LEXIS 17205 (SDNY Feb. 11, 2014). Initially, the damages that the AGG Defendants caused plaintiff are not solely economic ones. Moreover, the economic loss doctrine is inapplicable to this action. First, the doctrine generally does not apply outside of the product liability context (*Hydro Invs., Inc. v. Trafalgar Power, Inc.*, 227 F3d 8 (2d Cir 2000); *In re Mission Constr. Litig.,* 2013 U.S. Dist. LEXIS 124926 (SDNY Aug. 30, 2013)) and this is not a product liability action. Moreover, the economic loss rule is applied to "prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." *Hydro Investors, Inc., supra. See also Computech Int'l, Inc. v. Compaq Computer Corp.*, 2004 U.S. Dist. LEXIS 9120 (SDNY May 21, 2004). Here, plaintiff did not enter into any contract with the AGG Defendants and her damages do not "lie in the nature of breach of contract as opposed to tort." Moreover, even if plaintiff's damages did lie in contract and not tort, and they do not, the economic loss rule does not apply to intentional torts.

20

*Computech Int'l, Inc. v. Compaq Computer Corp.*, *supra* ("[t]he parties have not cited to any case in the New York courts applying the economic loss doctrine to an intentional tort, nor has one been found by the Court"); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265 (SDNY 2004). Here, the AGG Defendants, who committed intentional torts, are not protected by the doctrine, even assuming, *arguendo*, that it was applicable here, and it is not.

## III.   BREACH OF FIDUCIARY DUTY

Plaintiff's 220th cause of action states a claim against the AGG Defendants for breach of fiduciary duty, which requires the existence of a fiduciary relationship; misconduct by the defendant; and damages directly caused by the defendant's misconduct. *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 2014 U.S. Dist. LEXIS 44039 (SDNY Mar. 30, 2014). A fiduciary relationship arises when one party is under a duty to act for or to give advice for the benefit of another party upon matters within the scope of the relation (*Mosdos Chofetz Chaim, Inc., supra*) or when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another. *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 632 (SDNY 2013). New York courts have recognized that ascertaining the existence of a fiduciary relationship requires a fact-specific inquiry and thus a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Fed. R. Civ. P. 12(b)(6). *Mosdos Chofetz Chaim, Inc., supra*, at *37; *United States v. Wells Fargo Bank, N.A.*, *supra* ("[a]s 'the existence of a fiduciary relationship normally depends on the facts of a particular relationship, a claim alleging such a relationship is generally not dismissed for failure to state a claim'"). Here, Avant-Garde Group, Inc. and Goloubenko, a licensed asbestos investigator, who were retained by plaintiff's employer and/or landlord/managing agent to ascertain, for the purpose of obtaining a

construction permit, whether construction work to be performed on the twelfth floor, where plaintiff was employed by Schoeman, would disturb asbestos, were under a duty to act for the benefit of Schoeman's employees to ensure that the employees, including plaintiff, were not exposed to asbestos at their workplace. They had a duty to provide accurate information to the DEP with respect to whether the construction project would disturb asbestos and whether the project included work in areas where asbestos was located. The information in the Asbestos Report was provided for the benefit of the employees on the twelfth floor, including, plaintiff. Moreover, plaintiff reposed trust and confidence in the integrity and fidelity of the AGG Defendants that they would perform their duties properly and ensure that Schoeman's employees were not exposed to asbestos in the air at Schoeman. Said defendants had a resulting superiority and influence over plaintiff. As licensed asbestos investigators, they had access to knowledge of where asbestos was located and they had access to information and documents which showed that such asbestos would be disturbed during the course of the construction work. For instance, they had access to the Asbestos Report, which showed where asbestos was located and which, when read together with the construction plans, showed that areas where work was to be performed contained asbestos and that asbestos would be disturbed during the construction process. For instance, the Asbestos Report showed that certain floor tiles contained asbestos and the construction plans show that those tiles were removed during the construction work. Plaintiff did not have access to the Asbestos Report and thus could not protect herself effectively and could not provide it to OSHA. By incorrectly stating in the Asbestos Report that certain areas where heavy construction work was performed were not within the scope of the construction work and by incorrectly stating that asbestos would not be disturbed during the construction work, the AGG Defendants caused a permit to be issued for the construction work and caused

plaintiff to be compelled to work in an unsafe work environment, and caused her to be vindictively terminated for her refusal to come into the unsafe work environment and for complaining about the unsafe air. Plaintiff suffered severe damage as a result of said defendants' actions, including, but not limited to, her termination and severe economic and reputational damage and severe emotional distress.

The AGG Defendants argue that they are not liable for breach of fiduciary duty because they did not agree to a fiduciary relationship with plaintiff and because they never had contact with plaintiff. The fact that the AGG Defendants never had contact with plaintiff is irrelevant. The AGG Defendants knew that they were under a duty to act for the benefit of Schoeman's employees. Plaintiff was a Schoeman employee. The fact that they never had contact with plaintiff does not change that fact. The defendants' argument that they did not accept a fiduciary duty to properly perform the Asbestos Report is a troubling one, one which indicates that they never agreed to perform the Asbestos Report properly and in good faith. Any Certified Asbestos Investigator tasked to perform the task that the AGG Defendants were tasked to perform would assuredly accept the trust in his or her fidelity and integrity placed in him or her by the employees of the area where the asbestos survey was performed and would accept a fiduciary duty to such employees to perform the survey honestly and in good faith. At a minimum, there is a question of fact as to whether the AGG Defendants accepted the trust in their fidelity and integrity placed in them by an employee of Schoeman. The AGG Defendants further argue that because Schoeman did not move into the French Building until months after they issued their Asbestos Report, it cannot be said that a fiduciary relationship existed prior to when the Asbestos Report was prepared in early August of 2012. When Schoeman moved into the French Building is irrelevant because, as the construction plans indicate, Schoeman was involved with the

23

construction as early as July of 2012, prior to when the AGG Defendants were retained to prepare their report. Thus, the fiduciary relationship existed when the AGG Defendants were retained to prepare the asbestos report for the benefit of Schoeman's employees. They breached their fiduciary duty by preparing a false report and their actions caused plaintiff severe damage.

## IV.   AIDING AND ABETTING THE BREACH OF A FIDUCIARY DUTY

Plaintiff's 224th cause of action states a claim for aiding and abetting a breach of a fiduciary duty, which requires a breach by a fiduciary of obligations to another; that the defendant knowingly induced or participated in the breach; and that the plaintiff suffered damage as a result of the breach. *Briarpatch Ltd., L.P. v. Briarpatch Film Corp.*, 2013 NY Slip Op 31263(U) (Sup Ct. NY Co. 2013). A person knowingly participates in a breach of fiduciary duty when he or she provides substantial assistance to the primary violator. *Id*. Here, Schoeman, plaintiff's employer, and Mindy H. Stern, Beth L. Kaufman, Charles B. Updike, and Andrea D. Ascher, members of Schoeman, had a relationship with plaintiff wherein plaintiff reposed trust and confidence in the integrity and fidelity of Schoeman and its members, who thereby gained a resulting superiority and influence over plaintiff, and who had control and responsibility over plaintiff. They had documents that plaintiff did not have, and could not show to OSHA, showing that asbestos was disturbed during the construction work. They moreover had superior knowledge that plaintiff did not have because they knew that the air tests that were conducted tested only for the presence of asbestos and did not test the air in plaintiff's personal office or in the antique entrance area. They were under a duty to act for the benefit of the Schoeman employees to ensure that the employees, including plaintiff, had a safe work environment, where asbestos and other toxic, carcinogenic substances did not permeate the air. They breached their fiduciary duty to plaintiff by engaging in criminal fraud in order to cause a permit to be issued

for the construction work that disturbed asbestos without the required asbestos abatement, by submitting a false asbestos report to the DEP, by falsely representing that the air was safe, by making false representations to OSHA and others regarding what the air tests showed, and by compelling Schoeman employees to work in an area where asbestos and other toxins permeated the air, while lying to Schoeman's employees and government officials that no asbestos was disturbed and that the air was safe. As a direct result of the breach of fiduciary duty, plaintiff had no choice but to insist on working from home so as not to breathe in the toxic air and to complain to OSHA and others about the unsafe air, which resulted in her immediate vindictive termination. The AGG Defendants knowingly induced and participated in the breach and provided substantial assistance to Schoeman and its members in committing the breach by preparing a false asbestos report that was submitted to the DEP, which enabled Schoeman to obtain a permit for the unlawful work which disturbed asbestos without the required asbestos abatement, and which caused large quantities of asbestos and other toxic and carcinogenic substances to permeate the air on the twelfth floor. As a direct result of the AGG Defendants' actions, plaintiff had no choice but to insist on working from home so as not to breathe in the unsafe air and to complain to OSHA and others about the unsafe air. After complaining to OSHA and others about the air, plaintiff was immediately vindictively terminated as a direct result of her insistence on working from home and her complaining to OSHA and others about the unsafe air.

## **CONCLUSION**

WHEREFORE, for all of the reasons discussed herein, plaintiff respectfully requests that the AGG Defendants' motion to recover attorneys' fees and costs be denied in its entirety.

Dated:  New York, New York            s/ Ronit D. Appel_____
       December 15, 2014            Ronit D. Appel, Esq. (RA 8950)
                              322 West 78th Street; New York, NY 10024
                              (347) 387-6100; ronitdappel@gmail.com